# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

BAL HARBOUR QUARZO, LLC,[1]
a/k/a Synergy Capital Group, LLC,
a/k/a Synergy Investments Group, LLC,

Debtor.

Case No. 18-11793-SMG

Chapter 11

_____/

DREW M. DILLWORTH, as Trustee,

     Plaintiff,

v.

CARLOS ELIAS MAHECHA DIAZ, an
individual, MARIA ANASTASIA CASAS
MATIZ, an individual, FELIPE MAHECHA
CASAS, an individual, and CAMILO E.
MAHECHA, an individual,

     Defendants.

Adv. Proc. No. 20 - _____-BKC-SMG

_____/

## ADVERSARY COMPLAINT TO AVOID AND
## RECOVER TRANSFERS AND FOR TORT DAMAGES

The Plaintiff, DREW M. DILLWORTH, as the liquidating trustee ("Dillworth," "Plaintiff" or

the "Trustee") of the Bal Harbour Quarzo Liquidating Trust ("Trust"), as successor in interest to the

above-captioned debtor Bal Harbor Quarzo, LLC ("BHQ"), a/k/a Synergy Capital Group, LLC, a/k/a

Synergy Investments Group, LLC, (collectively, the "Debtor"), files this Adversary Complaint against

CARLOS ELIAS MAHECHA DIAZ ("MAHECHA"), MARIA ANASTASIA CASAS MATIZ

("CASAS"), FELIPE MAHECHA CASAS ("MAHECHA CASAS") and CAMILO E. MAHECHA

("C. MAHECHA")  (collectively referred to as "Defendants"). In support thereof, the Trustee alleges

---

[1]  Bal Harbour Quarzo, LLC, EIN #36-4618478; Synergy Capital Group, LLC, EIN #14-1967153; Synergy Investments Group, LLC, EIN #38-3982339.

as follows:

## THE PARTIES, JURISDICTION AND VENUE

1.    On September 14, 2017, Dillworth was appointed as the receiver over the pre-bankruptcy Debtor pursuant to an order (the "Receivership Order") entered in a case pending in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida (the "State Court") styled *Larino Investments, Inc. v. Bal Harbour Quarzo, LLC*, Case No. 17-5794CA 01 (11th Cir. Fla.) (the "State Court Case").

2.    From and after September 14, 2017, which was five months prior to the filing of the within bankruptcy proceedings, Dillworth, as the receiver, was authorized to, and did, exercise sole and complete control over all of the affairs of the Debtor as ordered by the State Court and reflected in the Receivership Order.

3.    Pursuant to the authority granted to Dillworth in the Receivership Order, on February 16, 2018 (the "Petition Date"), Dillworth caused the Debtor to file a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") commencing this bankruptcy case (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

4.    On April 18, 2018, the Bankruptcy Court entered its Third Interim Order Granting Motion Pursuant to 11 U.S.C.§ 543(d)(1) to Excuse Receiver from Compliance with Turnover Requirements and to Establish Powers and Duties of Receiver *Nunc Pro Tunc* [ECF No. 77] (the "Excusal Order").

5.    Pursuant to the Excusal Order, Dillworth, as a receiver excused from turnover in regards to the Debtor's estate, was empowered, among other things, with the legal standing, capacity, and authority to investigate, assert and prosecute on behalf of the Debtor's estate any and all claims and causes of action of the Debtor's bankruptcy estate, including without limitation, all claims and causes

2

of action set forth herein and that arise or arose under federal or state law, and all claims and causes of action under and pursuant to sections 542 through 550 and 553 of the Bankruptcy Code.

6.      On April 20, 2018, the Office of the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee") in this Bankruptcy Case.

7.      On February 6, 2019, Dillworth, as the receiver, and the Committee filed the Joint Combined Plan of Liquidation and Disclosure Statement (the "Plan") in this Bankruptcy Case. On April 15, 2019, the Bankruptcy Court entered its order confirming the Plan (the "Confirmation Order"). Pursuant to the Plan and the Confirmation Order, among other things, the Trust was created, Dillworth was appointed as the Trustee for the Trust and all property of the Debtor's bankruptcy estate, including all claims and causes of action under and pursuant to sections 542 through 550 and 553 of the Bankruptcy Code (including the claims and causes of action asserted herein) vested in the Trust under the control of the Trustee.   Under the terms of the Plan, the Committee was succeeded by the Post Confirmation Creditors' Committee.

8.      CARLOS ELIAS MAHECHA DIAZ is a Colombian national with a last known address in Bogota, Colombia and is otherwise *sui juris*. MAHECHA is assigned Colombian National Identification number ####7099 and a United States Social Security number ###-##-##67.   Upon information and belief, at all relevant times herein, MAHECHA held a E2 United States Visa; held title to, and continues to hold title to, real property in the Southern District of Florida; maintained and continues to maintain financial and other business relationships in the Southern District of Florida; and was at all relevant times herein a member and manager of the Debtor, and an insider and a control person of the Debtor; and was active in the recruitment of financing for the Debtor, in particular by solicitation and providing assurances of repayment to the Lenders (as defined below).   MAHECHA is the spouse of CASAS, and the father of MAHECHA CASAS and C. MAHECHA.

9.      MARIA ANASTASIA CASAS MATIZ is a Colombian national with a last known address in Bogota, Colombia, and is otherwise *sui juris*.  CASAS is assigned Colombian National Identification Number ######4732 and a United States Social Security Number ###-##-##99.  Upon information and belief, at all relevant times relevant, CASAS held title to, and continues to hold title to real property in the Southern District of Florida; maintained and continues to maintain financial and other business relationships in the Southern District of Florida; received financial reports from the Debtor in her capacity as a member of Debtor's Board of Directors; at all relevant times herein was a *de facto* manager of the Debtor, was active in the recruitment of financing for the Debtor, in particular by solicitation and providing assurances of repayment to the Lenders (as defined below); provided direction to the Debtor's hotel staff, including but not limited to, on topics such as furniture, fixtures and equipment purchases; and was herself, directly or indirectly, an debt investor in the Debtor. Upon information and belief, CASAS applied for entry to the United States under an E2 VISA as a spouse of an E2 Visa holder (MAHECHA). CASAS is the spouse of MAHECHA, and the mother of MAHECHA CASAS and C. MAHECHA.  CASAS is a member of a prominent and wealthy family in Colombia and used this background to provide comfort and assurances to potential Lenders concerning the soundness of such Lenders' proposed investment in the Debtor.

10.      FELIPE MAHECHA CASAS is believed to be a Colombian national, residing in Miami-Dade County, Florida at all relevant times herein and is otherwise *sui juris*.  MAHECHA CASAS is the son of MAHECHA and CASAS.  At all relevant times herein, MAHECHA CASAS was the *de facto* manager of the Debtor and, upon information and belief, acted as MAHECHA's agent in the conduct of the business and the affairs of the Debtor. At all relevant times herein, MAHECHA CASAS held title to, and continues to hold, title to real property in the Southern District of Florida, and maintained and continues to maintain financial and other business relationships in the Southern District of Florida.

11.     CAMILO E. MACHECHA is believed to be a United States citizen and at all times relevant herein had a United States Social Security number, XXX-XX-XX03.

12.     This Bankruptcy Court has personal jurisdiction over each of the Defendants named herein because, among other things as discussed herein,: (a) each Defendant conducted business in Florida at the time of the events giving rise to Plaintiff's claims in this action; (b) Defendants MAHECHA, CASAS and MAHECHA CASAS each held title to, and continues to hold title to, real property in Florida and maintained financial relationships in the state of Florida at all relevant times herein; (c) Defendant C. MAHECHA held, and continues to hold, a Florida Driver's license, is a United States citizen registered to vote in the State of Florida, and held himself out to be an employee of one of the Debtor's alter egos by accepting payments from such entity without providing services of reasonably equivalent value in exchange for such payments; (d) at least MAHECHA and CASAS availed or attempted to avail themselves of immigration privileges in the United States claiming a business purposes for so doing; and (d) each Defendant, through their continuous and systemic contacts with Florida and the United States, have purposefully availed themselves of the rights, benefits and protections of the laws of the United States and of the State of Florida and should reasonably anticipate being hauled into court in Florida.

13.     This Bankruptcy Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334.

14.     This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (H), and (O).

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.

16.     All conditions precedent to the filing of this action have been performed, waived, satisfied, or have otherwise occurred.

## BACKGROUND FACTS

**I.      The Debtor, its Managers, Insiders, and Certain Affiliates.**

17.      BHQ is a Florida limited liability company formed on October 23, 2007.

18.    At all relevant times prior to the Plaintiff's original appointment as receiver on September 14, 2017, the Debtor was directly or indirectly owned in equal parts and controlled by MAHECHA and Juan Arcila ("Arcila").[2]

19.    Also, at all relevant times herein MAHECHA CASAS acted as a *de facto* manager of the Debtor with apparent authority from MAHECHA and, upon information and belief, acted as his father's agent in connection with his father's duties as a manager of the Debtor, evidenced in part by MAHECHA CASAS' execution of documents on behalf of the Debtor as its "managing agent."

20.    At all relevant times herein, CASAS was a member of Debtor's Board of Directors, acted as a *de facto* manager of the Debtor, directed actions and expenditures relating to the Property owned by the Debtor, had made debt investments directly or indirectly in and to the Debtor, and took actions to protect her self-interest, in coordination with MAHECHA and MAHECHA CASAS, to the detriment of the Debtor and its Lenders, as that term is defined below.

21.    C. MAHECHA received substantial sums from the Debtor in return for which he provided no services of reasonably equivalent value to the Debtor.

---

[2] Juan Arcila, MAHECHA's confederate in all of the actions described herein to hinder and delay the Debtor's creditors, including the Lenders, was charged with criminal violations of federal law in connection with the Loans obtained from the Lenders. Specifically, on December 2, 2019, Arcila was charged in an Information filed in the United States District Court for the Southern District of Florida with conspiracy to commit wire fraud in violation of United States laws. *See, United States v. Arcila,* Case No. 1:19-cr-20794-MGC (Doc. 1). The court accepted Arcila's plea of guilty to that charge on February 10, 2020. *Id.* at Doc. 25. In support of that guilty plea, Arcila executed a factual proffer and submitted the same to the court. *Id.* at Doc. 24. In his proffer, Arcila confirmed that he, and his co-conspirator (MAHECHA) took actions to hinder, delay and defraud the Lenders and specifically that they concealed material facts from the Lenders including not disclosing the true financial health of the Debtor; not disclosing that funds from the Lenders were used to pay obligations of the Debtor to other Lenders owed money as a result of previously made loans; and not disclosing that several Lenders had filed lawsuits and in some instances had obtained judgments against Debtor as a result of Debtor's failures to make timely payment on its obligations under the terms of the respective Lender's loan agreements and promissory notes. Arcila's sentencing is currently set for May 6, 2020. *Id.* at Doc. 23.

22.     In addition, the following employees of the Debtor or its affiliates had varying degrees of management responsibility for the Debtor's business operations at varying times, but upon information and belief, were not aware of the breaches of duties by MAHECHA, CASAS, and MAHECHA CASAS: (1) Damarys Hernandez, controller; (2) Fritz Fandino, hotel general manager; (3) Ivan Colmenares; operations manager; (4) Laura Cabrera; property manager for the rental buildings; (vi) Liliana Barraza; office manager; and (5) Luisa Corchuelo, hotel operations manager.

23.     In or about 2006, MAHECHA and Arcila, directly or indirectly, formed and owned Luna Developments Group, LLC ("Luna") for the purpose of purchasing and operating a residential property located in Broward County in the Southern District of Florida (the "Luna Property").

24.     In addition to Luna, Arcila and MAHECHA also controlled other companies, including Synergy Capital Group, LLC and Synergy Investments Group, LLC (together, the "Synergy Entities"), which were affiliates and alter egos of the Debtor.  The Synergy Entities have been determined by the State Court to be alter egos of the Debtor in the State Court Case.

## II.     **The Defendants' Fiduciary Duties, Breaches Thereof and Damages**.

25.     As managers, *de facto* managers, officers, directors and/or controlling persons of the Debtor, each of MAHECHA, CASAS and MAHECHA CASAS owed fiduciary duties to the Debtor, including a duty of care, the highest duty of loyalty and a duty to act in the best interests of the Debtor under the common law and otherwise, including but not limited to, Fla. Stat. §605.04091.  These fiduciary duties required these Defendants to place the interests of the Debtor and the Debtor's creditors, including specifically the Lenders, above their own personal interests, and required them to avoid self-dealing for personal gain, and conflicts of interest.  These Defendants were required to engage in proper oversight of the Debtor and its operations, to act diligently in the exercise of their responsibilities, to gather and become informed about material facts and information related to any decisions and to

otherwise use that amount of care which an ordinarily careful and prudent person would use in similar circumstances.

26.    The claims against the Defendants MAHECHA, CASAS and MAHECHA CASAS for breach of fiduciary duties herein arise out of and relate to breaches of their fiduciary duties based upon their acts and omissions detailed herein, including the Wrongful Acts (as defined below). Specifically, these Defendants failed to properly discharge their duties in good faith, acted with gross negligence and/or with reckless disregard of their respective duties, acted in bad faith and/or engaged in willful misconduct, and breached the implied covenant of good faith and fair dealing, all as detailed herein. These Defendants were also required to avoid decisions on behalf of the Debtor that were based on self-dealing, conflicts of interests, uninformed, that were irrational, unintelligent or unadvised; that were grossly negligent or reckless, or that exhibited an indifference to the risk of loss, damage or harm to the Debtor.

27.    As a direct and proximate result of the Wrongful Acts (defined below), omissions and breaches of fiduciary duty committed by the Defendants MAHECHA, CASAS and MAHECHA CASAS as detailed herein, the Debtor has suffered substantial damages that include, without limitation: (i) the loss or reduction of assets and the value of assets of the Debtor, including through the sale of the Debtor's Property to Beach Haus Bal Harbour, LLC as detailed herein; (ii) the decrease in the asset values and enterprise value of the Debtor; including as a result of their failure to file a bankruptcy or other insolvency proceeding for the Debtor; (iii) the increased insolvency of the Debtor through the incurrence of over $40 million in debt to Lenders that the Debtor could not repay; (iv) administrative fees and expenses incurred and to be incurred by the Debtor in the State Court receivership action and in the Bankruptcy Case; (v) the value of all avoidable fraudulent transfers as set forth herein made by the Debtor pursuant to Bankruptcy Code Sections 544, 548, and 550, as well as Chapter 726 of the

Florida Statutes and other applicable law; and (vi) other damages as may be ascertained though discovery.

### III.    **The Debtor's Acquisition of the Property**

28.    On or about October 25, 2007, the Debtor purchased: (1) twenty (20) co-operative parcels (hotel units) located in a small boutique hotel at 290 Bal Bay Drive, Bal Harbour, Florida; (2) a building located at 291 Bal Bay Drive, Bal Harbour, Florida, and (3) a building located at 10250 Collins Avenue, Bal Harbour, Florida (together, the "Property").

29.    The Debtor paid $22,422,000 for the Property, which was financed by (1) a first position mortgage loan from AMERANT BANK, N.A. f/k/a MERCANTIL BANK, N.A.[3] ("Mercantil Bank") of $15,500,000 (the "Bank Term Loan"); and (2) seller financing from seller John Lang Looby ("Mr. Looby") of $3,000,000. The Debtor funded the balance of the purchase price from monies obtained through the Loans, as defined below.

30.    Upon information and belief, in excess of $4 million of the proceeds of Loans was used to complete Debtor's purchase of the Property. At the closing of the purchase of the Property, the Debtor was required to fund an amount equal to approximately $4.5 million in "equity," which equity came from the Loans.

31.    From its inception therefore, the Debtor was capitalized solely with debt, including specifically the Loans from the Lenders and the mortgage loan from Mercantil Bank described above.

32.    In 2013, the Debtor borrowed millions of dollars from Mercantil Bank for construction purposes ("Bank Construction Loan," and with the Bank Term Loan, the "Bank Loans").

33.    MAHECHA, among others, personally guaranteed the Bank Loans.

### IV.    **The Debtor's Borrowed Funds.**

---

[3] Formerly known as Mercantil Commercebank, N.A.

34.     Upon information and belief, neither MAHECHA, CASAS nor MAHECHA CASAS invested any equity capital into the Debtor in connection with the purchase of the Property or otherwise.

35.     Instead, from at least 2007 through in or about 2016, the Debtor, through MAHECHA, CASAS and MAHECHA CASAS, among others, and certain of their affiliates, including but not limited to the Synergy Entities, engaged in an effort to obtain loans and investments (the "Loans") in the aggregate principal amount of $34 million, with accrued interest bringing the total amount to in excess of $45 million.  These Loans were obtained from more than 160 individuals and entities, the majority of which resided in or were controlled by residents of the Republic of Colombia (the "Lenders").

36.     Creditors of the Debtor, including the Lenders, have filed proofs of claims against the Debtor's bankruptcy estate in an amount in excess of $60 million.

37.     At all relevant times herein, the Debtor was insolvent on a balance sheet basis and was unable to pay its debts as they came due, in particular the debt obligations owed to the Lenders under the Loans.

38.     In connection with their efforts, and to induce the Lenders to make the Loans, MAHECHA, together with others, created subscription and offering materials describing the Debtor's proposed acquisition of  the Property located in the Southern District of Florida. These materials were presented to prospective Lenders. Included among the misrepresentations in these documents were ones stating that the proceeds from the Loans would only be used for the Property purchased by Debtor on or about October 25, 2007 as more fully described below.

39.     Initially the Loans were structured as short-term loans.  As time wore on, later Loans had longer maturity terms.

40.     The Debtor, through MAHECHA, CASAS, MAHECHA CASAS, and the Synergy Entities, among others, enticed the Lenders to loan monies to the Debtor through a variety of different means, including offering to pay interest on the Loans of between 10% and 18% per annum and offering

to allow certain Lenders to convert their Loans into Class A membership interests in the Debtor and made promises that the Lenders would be the first ones repaid.

41.    Among other potential Lenders, MAHECHA and CASAS targeted Colombian nationals who, in some instances, they had known for decades.  In one such instance, for example, MAHECHA and CASAS pitched the prospect of investing in the Debtor to a couple whom they had known for decades and who they knew would be investing funds the couple had set aside for their retirement. After the couple used their retirement savings to make a Loan to the Debtor, the Debtor's financial condition became even more dire.  MAHECHA and CASAS took steps to conceal the financial issues from this couple and indeed when other Lenders began to file lawsuits in the State of Florida, CASAS assured these friends that they would be among the first to be paid. To date this couple has not, in fact, been repaid on their investment and they have a pending claim against the Debtor.

42.    In many instances, the promissory notes that were issued by the Debtor to reflect the Loans from the Lenders were on the letterhead of Synergy Investments Group, although signed by the Debtor.

43.    Further, in many instances, the Debtor, with the knowledge of MAHECHA, CASAS and MAHECHA CASAS, assured the Lenders in writing that the funds advanced by such Lenders under the Loans would be disbursed in connection with the acquisition, financing, renovation or management of the Property purchased on October 25, 2007.  However, in many instances Lender funds were diverted from the stated purposes. For example, the Debtor directed that the funds being loaned to the Debtor be transferred by the Lenders to a bank account in the name of Synergy Investments Group, not the Debtor.

44.    In certain instances, the Debtor represented to the Lenders that the Debtor would not borrow money from non-institutional lenders in an amount in excess of 22% of the value of the Property.

Ultimately however, the Debtor borrowed in excess of $34 million from the non-institutional Lenders, far exceeding 22% of the value of the Property.

45.    In certain instances, the Debtor represented and committed to the Lenders that neither MAHECHA nor Arcila, as managers of the Debtor, had authority to borrow money for or on behalf of the Debtor for any purpose other than the acquisition, financing, renovation, or management of the Property.  Notwithstanding such representations, funds borrowed by the Debtor from the Lenders were used for other purposes in violation of such representations.

46.    As noted above, the initial Loans had a short maturity date, to coincide with the Debtor's initial plans for the Property.  However, when the Debtor changed its plans for the Property, the Debtor needed to extend the maturity of the Loans that it initially obtained from the Lenders, and all future Loans needed to be for a much longer maturity.

47.    In connection therewith, in early 2008, the Debtor proposed to the existing Lenders that their Loans be amended to include an option for such Lenders to convert their debt into equity in the Debtor. Thereafter, the Debtor included such conversion feature in substantially all of its future Loans from the Lenders.  Despite having the conversion feature in the Loans, no Lender exercised the right to convert their debt to equity in the Debtor.

48.    During the years preceding the Petition Date, the actions of MAHECHA, CASAS and MAHECHA CASAS, facilitated by the actions and inactions of others, contributed to the Debtor defaulting on its obligations under many of the Loans, hindering and delaying the efforts of the Lenders in their attempts to collect on the defaulted Loans, and subjecting the Debtor to substantial amounts of interest accruing and continuing to accrue on the Loans, subjecting the Debtor to lawsuits, substantial legal fees, default provisions, among other events, all to the detriment of the Debtor and its creditors.

**V.**    **The Debtor Takes Actions to Hinder and Delay Its Creditors, including the Lenders.**

49.    From 2010 through 2017, approximately forty lawsuits were filed by Lenders and others against the Debtor, principally for defaulted Loans (the "Lawsuits").

50.    In many instances, the Lenders engaged counsel in the United States and filed Lawsuits in federal and state court against the Debtor and others to try to collect on and enforce their Loans.  The majority of these Lawsuits were filed in the Circuit Court in and for the Eleventh Judicial Circuit in Florida.

51.    The first Lawsuit that was filed against the Debtor in connection with a defaulted Loan was in 2010 by Mr. Looby in respect of the selling financing that he provided to the Debtor in order to purchase the Property.

52.    At all relevant times in connection with Lawsuits, the Debtor sought to purposely delay most, if not all, of the Lawsuits based on the assertion of frivolous defenses, effectively hindering and delaying the Lenders from obtaining judgments and collecting on their Loans.

53.    In many of the Lawsuits, one of the frivolous defenses raised by the Debtor was based on a statute of limitations defense, wherein the Debtor took the position that the Lenders failed to seek to collect on their Loans for a period of in excess of 5 years.  However, despite raising such argument, the Debtor had knowingly extended such statute of limitations when the Debtor sent acknowledgment letters to many of the Lenders in respect to the debt owed to them in 2013.

54.    From 2015 through 2017, certain Lenders ultimately obtained judgments against the Debtor and were proceeding to collect on those judgments. The Debtor did not have the financial wherewithal to satisfy those judgments.

55.    MAHECHA, CASAS, and MAHECHA CASAS, among others, caused the Debtor to hinder and delay the Lenders' efforts to collect on their Loans. One way the Debtor did so was by moving money between and among bank accounts. Arcila testified on May 9, 2018 as follows:

13

**Q.** … Was there ever a situation where either you or [MAHECHA] were concerned that creditors who had gotten judgments against [the Debtor] could garnish [the Debtor's] bank accounts?

**A.** A hundred percent.

**Q.** And was there ever a situation in which to prevent those garnishments from happening you transferred money out of one bank account into a new -- different bank account so creditors couldn't garnish it?

**A.** Yes.

**Q.** And that was in effort to delay those creditors from collecting on that money and that judgment?

**A.** Correct.

**Q.** How many times did that happen?

**A.** A few times.

**Q.** More than once?

**A.** Yes.

*See,* Exhibit A Excerpt of Transcript of 2004 Examination of Juan Arcila at 184.

56.     In addition, in another series of events, in July 2016, the Debtor was faced with a levy on its personal property by a creditor who had obtained a judgment against the Debtor.    Upon information and belief, as a result of such levy, the Debtor developed and implemented a strategy designed to further hinder and delay the Debtor's Lenders and other creditors in connection with any future attempts by the Debtor's creditors to levy on its personal property.    Specifically, the Debtor orchestrated a transaction that purported to effectuate a "sale" of the Debtor's personal property to one of the Synergy Entities named Synergy Capital Group, LLC ("Synergy Capital") for an alleged purchase price of $400,000 (the "Synergy Sale Transaction").    In the Synergy Sale Transaction, the Debtor purported to sell all of its personal property to Synergy Capital for a purchase price of $400,000 and then lease it back.    However, instead of the Debtor receiving the proceeds of such sale, the Debtor financed 100% of the purchase price, with Synergy Capital purporting to grant a lien to the Debtor on

14

such personal property. Despite such "sale," the Debtor retained possession and control over the personal property, did not make any lease payments and Synergy Capital never made any payment towards such purchase price.

57.    Several months after the purported sale of the Debtor's personal property to Synergy Capital, the Debtor faced another levy by a Lender who had obtained a judgment against the Debtor. Specifically, in February 2017, a Lender named Fabio Posada Velasquez ("Posada"), who had previously on May 25, 2016 obtained a judgment against the Debtor in a Lawsuit in the amount of $455,338,[4] levied on certain of the Debtor's personal property at the hotel portion of the Property. The levy could not be completed that day, resulting in Posada rescheduling a further levy to occur a few days later (the "Continued Levy").

58.    On February 24, 2017, prior to the Continued Levy, the Debtor caused its affiliate Synergy Capital to file an Emergency Motion to Intervene and for Stay of Execution in respect of the Continued Levy (the "Original Stay Motion"). Pursuant to the Original Stay Motion, Synergy attempted to prevent Posada from executing on the personal property of the Debtor by arguing that such personal property was no longer owned by the Debtor by virtue of the Synergy Sale Transaction.

59.    In an email exchange on February 24, 2017 between and among Debtor's former counsel, MAHECHA and MAHECHA CASAS, among others, there was discussion of a plan for the Debtors to move money out of bank accounts at financial institutions in order to avoid execution thereon in respect of several writs of garnishment that had been issued by Posada.

60.    On February 24, 2017, at 9:08 a.m. in furtherance of that plan, MAHECHA and MAHECHA CASAS, among others, were advised to "[g]et the money out of those accounts…" which accounts had been identified from public records of writs of garnishment issued to several financial institutions in connection with Posada's efforts to collect on his judgment.

---

[4] *Fabio Posada Velasquez v. Bal Harbour Quarzo, LLC*, Case No, 15-10794 CA 01 (09) (Fla. 11th Cir.).

61.     The motive to hinder and delay the Lenders' collection efforts in respect of the Synergy Sale Transaction was confirmed in an email to MAHECHA, MAHECHA CASAS and others on July 14, 2016 at 8:51 p.m. Specifically, the email noted in relation to the transfer, that "IT DOES NOT MATTER AT THIS POINT, WE RATHER (sic) PROTECT THE PP FROM OTHER POTENTIAL CREDITORS."

62.     The Original Stay Motion was denied after a hearing on February 27, 2017.

63.     Not dissuaded, on February 28, 2017, Synergy Capital filed a Renewed Emergency Motion to Intervene and for Stay of Execution (the "Second Stay Motion"), seeking again to prevent Posada from levying on the remaining personal property at the Debtor's Property. In connection with the Second Stay Motion, MAHECHA CASAS signed and filed an Affidavit in support of the Second Stay Motion in which MAHECHA CASAS swore under oath that the facts contained in the Second Stay Motion, namely that the personal property assets of the Debtor had been sold to Synergy Capital in the Synergy Sale Transaction, were true and correct. MAHECHA CASAS signed the Affidavit as the Business Development Manager of Synergy, and knew the alleged sale of the personal property was a facade designed to hinder and delay the Lenders' collection efforts.

64.     In late February 2017, the State Court denied the Second Stay Motion.  Thereafter, Posada caused a sheriff's sale to be set for early April 2017 for both the real and the personal property of Debtor.

65.     After the denial of the Second Stay Motion, the Debtor attempted to buy time by engaging in negotiations regarding the Posada claim.

66.     After some initial negotiations, on March 10, 2017 at 4:41 p.m. MAHECHA CASAS gave the following instructions to the Debtor's former counsel regarding the negotiation "I talked to my dad and lets tell them ok we can make the 150k payment but we can only make them available until next friday (sic) all the amount. **We don't have any intention to make the payment really**.  But we

would gain a week to finalize hemphill, madison ect. (sic).   And be closer or even ready to file. Because if we do the payment and file that money is gone and its better to oay (sic) them whatever they get in 2 years."  (emphasis added).

67.     The fact that MAHECHA and his son MAHECHA CASAS were actively attempting to hinder and delay creditors was confirmed in a later email by MAHECHA CASAS.

68.     Specifically, on July 18, 2017 in an email sent at 8:32 a.m., MAHECHA-CASAS acknowledged that the "sale" of the personal property was done "thinking at the time that, that would stop from the levy of property but later we realize it didn't but no bad intention on not disclosing it [to Beach Haus]."

69.     In yet another example of the Debtor's efforts to hinder and delay its creditors, including the Lenders, the Debtor in April 2017 received a $1,000,000 loan from Beach Haus (more fully discussed below) and caused an amount in excess of $300,000 to be deposited into the bank account of one of the Synergy Entities. The Debtor diverted these funds with the intent to hinder and delay certain of the Lenders from collecting monies owed to them by the Debtor.

70.     Importantly, at all relevant times herein, the Debtor was insolvent on a balance sheet basis in that a fair valuation of its assets, including the Property, was far less than its liabilities, including the Bank Loans (principal and interest), the debts to the Lenders and other debts. In addition, at all relevant times herein, the Debtor was unable to pay its debts as they came due, in particular the debts owed to the Lenders (certain of which had filed suit for non-payment, and certain of which had obtained judgments) and with respect to the Bank Loans after July 2017 when the Debtor defaulted on the Bank Loans (which were in default for non-payment and otherwise).

**VI.     The Debtor's Insiders' Consider, But Fail to Take, Appropriate Action To Protect the Debtor and its Lenders.**

71.     By early 2017, the Debtor was in severe financial distress and MAHECHA, CASAS, and MAHECHA CASAS, among others, were considering the Debtor's options. One option was to

publicly market the Property for sale through an arms-length transaction. In connection therewith, the Debtor considered whether to engage the services of HFF, Inc. ("HFF"), a well-respected commercial real estate firm. HFF specializes in, among other things, real estate advisory services and selling commercial real estate.

72.     Ultimately, the Debtor did not formally engage HFF with respect to the marketing and sale of the Property. In fact, the Debtor did not formally engage any commercial real estate professional to: (i) prepare an offering memorandum for prospective purchasers; (ii) require prospective purchasers to sign a confidentiality agreement; (iii) identify a universe of potential purchasers; or (iv) market to a wide range of potential purchasers.

73.     MAHECHA, CASAS and MAHECHA CASAS failed to cause the Debtor to undertake these formal marketing efforts despite knowing the benefits of engaging in a formal marketing and sales process. For example, in 2015 and in connection with the property owned by Luna, MAHECHA, among others, caused Luna to engage CBRE as their commercial real estate professional to run a marketing and sales process. The Luna marketing and sales process was fulsome and successful in that it enabled Luna to sell its property for fair market value.

74.     In breaching their duties to the Debtor, MAHECHA, CASAS and MAHECHA CASAS failed to properly expose the Property to the marketplace for the purpose of maximizing value through a sale.

75.     MAHECHA, CASAS and MAHECHA CASAS, among others, also considered whether to cause the Debtor to file for Chapter 11 bankruptcy protection and discussed this option with Debtor's former counsel. Bankruptcy would have provided the Debtor with legitimate breathing room, and the opportunity to market and sell the Property through a formal process in order to maximize its value for the benefit of the Debtor and its creditors, including the Lenders.

76.    In breaching their duties to the Debtor and placing their personal interests above those of the Debtor and the Debtor's Lenders, MAHECHA, CASAS, and MAHECHA CASAS elected not to cause the Debtor to seek bankruptcy protection in order to protect their self-interests or those of their family, including CASAS' debt investment in the Debtor.

77.    Specifically, by March 3, 2017, a bankruptcy specialist with Debtor's former counsel communicated with MAHECHA CASAS. At 11:15 a.m. on that day, MAHECHA CASAS wrote outlining several questions. Included in the questions was one that essentially described that there were three "unsecured creditors" that were companies who had invested in the Debtor. Two of the companies, IMAC Inversiones, a Colombian entity and DMAC, a Panamanian entity, were as described by MAHECHA CASAS as being owned by MAHECHA, CASAS, MAHECHA CASAS and C. MAHECHA.  MAHECHA CASAS specifically noted that each entity had made unsecured debt investments in the Debtor and that the source of funds for at least part of these investments was the sale of CASAS' business in Colombia.  MAHECHA CASAS asked point blank if there was "any chance" that these claims would not be "accepted" as creditors in a bankruptcy.  Upon information and belief, this inquiry was made to discern the likelihood that the Defendants' personal unsecured investments would be protected and repaid as legitimate claims should the Debtor be placed in bankruptcy.

78.    Former counsel responded to MAHECHA CASAS' question on March 3, 2017 at 2:21 p.m. via email and advised that "[w]e do not get to select what debts are disclosed. All debts need to be disclosed. If the affiliates received notes, they may be recharacterized as equity and not receive a distribution."

79.    On March 6, 2017 at 10:49 a.m. via email, Debtor's primary former counsel and its bankruptcy specialist discussed an apparent lack of interest by the Debtor in filing for bankruptcy. Specifically, primary counsel advised bankruptcy counsel that "they," believed to be a reference to MAHECHA, CASAS and MAHECHA CASAS, had begun to rethink the decision to seek protection

19

in bankruptcy court and instead wanted to "try to work out the judgments piecemeal. Back to wanting to plug the holes in the dam. I know it's because of your answer to questions 1…" The reference to "question 1" is believed to be a reference to the advice that all debts must be listed in a bankruptcy and that it was possible that the "claims" of MAHECHA, MAHECHA CASAS, CASAS, and C. MAHECHA and their respective family members or spouses would be re-characterized as equity and receive no distribution in a chapter 11 bankruptcy.

80.     On March 8, 2017, MAHECHA CASAS again advised former counsel that the Debtor would continue to attempt to work out the creditor judgments as opposed to filing for bankruptcy. MAHECHA CASAS specifically noted that "there is no certainty that my moms [sic] [CASAS'] loan to the project could be somehow safe" and thus the Defendants did not want to file for bankruptcy.

81.     On March 15, 2017, MAHECHA CASAS again advised former counsel that there was a concern that filing a bankruptcy protection will cause a "risk that we will not get a dime out of it," while also caveating that no final decision had been made. It is believed that MAHECHA CASAS' statement refers to the "claim" of MAHECHA, CASAS, MAHECHA CASAS and C. MAHECHA and their other family members and spouses that would not receive any distributions in a bankruptcy.

82.     MAHECHA CASAS further advised the Debtor's former counsel that if his mother's loans and their family loans would not be paid, then none of the creditors' loans will be repaid.

83.     Discussions continued regarding the bankruptcy option through at least early April 2017. In the meantime, however, there were also efforts to reach agreements short of filing in bankruptcy with entity called Beach Haus Bal Harbour, LLC as described below.

84.     Thus, in spite of the Debtor being clearly insolvent and not paying its debts as they were coming due, and directly against the advice they were receiving from their former counsel, MAHECHA, CASAS and MAHECHA CASAS rejected the potential filing for bankruptcy protection by the Debtor because of self-interest and conflicts of interest on their part, and to protect their financial interests and

those of their relatives, including C. MAHECHA, all to determent of, and not in the best interests of, the Debtor and its creditors, including the Lenders.

## VII.    Attempts to Find Funding

85.    In addition to the Lender Lawsuits described above in November 2016, one of the mortgage loans owed by the Debtor to Mercantil Bank on the Property had matured and was in default.

86.    From at least as early as January 2017, MAHECHA CASAS, on behalf of Debtor, tried to find funding for the Debtor to satisfy its increasing liabilities. Upon information and belief, MAHECHA CASAS acted at the direction of, and with the authority of his father, MAHECHA.

87.    In late 2016 and early 2017, the Debtor entered into negotiations with a potential lender named Madison Realty Capital ("Madison") in order to either refinance the debt owed to Mercantil Bank or cause Madison to purchase the debt of Mercantil Bank, and in either event to provide additional capital to the Debtor.

88.    Among other terms, the Debtor proposed that (i) Madison would purchase the mortgage loan of Mercantil Bank by advancing an initial amount equal to $14.8 million and then making a further loan to the Debtor of up to a total amount of $28.75 million, (ii) the Debtor would allow Madison to commence and complete a "friendly foreclosure" of such mortgage loan, which would eliminate all junior lien holders (mainly the Lenders who had recorded judgment liens) and any other Lenders who were owed money and were or would be pursuing litigation to collect on such debts, and (iii) orchestrate the "friendly foreclosure" so that an affiliate of MAHECHA and MAHECHA CASAS would be the purchaser of the Property at the foreclosure sale, free of any of the claims of the Lenders.

89.    Upon information and belief, the negotiations with Madison for the loan failed for, among other reasons, concerns expressed by Madison as to being protected from potential fraudulent transfer liability by Debtor's creditors.

90.     The above transaction proposed by MAHECHA and  MAHECHA CASAS evidenced their intent to breach their fiduciary duty to the Debtor and its Lenders by attempting to orchestrate a transaction that would cause the Property to be transferred to an entity controlled by MAHECHA and MAHECHA CASAS while at the same time eliminating all debt owed to the Lenders.

### VIII.   Beach Haus Negotiations and Lock Up Agreements

91.     By March 2017, the Debtor was facing severe financial issues, had failed to obtain other financing with Madison, had failed to reach an accommodation with its creditors, and had failed to avail itself of the protections that would be afforded the Debtor and its creditors as a result of a bankruptcy filing. In addition, the Debtor was in default with Mercantil Bank in respect of the Bank Loans on the Property and was facing judgments from several Lenders.

92.      Still further, the Debtor was facing a sheriff's sale of the Property and all of the Debtor's personal property in early April 2017 by Posada.

93.     Against that backdrop, in early March 2017, the Debtor met with representatives of a to-be-formed company known as Beach Haus Bal Harbour, LLC ("Beach Haus"), a Florida limited liability company.

94.     Previous to that point, in December 2015, a comprehensive "as is" appraisal of the Property was performed by and/or for Mercantil Bank by an independent third party appraiser which concluded the Property was valued at $44,820,000. The appraisal was updated in February 2017 and found the Property to be valued at $40,260,000.

95.     In late March 2017, the Debtor continued negotiations with Beach Haus concerning a potential joint venture with regard to the Property. However, given the urgent need for monies before the scheduled sheriffs' sale of the personal property and the Property as a result of the Posada litigation, and given the unwillingness of the Defendants to file a Chapter 11 bankruptcy for the Debtor, the Debtor

insisted that Beach Haus immediately provide an amount equal to $1 million to the Debtor in connection with any such joint venture transaction.

96.     Ultimately, the Debtor entered into certain initial agreements with Beach Haus on April 3, 2017 (the "Lock Up Agreements"), the effect of which placed the Debtor at Beach Haus' mercy, including to deprive the Debtor of substantial value in the Property, substantially impair the Debtor's ability to negotiate with Beach Haus in connection with the Property, and to grant Beach Haus full control over the future of the Property, all in exchange for a $1.0 million dollar interim, short term loan that the Debtor needed to solve its immediate financial problems.

97.     As set forth below, in authorizing the Debtor to enter into the Lock Up Agreements as opposed to, among other things, filing for protection under chapter 11 of the Bankruptcy Code, MAHECHA, CASAS and MAHECHA CASAS breached their fiduciary duty to the Debtor and its creditors, including the Lenders.

98.     As part of the Lock Up Agreements, the Debtor and Beach Haus entered into a Master Agreement, dated April 3, 2017 (the "Master Agreement"), pursuant to the terms of which (i) Beach Haus agreed to make a loan to the Debtor in the amount of $1.0 million pursuant to a certain Promissory Note (the "Note") (ii) the Debtor agreed to execute and deliver an option to purchase the Property for the amount of $20 million (the "Option Agreement"), and (iii) the parties were to endeavor to enter into a formal agreement that memorialized the terms of a joint venture as outlined in a separate letter agreement (the "JV Agreement").

99.     Pursuant to the Master Agreement, the Note provided that it needed to be repaid by the Debtor in 90 days assuming the Debtor and Beach Haus were unable to finalize and agree on the terms of a joint venture pursuant to the terms of the JV Agreement. The Note carried an interest rate equal to "the highest rate allowable pursuant to Florida law."

100.    In addition, the Master Agreement provided that in addition to repaying the amounts owed under the Note, in order for the Debtor to prevent Beach Haus from exercising the option to purchase the Property under the Option Agreement, the Debtor was obligated to pay Beach Haus a "break-up fee" in the amount of $250,000.  If the Debtor did not repay the Note in full (with interest at the highest rate allowable under Florida law), plus the break-up fee of $250,000 within 90 days, then Beach Haus was entitled to exercise the option to purchase the Property pursuant to the Option Agreement. Under the Option Agreement, Beach Haus had the right to purchase the Property for $20 million with no additional consideration going to the Debtor at a time when the Property was worth more than double such amount pursuant to the existing appraisals.

101.    In addition, the Master Agreement prohibited the Debtor from marketing or selling the Property to any person or entity other than Beach Haus. Specifically, pursuant to Section 16 of the Master Agreement, the Debtor agreed as follows:

> Exclusivity. Quarzo covenants that neither it, any of its principals or affiliate shall seek to make another arrangement similar to the Venture or that would achieve the same purposes of the Venture from the Effective Date through the date on which the earlier occurs: a) a Venture is consummated between Beach Haus and Quarzo (or affiliate); or b) Beach Haus takes title to the Property pursuant to the Option Agreement.

> Quarzo covenants that neither it, any of its principals or affiliates shall seek to sell the Property or locate a purchaser for the Property from the Effective Date through the date on which the earlier occurs: a) a Venture is consummated between Beach Haus and Quarzo (or affiliate); or b) Beach Haus takes title to the Property pursuant to the Option Agreement,

102.    The Debtor did not engage in a proper marketing and sale process to maximize the value of the Property, including engagement of a professional commercial real estate broker or investment banker to assist in that process. Importantly, the exclusivity provision in the Master Agreement set forth above prevented the Debtor from engaging in any sort of formal marketing and sale process designed to maximize the value of the Property and provided Beach Haus with substantial leverage over the Debtor.

103.    In fact, as an example of such leverage, on or about May 16, 2017 at 10:39 a.m. via email, a representative of Beach Haus wrote to MAHECHA CASAS, among others, and advised that it had come to Beach Haus' attention that the Debtor had been offering the Property for sale in violation in Section 16 of the Master Agreement. Beach Haus demanded that the Debtor cease such efforts. MAHECHA CASAS responded the same day at 2:00 p.m. via email that Beach Haus was mistaken, that there had been no marketing efforts and their intent was to proceed with Beach Haus and "get the deal done."

104.    In addition, even though the Master Agreement provided that the Debtor and Beach Haus were to endeavor to enter into a written definitive agreement to memorialize the joint venture within 45 days, there was no obligation on the part of Beach Haus to do so, and no remedy in favor of the Debtor in the event the parties did not agree on the terms of a joint venture.

105.    Pursuant to the Option Agreement, Beach Haus "paid" an amount equal to $1,000,000 to the Debtor through the loan evidenced by the Note in exchange for the "exclusive right and option to purchase" the Property during a period of 210 days after the date thereof.

106.    As a result of the above and in lieu of filing a Chapter 11 bankruptcy case to protect the interests of the Debtor and its creditors, the Debtor allowed Beach Haus to "lock up" the Debtor's Property for a purchase price of $20 million, which was substantially less than the value of the Property, in exchange for a loan in the amount of $1.0 million to the Debtor (with a $250,000 break-up fee penalty).

107.    In essence, the Debtor either had to repay the Note with interest at the highest rate under applicable law plus a $250,000 breakup fee, or Beach Haus could exercise the Option Agreement to purchase the Property for $20 million. Upon information and belief, the Debtor was unable to repay the Note when it came due and the Defendants knew or should have known of the Debtor's inability to do so.

108.    MAHECHA, CASAS and MAHECHA CASAS knew or should have known that entering into such loan transaction and the Lock Up Agreements with Beach Haus was severely detrimental and adverse to the interests of the Debtor and clearly not in the best interests of the Debtor or its creditors.

109.    In further breach of their fiduciary duties to the Debtor, MAHECHA, CASAS and MAHECHA CASAS caused proceeds from the $1,000,000 loan to be used as follows: (i) to satisfy the judgment of Posada in order to prevent the scheduled sheriffs' sale, as opposed to obtaining the benefit of the automatic stay through a bankruptcy filing, (ii) to pay substantial legal fees owed to Debtor's former counsel, and (iii) to transfer an amount in excess of $300,000 to one of the Synergy Entities in order to prevent creditors of the Debtor to reach such funds, all to the detriment of Debtor and its creditors.

110.    In fact, on April 5, 2017, the day after the $1,000,000 loan was funded, Debtor's former counsel wrote an email to MAHECHA, among others, in regards to the use of such funds to pay the Lender who MAHECHA personally guaranteed and warned that there was a risk of an involuntary bankruptcy being filed against the Debtor by three Lenders. Former counsel stated, in part that: "[a] creditor can argue to the court that you are not managing the affairs of Quarzo for the benefit of all creditors, but rather for the ones where there are personal guarantees. I'm not telling you not to do it, but I need to make sure you understand that this can create serious issues."

**IX.    Attempted Joint Venture Agreement with Beach Haus**

111.    The JV Agreement proposed that Beach Haus would contribute $18 million dollars to a new entity and the Debtor would contribute the Property, and the new entity would seek non-recourse financing in the amount of approximately $10 million subsequent to the closing of the formation of the new entity and the contributions by the Debtor and Beach Haus to the new entity.

112.    From early April 2017 through June 2017, the Debtor and Beach Haus were unable to come to terms on the structure of a proposed joint venture between them in regards to the Property as set forth in the JV Agreement.

113.    Instead of advancing a joint venture, Beach Haus, who had substantial leverage over the Debtor under the Lock Up Agreements signed on April 3, 2017, required that the Debtor proceed with an outright sale of the Property to Beach Haus.  Due to the breaches of fiduciary duty by MAHECHA, CASAS and MAHECHA CASAS in causing the Debtor to enter into the Lock Up Agreements, the Debtor was at the mercy of Beach Haus and had no choice, other than the filing of a Chapter 11 bankruptcy case, which as set forth above, had been rejected by MAHECHA, CASAS and MAHECHA CASAS in order to protect their personal interests.

114.    On or about May 17, 2017 at 1:46 p.m. via email, a representative of Beach Haus forwarded what is, upon information and belief, the first draft of the proposed purchase and sale agreement (the "Draft PSA") to MAHECHA CASAS, among others. Among other terms, and in spite of the number and the amount of the Debtor's unpaid creditors, including the Lenders and the pending Lawsuits:

    a. the purchase price to be paid for the Property by Beach Haus to the Debtor was left blank; and

    b. there was a representation from the Debtor to the Purchaser that "[t]o the best of the knowledge of Seller, but without investigation, there is no pending litigation by or against Seller affecting the Property."

115.    On or about May 19, 2017 at 11:56 a.m. via email, the Debtor's former counsel commented on the Draft PSA as follows:

    a. he noted that the sale of the Property was "as is" and with "all faults and claims;"

27

b. he deleted the proposed Seller representation regarding the absence of pending litigation;

c. he questioned whether the cash payable at closing was a "reasonable equivalent value" noting that if it was not there could be challenges by creditors as a "fraudulent transfer;" and

d. he opined that "[t]his structure is unusual and is likely to be challenged as a fraudulent transfer jeopardizing the sale and making it subject to rescission, litigation and penalties."

116.    On or about May 31, 2017 at 8:54 a.m., a representative of Beach Haus forwarded a revised Draft PSA to MAHECHA and others. The revised draft was titled "Purchase and Sale Agreement - Quarzo (5_31_17) FG COMMENTS.docx." Upon information and belief, the title of the document reflects that the comments and edits were those of Beach Haus. In the portion of the revised Draft PSA proposing certain optional purchase events in connection with the deal, Beach Haus asked in all capital letters as follows: "[LET'S DISCUSS HOW WE WILL BE PROTECTED FROM LAWSUITS AND POTENTIAL BANKRUPTCY PROCEEDINGS AS A RESULT OF YOUR INVESTORS/CREDITORS]."

117.    Based on the above, MAHECHA, CASAS and MAHECHA CASAS knew or should have known that by entering into a purchase agreement with Beach Haus would be and was severely detrimental and adverse to the interests of the Debtor and clearly not in the best interests of the Debtor or its creditors because Beach Haus was seeking protection from the Debtor's creditors. Notwithstanding the knowledge that the Debtor's creditors would be adversely impacted by the above sale, MAHECHA, CASAS and MAHECHA CASAS caused the Debtor to proceed with the transaction with Beach Haus.

118.    Thereafter, on June 27, 2017, the Debtor and Beach Haus entered into a certain Purchase and Sale Agreement for the sale of the Property to Beach Haus in substantially the same form as the Draft PSA (the "Purchase Agreement").

119.    Pursuant to the Purchase Agreement and related closing documents, Beach Haus was to acquire all of the Debtor's right, title and interest in the Property, the improvements on the Property, the Debtor's licenses, permits, authorizations, approvals and general intangibles pertaining to the Property, all appurtenant rights on the Property and all furniture, fixtures, equipment, machinery and other items of personal property located on or used in the operation of the Property.

120.    The purchase price for the Property under the Purchase Agreement was for $18 million plus an "earn out" described in Exhibit B to the Purchase Agreement (the "Earn Out") The amounts borrowed by the Debtor under the Note were credited to the purchase price by Beach Haus.

121.    The Earn Out is not an ownership interest in the Property or an equity participation in Beach Haus. Rather, it is a contractual obligation of Beach Haus to the Debtor to make certain payments to the Debtor upon the "sale, rental or refinance" of the Property under the specific terms and conditions set forth in the Purchase Agreement. The Earn Out obligation was not secured by any collateral, including a junior mortgage on the Property.

122.    Moreover, the Earn Out made clear that Beach Haus retained full control over the Property without the consent of the Debtor, including (i) to enter into any contracts for the sale, lease or refinancing of the Property, and (ii) to sell or mortgage the Property or any portion thereof.

123.    The Earn Out provided for an allocation under the Earn Out waterfall set forth in the Purchase Agreement of 45% to the Debtor and 55% to Beach Haus based on an equity contribution and debt assumption by Beach Haus of $18 million. The Purchase Agreement made clear that additional funds would be needed to complete the Property. Importantly, the Purchase Agreement provided that Beach Haus had the discretion to accept additional contributions with no limits and, upon doing so, the

allocation attributed to the Debtor under the waterfall would be diluted. Any such dilution would reduce the amounts that might in the future be paid to the Debtor under the Earn Out.

124.    Ultimately, pursuant to a Fourth Amendment to the Purchase Agreement, the Debtor's allocation was diluted to 41.27% and the allocation to Beach Haus increased to 58.73%

125.    Pursuant to the Earn Out waterfall in the Purchase Agreement, Beach Haus had full discretion as to when any distributions would be made to the parties. Moreover, the determination of the amount of Available Cash (as defined in the Purchase Agreement) that would be subject to distribution in the Earn Out waterfall was "as determined by the manager of [Beach Haus] in his sole and absolute discretion."

126.    The Earn Out waterfall in essence provided that the Debtor would not be entitled to any Available Cash from a sale or refinancing of the Property unless and until (a) all debt on the Property were repaid (including the debt to Mercantil Bank), (b) any reserves were established and funded by Beach Haus, (c) Beach Haus received back all of its invested capital (which was estimated to be at least $30 million in the aggregate), and (d) Beach Haus received at least a 10% internal rate of return on its invested capital. Even after Beach Haus received such payments, the Debtor was only contractually entitled to receive 41.27% (subject to dilution as discussed above and below) of such Available Cash until Beach Haus received a 20% internal rate of return on its invested capital.

127.    Still further, the Earn Out provisions in the Purchase Agreement contained a specific subordination solely of the Debtor's interest in the Earn Out (as opposed to Beach Haus' interest therein). Specifically, the Purchase Agreement provided that "all of the [Debtor's] interest in the Earn Out is and shall be subordinate to any loan secured at the time of Closing or anytime in the future by the Property and Improvements in Purchaser's [Beach Haus'] sole discretion, provided the proceeds of any such loan are used directly or indirectly toward ... [the Property] or for distribution as a capital transaction."

128.   The Earn Out provisions of the Purchase Agreement placed the Debtor's interest in the Earn Out in a deeply subordinated position and granted Beach Haus full and complete control, in its sole discretion, over the distributions from the operations, sale or refinance of the Property, including to enable Beach Haus to distribute proceeds from capital transaction to itself to the exclusion of the Debtor.

129.   As with the Lock Up Agreements, MAHECHA, CASAS and MAHECHA CASAS breached their fiduciary duties to the Debtor and its creditors by allowing the Debtor to accept the deeply subordinated Earn Out in lieu of additional cash in the form of the purchase price at the closing.

130.   Notably, despite the Debtor selling all of its personal property used in connection with the Property to Beach Haus, nothing in the closing documents or the Purchase Agreement references that the Debtor had previously "sold" such personal property to Synergy Capital, or that Synergy Capital was joining in the sale of such personal property to Beach Haus.

131.   The purchase price for the Property was reduced from the initial price in the Option Agreement of $20 million down to an amount equal to $18,000,000. In addition, the Purchase Agreement stated that "[t]his amount may vary depending on the exact amount required at closing to satisfy existing judgments, closing costs and other additional items to be paid agreed by the parties but is not expected to exceed $19,631,000."

132.   Pursuant to the closing statement for the purchase of the Property, the Debtor as seller was required to fund an amount equal to $1,318,678.49. Upon information and belief, the Debtor did not have any funds and as a result, Beach Haus funded the amount otherwise required of the Debtor. As a consequence, the ultimate purchase price paid by the Beach Haus equaled $19,386,975.39.

133.   In addition, a requirement of the closing of the Property was that MAHECHA had to be released from his personal guarantee of the Bank Loans to Mercantil Bank.

134.    In addition and to make matters worse, the Defendants allowed Mercantil Bank to receive a pledge from the Debtor its interest in future proceeds under the deeply subordinated Earn Out in the Purchase Agreement in order to indemnify Mercantil Bank from any future fraudulent transfer liability expected to be asserted by the Debtor's creditors.

135.    In addition, as part of the purchase price for the Property, the closing statement reflected that at least 13 judgment lien creditors were being paid by Beach Haus in order to obtain a release and satisfaction of their liens on the Property, which payments totaled in excess of $4.5 million.

136.    Still further, MAHECHA caused a portion of the proceeds of the sale to be used to settle a lawsuit that had been filed by a Lender against him on a debt that he had personally guaranteed, even though that debt had not yet been reduced to a judgment or a lien on the Property.

137.    Neither the Purchase Agreement nor the closing statement provided for any reserve for the payment of claims being asserted in the numerous Lender Lawsuits that were pending at the time of the closing and which had not been reduced to a judgment as of the closing.

138.    One of the alleged judgments that was paid at the closing of the purchase of the Property was in favor of Hemphill Financial, Ltd. ("Hemphill"). Hemphill obtained a judgment against Luna in litigation and Hemphill bought proceedings supplementary against the Debtor, Mercantil Bank. Arcila, MAHECHA and their entities.

139.     In connection with such proceedings supplementary, Hemphill recorded a lis pendens against the Debtor's Property.

140.    On July 11, 2017, the Debtor successfully obtained an order of the State Court in the Hemphill litigation requiring Hemphill to post a bond in an amount in excess of $9.0 million or its lis pendens against the Property would be dissolved (the "Hemphill Order").

141.    However, instead of enforcing the Hemphill Order, former counsel for the Debtor negotiated a resolution of the Hemphill judgment for a payment from the Debtor- not Luna- in the amount of $1.0 million.

142.    Pursuant to the closing statement, an amount equal to $1,000,000 was paid to Hemphill from the proceeds of the sale of the Debtor's Property to Beach Haus. In addition, the closing statement shows that an additional amount equal to $100,000 was paid to Mercantil Bank for "Attorneys' Fees re: Hemphill Financial Litigation."

143.    As noted above, Luna was an entity that was also controlled by MAHECHA.

144.    The closing of the sale of the Property occurred on July 13, 2017.

145.    Other than the payments to creditors outlined above and despite owing millions of additional Loans to its Lenders, the Debtor did not receive any proceeds from or as a result of the sale to Beach Haus.

## X.    The Debtor's Post-Closing Continued Efforts to Hinder and Delay Creditors

146.    In late September 2017, after the closing of the sale of the Property to Beach Haus, the Debtor prepared a letter and package of information that was proposed to be sent to the Lenders. One of the purposes of the letter and package was to "keep investors calm" and "prevent more lawsuits." The letter was finalized and sent to the Lenders in October 2017.

147.    Notably, there is no disclosure whatsoever in the Debtor's October 2017 letter to the Lenders regarding (i) the appointment of Dillworth, as the receiver, over the Debtor and its assets just one month earlier, (ii) the existence of dozens of Lawsuits filed by similarly situated creditors or the payment of $4.5 million worth of judgments obtained by such creditors, or (iii) the consideration of a chapter 11 bankruptcy and why it was not being pursued by the Debtor as a viable option.

148.    Moreover, the October 2017 letter contained a number of misrepresentations designed to delay the Lenders in exercising any of their legal rights and remedies.  Such misrepresentations

included, but were not limited to, (i) the City of Bal Harbour did not renew the Property's construction permits "due to circumstances beyond our control," (ii) despite many meetings with the City of Bal Harbour and the Debtor's attorneys, the Debtor did not know the reasons for the nonrenewal of such permits, (iii) Mercantil Bank ceased funding on the construction loan despite it being approved because of the "delay in obtaining the permits," and (iv) the Debtor explored several alternatives for the Property, including contacting 12 different institutions to negotiate either the complete sale of the Property, refinancing of the Property or working with an investment group to purchase a percentage of the Property.

### XI.    Defendants' Breaches of Fiduciary Duty.

149.    As detailed herein, MAHECHA, CASAS and MAHECHA CASAS breached their fiduciary duties to the Debtor and its creditors by, among other things, (i) from 2010 through 2017 enticing and recruiting Lenders to make Loans to the Debtor when they knew or should have known that the Debtor was unable to repay such Loans, (ii) diverting and transferring substantial monies from the Debtor to themselves or for their personal benefit as fraudulent transfers (detailed below) at a time when the Debtor was insolvent and/or could not pay its debts as they come due, (iii) hindering and delaying the Lenders' efforts to collect on their Loans by diverting money from the Debtor's bank accounts, engaging in the sham Synergy Sale Transaction, submitting false affidavits to the State Court in connection with the Continued Levy by Posada, and knowingly raising frivolous defenses to the Lenders' Loans, (iv) failing to engage in a formal marketing and sale process with respect to the Property, (v) attempting to engage in a refinancing transaction and "friendly foreclosure" whereby all of the Loans would be eliminated without payment and the Defendants would end up with ownership of the Property free and clear of the Lenders' Loans, (vi) entering into the Lock Up Agreements with Beach Haus, thereby giving full control over the Property to Beach Haus, including giving Beach Haus the right to purchase the Property for $20 million when the Property had an appraised value in an amount

equal to at least $40 million, all in exchange for a $l.0 million short term, interim loan that the Debtor needed to resolve immediate financial issues, (vii) in order to protect their personal financial interests, failing and refusing to cause the Debtor to seek protection from creditors so as to maximize the value of the Property through the filing of a chapter 11 bankruptcy, (viii) causing the Debtor to enter into the Purchase Agreement with Beach Haus for a price equal to half of the then value of the Property, including to achieve a release of a personal guarantee by MAHECHA to Mercantil Bank, (ix) agreeing to the deeply subordinated Earn Out as part of the purchase price for the Property, (x) agreeing to pledge proceeds under the Earn Out to Mercantil Bank to indemnify Mercantil Bank against potential future fraudulent transfer claims from the Debtor's creditors, (xi) causing certain of the proceeds from the sale to be used to satisfy a Loan that MAHECHA personally guaranteed, (xii) continuing to misrepresent the status of the Property after the sale to Beach Haus in order to "keep investors calm" and "prevent more lawsuits", and (xiii) in the case of MAHECHA and CASAS, accepting Loan monies in excess of $1,500,000 directly and through their entities, from Lenders based on Promissory Notes  signed and issued by the Debtor, obligating the Debtor to repay the Loans.. (collectively, the "<u>Wrongful Acts</u>").

## XII. <u>Fraudulent Transfers made to or for the Benefit of MAHECHA, CASAS and MAHECHA CASAS</u>.

150. From February 16, 2011 through February 16, 2018, MAHECHA individually received transfers of money from the Debtor to and for his benefit in the aggregate amount of $197,520.86 and direct transfers from certain Lenders in the aggregate amount of  $510,887.96 (whose repayment was secured by Promissory Notes signed by the Debtor), in each case which transfers were and are actual and constructive fraudulent transfers as those terms are defined by law (the "<u>MAHECHA Transfers</u>"). Of that sum, an amount equal to $84,926.08 was transferred by the Debtor to or for the benefit of MAHECHA in the two years prior to the Petition Date and $452,807.88 constituted transfers by certain Lenders directly to or for the benefit of MAHECHA in the two years prior to the Petition Date (the "<u>Two Year MAHECHA Transfers</u>").  Of the MAHECHA Transfers, an amount equal to $180,421.29

was transferred by the Debtor to or for the benefit of MAHECHA in the four years prior to the Petition Date (the "Four Year MAHECHA Transfers").  *See,*  Exhibits B and J attached hereto and made a part hereof.

151.    Each of the MAHECHA Transfers made by the Debtor, including incurring the obligations on the amounts transferred by the Lenders to MAHECHA, was made with the actual intent to hinder and/or delay the Debtor's creditors, including the Lenders.

152.    Each of the MAHECHA Transfers made by the Debtor, including incurring the obligations on the amounts transferred by the Lenders to MAHECHA, was made at a time when the Debtor was woefully insolvent and was not paying its debts as they came due, including to Mercantil Bank and the Lenders.

153.    The Debtor did not receive any value, including reasonably equivalent value, for any of the MAHECHA Transfers.

154.    Additionally, from February 16, 2011 through February 16, 2018, MAHECHA and CASAS jointly received transfers of money from the Debtor to and for their benefit in the aggregate amount of $193,321.93 and direct transfers from certain Lenders in the aggregate amount of $466,145.63 (whose repayment was secured by Promissory Notes signed by the Debtor), in each case which transfers were and are actual and constructive fraudulent transfers as those terms are defined by law (the "MAHECHA/CASAS Joint Transfers").  Of the total MAHECHA/CASAS Joint Transfers $114,679.80 was transferred by Lenders directly to an entity believed to be controlled by MAHECHA and CASAS named Terra Mahecha Y Casas Group  in the two years prior to the Petition Date. Of the total MAHECHA/CASAS Joint Transfers, an amount equal to $52,827.67 was transferred by the Debtor to or for the benefit of MAHECHA/CASAS in the four years prior to the Petition Date (the "Four Year MAHECHA/CASAS Joint Transfers").  *See,*  Exhibits  C and J attached hereto and made a part hereof.

155.     Each of the MAHECHA/CASAS Joint Transfers made by the Debtor, including incurring the obligations on the amounts transferred by the Lenders to MAHECHA and CASAS, was made with the actual intent to hinder and/or delay the Debtor's creditors, including the Lenders.

156.     Each of the MAHECHA/CASAS Joint Transfers made by the Debtor, including incurring the obligations on the amounts transferred by the Lenders to MAHECHA and CASAS, was made at a time when the Debtor was woefully insolvent and was not paying its debts as they came due, including to Mercantil Bank and the Lenders.

157.     The Debtor did not receive any value, including reasonably equivalent value, for any of the MAHECHA/CASAS Joint Transfers.

158.     From February 16, 2011 through February 16, 2018 CASAS individually received transfers of money from the Debtor to or for her benefit in the aggregate amount of $369,025.18 and direct transfers from certain Lenders in the aggregate amount of $11,968.20 (whose repayment was secured by Promissory Notes signed by the Debtor), in each case which transfers were and are actual and constructive fraudulent transfers as those terms are defined by law (the "CASAS Transfers").  Of the Casas Transfers, an amount equal to $107,305.97 was transferred from the Debtor to or for the benefit of CASAS in the four years prior to the Petition Date (the "Four Year CASAS Transfers").  *See,* Exhibits D and J attached hereto and made a part hereof.

159.     Each of the CASAS Transfers made by the Debtor, including incurring the obligations on the amounts transferred by the Lenders to CASAS, was made with the actual intent to hinder and/or delay the Debtor's creditors, including the Lenders.

160.     Each of the CASAS Transfers made by the Debtor, including incurring the obligations on the amounts transferred by the Lenders to CASAS, was done at a time when the Debtor was woefully insolvent and was not paying its debts as they came due, including to Mercantil Bank and the Lenders.

161.    The Debtor did not receive any value, including reasonably equivalent value, for any of the CASAS Transfers.

162.    From February 16, 2011 through February 16, 2018, MAHECHA CASAS individually received transfers of money from the Debtor to and for his benefit in the aggregate amount of $159,694.19, which transfers were and are actual and constructive fraudulent transfers as those terms are defined by law (the "MAHECHA CASAS Transfers").  Of that sum, an amount of $90,414.50 was transferred to or for the benefit of MAHECHA CASAS in the two years prior to the Petition Date (the "Two Year MAHECHA CASAS Transfers").   Of the MAHECHA CASAS Transfers, a total of $156,905.07 was transferred to or for the benefit of MAHECHA CASAS in the four years prior to the Petition Date (the "Four Year MAHECHA CASAS Transfers"). *See,* Exhibit E attached hereto and made a part hereof.

163.    Each of the MAHECHA CASAS Transfers was made by the Debtor with the actual intent to hinder and/or delay the Debtor's creditors, including the Lenders.

164.    The Debtor made each of the MAHECHA CASAS Transfers at a time when the Debtor was woefully insolvent and was not paying its debts as they came due, including to Mercantil Bank and the Lenders.

165.    The Debtor did not receive any value, including reasonably equivalent value, for any of the MAHECHA CASAS Transfers.

166.    From February 16, 2011 through February 16, 2018, C. MAHECHA individually received transfers of money from the Debtor to or for his benefit in the aggregate amount of $108,077.00, which transfers were and are actual and constructive fraudulent transfers as those terms are defined by law (the "C. MAHECHA Transfers").   Of that sum, an amount of $7,165.50 was transferred to or for the benefit of C. MAHECHA in the two years prior to the Petition Date (the "Two Year C. MAHECHA Transfers"). Of the C. MAHECHA Transfers, a total of $58,692.00 was

38

transferred to or for the benefit of C. MAHECHA in the four years prior to the Petition Date (the "Four Year C. MAHECHA Transfers"). *See,* Exhibit F attached hereto and made a part hereof. C. MAHECHA was represented to the United States Internal Revenue Service to be an employee of the Debtor's alter ego, Synergy Capital Group, at least as of fiscal year 2016. While C. MAHECHA maintained substantial contacts with the United States, and in particular the Southern District of Florida, upon information and believe he was never employed by Debtor or any of its alter egos, and never provided any services to the Debtor of reasonably equivalent value.

167.    Each of the C. MAHECHA Transfers were made by the Debtor with the actual intent to hinder and/or delay the Debtor's creditors, including the Lenders.

168.    The Debtor made each of the C. MAHECHA Transfers at a time when the Debtor was woefully insolvent and was not paying its debts as they came due, including to Mercantil Bank and the Lenders.

169.    The Debtor did not receive any value, including reasonably equivalent value, for any of the C. MAHECHA Transfers.

170.    In addition, MEHECHA and CASAS received the benefit of transfers by the Debtor to pay their joint and individual obligations.  Specifically, MAHECHA and CASAS resided in a condominium located on Williams Island in the Southern District of Florida. They remain the titled property holders as of February 2020.  The condominium is located at 7000 Island Boulevard, Apartment 707, Aventura, Florida  33160.  From April 28, 2009 through June 15, 2016, MAHECHA and CASAS benefited personally from transfers made by the Debtor (through accounts of Synergy Capital Group, the Debtor's alter ego) in the total amount of $136,457.70 to 7000 Island Boulevard Condominium for the purposes of paying the requisite condominium fees, assessments and or other required payments relating to Apartment 707 (the "MAHECHA/CASAS Joint Condo Transfers").  Of the total MAHECHA/CASAS Joint Condo Transfers, an amount of $13,901.12 was made in the two

years prior to the Petition Date (the "Two Year MAHECHA/CASAS Joint Condo Transfers").  Of the

total MAHECHA/CASAS Joint Condo Transfers, an amount of $65,118.80 was made in the four years

prior to the Petition Date (the "Four Year MAHECHA/CASAS Joint Condo Transfers").  *See,* Exhibit

G attached hereto and made a part hereof.

171.    Each of the MAHECHA/CASAS Joint Condo Transfers was made by the Debtor with

the actual intent to hinder and/or delay the Debtor's creditors, including the Lenders.

172.    The Debtor made each of the MAHECHA/CASAS Joint Condo Transfers at a time when

the Debtor was woefully insolvent and was not paying its debts as they came due, including to Mercantil

Bank and the Lenders.

173.    The Debtor did not receive any value, including reasonably equivalent value, for any of

the MAHECHA/CASAS Joint Condo Transfers.

174.    Further, MAHECHA directed that the Debtor make payments for the lease of his luxury

vehicles.  Specifically, from March 10, 2008 through August 12, 2011, the Debtor (through accounts

of Synergy Capital Group, the Debtor's alter ego) transferred a total of $38,686.16 in car or lease

payments to BMW Financial Services for MAHECHA (the "MAHECHA BMW Transfers").  *See,*

Exhibit H attached hereto and made a part hereof.  Thereafter, from August 31, 2011 through September

10, 2012, the Debtor (through accounts of Synergy Capital Group, the Debtor's alter ego) transferred a

total of $25,206.55 in car or lease payments to Audi Financial Services for MAHECHA ((the

"MAHECHA Audi Transfers").  (*See,* Exhibit I attached hereto and made a part hereof.

175.    Each of the MAHECHA BMW Transfers and each of the MAHECHA Audi Transfers

were made by the Debtor with the actual intent to hinder and/or delay the Debtor's creditors, including

the Lenders.

176.     The Debtor made each of the MAHECHA BMW Transfers and each of the  MAHECHA Audi Transfers at a time when the Debtor was woefully insolvent and was not paying its debts as they came due, including to Mercantil Bank and the Lenders.

177.     The Debtor did not receive any value, including reasonably equivalent value, for any of the MAHECHA BMW Transfers or the MAHECHA Audi Transfers.

178.     None of the above described Transfers were discovered or could have reasonably been discovered by the Plaintiff until at least September 14, 2017 when the Plaintiff was appointed receiver in the State Court Case pursuant to the Receivership Order.

**COUNT I**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO SECTION 548(a)(1)(A) AND/OR 548(a)(1)(B) OF THE**
**BANKRUPTCY CODE**
*(Against Carlos Elias Mahecha Diaz)*

179.     Plaintiff re-states and re-alleges paragraphs 1 through 178, as if fully set forth herein.

180.     Pursuant to 11 U.S.C. §548(a)(1)(A), 548(a)(1)(B) and 11 U.S.C. §550, a trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) before the date of the filing of the petition, herein February 16, 2018, if the debtor voluntarily or involuntarily –

> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

> (B)     (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

>> (ii)     (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

41

(III) intended to incur, or believed that the debtor
would incur, debts that would be beyond the
debtor's ability to pay as such debts matured

181.    Pursuant to the Plan and the Confirmation Order, the Trustee has been right and power

to prosecute the claims and causes of action contained herein.

182.    Pursuant to 11 U.S.C. §550, in a fraudulent transfer action commenced under Section

548 of the Bankruptcy Code, the trustee may recover, for the benefit of the estate, the property

transferred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such

transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate

transferee of such initial transferee, i.e., any and all subsequent transferees.

183.    The Two Year MAHECHA Transfers each occurred within two (2) years of the Petition

Date and constituted transfers of an interest in property of the Debtor as set forth herein and are

avoidable under 11 U.S.C. §548(a)(1)(A) as actual intent fraudulent transfers and/or 11 U.S.C.

§548(a)(1)(B) as constructive fraudulent transfers.

184.    MAHECHA was the initial transferee or the entity for whose benefit the Two Year

MAHECHA Transfers were made, and as a result, the Trustee is entitled to avoid and recover the Two

Year MAHECHA Transfers from MAHECHA under 11 U.S.C. §§548(a)(1)(A), and 550 as actual

intent fraudulent transfers and/or 11 U.S.C. §§548(a)(1)(B) and 550 as constructive fraudulent transfers.

185.    As set forth herein, each of the Two Year MAHECHA Transfers was made by the Debtor

with the actual intent to hinder and delay, and to continue to hinder and delay, its creditors, including

the Lenders.

186.    Moreover, each of the following "badges of fraud" established by the Eleventh Circuit

Court of Appeals in *In re XYZ Options, Inc.*, 154 F.3d 1262 (11th Cir. 1998) exists in the present case

and establishes that the Debtor had the actual intent to hinder and/or delay its creditors, including

specifically the Lenders, in connection with the Two Year MAHECHA Transfers:

a.      <u>The transfer was to an insider</u>.  At all relevant times herein, MAHECHA was an insider of the Debtor as that term is defined under Section 101(31) of the Bankruptcy Code and applicable decisional law because MAHECHA was 50% owner of the Debtor, a manager of the Debtor and a control person of the Debtor.

b.      <u>The transfer was disclosed or concealed</u>.  The Two Year MAHECHA Transfers were not disclosed to the Lenders and creditors.

c.      <u>Before the transfer was made the debtor had been sued or threatened with suit</u>. Prior to and at the times of the Two Year MAHECHA Transfers, the Debtor was the subject of numerous Lawsuits by Lenders seeking to collect on their Loans, which Lawsuits were known by MAHECHA.

d.      <u>The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred</u>.  The Debtor did not receive reasonably equivalent value in exchange for the Two Year MAHECHA Transfers.

e.      <u>The debtor was insolvent or became insolvent shortly after the transfer was made</u>. As discussed above, the Debtor was insolvent at all relevant times, including when the Two Year MAHECHA Transfers were made.

f.      <u>The transfer occurred shortly before or shortly after a substantial debt was incurred.</u>  The Two Year MAHECHA Transfers were made at a time or times when the Debtor had incurred substantial debt to the Lenders and Mercantil Bank.

187.    The Debtor did not receive reasonably equivalent value in exchange for the Two Year MAHECHA Transfers.

188.    At the time of the Two Year MAHECHA Transfers, the Debtor (i) was insolvent or became insolvent as a result thereof; (ii) was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed, that the Debtor would incur debts beyond its ability to pay as they came due.

189.    MAHECHA, as an insider of the Debtor at all relevant times, was fully aware of the Debtors dire financial condition and therefore MAHECHA was not a good faith transferee.

190.    As a result, pursuant to 11 U.S.C. §550(a), the Trustee is entitled to avoid and recover the Two Year MAHECHA Transfers or the value thereof for the benefit of the Debtor's estate from

Defendant MAHECHA under 11 U.S.C. §548(a)(1)(A) as actual intent fraudulent transfers and/or 11 U.S.C. §548(a)(1)(B) as constructive fraudulent transfers.

191.    Therefore, in accordance with 11 U.S.C. §550(a), the recovery of the Two Year MAHECHA Transfers or the value thereof for the benefit of the Debtor's estate is authorized to the extent that the Two Year MAHECHA Transfers are avoided under 11 U.S.C. §548(a)(1)(A) and/or 11 U.S.C. §548(a)(1)(B).

**WHEREFORE**, Plaintiff, Drew M. Dillworth, as Trustee, demands judgment against Defendant, CARLOS EILIAS MAHECHA DIAZ (a) determining that each of the Two Year MAHECHA Transfers is fraudulent and avoidable under 11 U.S.C. §548(a)(1)(A) as actual intent fraudulent transfers and/or 11 U.S.C. §548(a)(1)(B) as constructive fraudulent transfers; (b) avoiding each of the Two Year MAHECHA Transfers and entering judgment in favor of Plaintiff against Defendant MAHECHA in the aggregate amount of Two Year MAHECHA Transfers or in such amounts as are determined at trial, plus pre-judgment interest from the date of the Two Year MAHECHA Transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant MAHECHA may have against the Debtor's estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

### COUNT II
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 548(a)(1)(A) AND/OR 548(a)(1)(B) OF THE BANKRUPTCY CODE
### *(Jointly Against Carlos Elias Mahecha Diaz and Maria Anastasia Casas Matiz)*

192.    Plaintiff re-states and re-alleges paragraphs 1 through 178, as if fully set forth herein.

193.    Pursuant to 11 U.S.C. §548(a)(1)(A), 548(a)(1)(B) and 11 U.S.C. §550, a trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that

was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) before the date

of the filing of the petition, herein February 16, 2018, if the debtor voluntarily or involuntarily –

> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

> (B)    (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured

194.    Pursuant to the Plan and the Confirmation Order, the Trustee has been right and power

to prosecute the claims and causes of action contained herein.

195.    Pursuant to 11 U.S.C. §550, in a fraudulent transfer action commenced under Section

548 of the Bankruptcy Code, the trustee may recover, for the benefit of the estate, the property

transferred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such

transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate

transferee of such initial transferee, i.e., any and all subsequent transferees.

196.    The Two Year MAHECHA/CASAS Joint Condo Transfers each occurred within two

(2) years of the Petition Date and constituted transfers of an interest in property of the Debtor as set

forth herein and are avoidable under 11 U.S.C. §548(a)(1)(A) as actual intent fraudulent transfers and/or

11 U.S.C. §548(a)(1)(B) as constructive fraudulent transfers.

197.    MAHECHA and CASAS jointly were the initial transferee or the entity for whose

benefit the Two Year MAHECHA/CASAS Joint Condo Transfers were made, and as a result, the

45

Trustee is entitled to avoid and recover the Two Year MAHECHA/CASAS Joint Condo Transfers from

MAHECHA and CASAS jointly under 11 U.S.C. §§548(a)(1)(A), and 550 as actual intent fraudulent

transfers and/or 11 U.S.C. §§548(a)(1)(B) and 550 as constructive fraudulent transfers.

198.    As set forth herein, each of the Two Year MAHECHA/CASAS Joint Condo Transfers

was made by the Debtor with the actual intent to hinder and delay, and to continue to hinder and delay,

its creditors, including the Lenders.

199.    Moreover, each of the following "badges of fraud" established by the Eleventh Circuit

Court of Appeals in *In re XYZ Options, Inc.*, 154 F.3d 1262 (11th Cir. 1998) exists in the present case

and establishes that the Debtor had the actual intent to hinder and/or delay its creditors, including

specifically the Lenders, in connection with the Two Year MAHECHA/CASAS Joint Condo Transfers:

> g.    The transfer was to an insider.  At all relevant times herein, MAHECHA and
> CASAS were each an insider of the Debtor as that term is defined under Section 101(31)
> of the Bankruptcy Code and applicable decisional law because MAHECHA was 50%
> owner of the Debtor, and MAHECHA and CASAS were managers of the Debtor and
> control persons of the Debtor.
>
> h.    The transfer was disclosed or concealed.  Two Year MAHECHA/CASAS Joint
> Condo Transfers were not disclosed to the Lenders and creditors.
>
> i.    Before the transfer was made the debtor had been sued or threatened with suit.
> Prior to and at the times of the Two Year MAHECHA/CASAS Joint Condo Transfers,
> the Debtor was the subject of numerous Lawsuits by Lenders seeking to collect on their
> Loans, which Lawsuits were known by MAHECHA and CASAS.
>
> j.    The value of the consideration received by the debtor was reasonably equivalent
> to the value of the asset transferred.  The Debtor did not receive reasonably equivalent
> value in exchange for the Two Year MAHECHA/CASAS Joint Condo Transfers.
>
> k.    The debtor was insolvent or became insolvent shortly after the transfer was made.
> As discussed above, the Debtor was insolvent at all relevant times, including when the
> Two Year MAHECHA/CASAS Joint Condo Transfers were made.
>
> l.    The transfer occurred shortly before or shortly after a substantial debt was
> incurred.  The Two Year MAHECHA/CASAS Joint Condo Transfers were made at a
> time or times when the Debtor had incurred substantial debt to the Lenders and Mercantil
> Bank.

200.    The Debtor did not receive reasonably equivalent value in exchange for the Two Year MAHECHA/CASAS Joint Condo Transfers.

201.    At the time of the Two Year MAHECHA/CASAS Joint Condo Transfers, the Debtor (i) was insolvent or became insolvent as a result thereof; (ii) was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed, that the Debtor would incur debts beyond its ability to pay as they came due.

202.    MAHECHA and CASAS, as insiders of the Debtor at all relevant times, were fully aware of the Debtor's dire financial condition and therefore MAHECHA and CASAS were not a good faith transferees.

203.    As a result, pursuant to 11 U.S.C. §550(a), the Trustee is entitled to avoid and recover the Two Year MAHECHA/CASAS Joint Condo Transfers or the value thereof for the benefit of the Debtor's estate from Defendants MAHECHA and CASAS jointly under 11 U.S.C. §548(a)(1)(A) as actual intent fraudulent transfers and/or 11 U.S.C. §548(a)(1)(B) as constructive fraudulent transfers.

204.    Therefore, in accordance with 11 U.S.C. §550(a), the recovery of the Two Year MAHECHA/CASAS Joint Condo Transfers or the value thereof for the benefit of the Debtor's estate is authorized to the extent that the Two Year MAHECHA/CASAS Joint Condo Transfers are avoided under 11 U.S.C. §548(a)(1)(A) and/or 11 U.S.C. §548(a)(1)(B).

**WHEREFORE**, Plaintiff, Drew M. Dillworth, as Trustee, demands judgment against Defendant, CARLOS EILIAS MAHECHA DIAZ and MARIA ANASTASIA CASES MATIZ jointly (a) determining that each of the Two Year MAHECHA/CASAS Joint Condo Transfers is fraudulent and avoidable under 11 U.S.C. §548(a)(1)(A) as actual intent fraudulent transfers and/or 11 U.S.C. §548(a)(1)(B) as constructive fraudulent transfers; (b) avoiding each of the Two Year MAHECHA/CASAS Joint Condo Transfers and entering judgment in favor of Plaintiff against

47

Defendants MAHECHA and CASAS jointly in the aggregate amount of Two Year MAHECHA/CASAS Joint Condo Transfers or in such amounts as are determined at trial, plus pre-judgment interest from the date of the Two Year MAHECHA/CASAS Joint Condo Transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant MAHECHA and CASAS may have against the Debtor's estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

### COUNT III
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 548(a)(1)(A) AND/OR 548(a)(1)(B)  OF THE BANKRUPTCY CODE
### *(Against Felipe Mahecha Casas)*

205.    Plaintiff re-states and re-alleges paragraphs 1 through 178, as if fully set forth herein.

206.    Pursuant to 11 U.S.C. §548(a)(1)(A) and 11 U.S.C. §550, a trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) before the date of the filing of the petition, herein February 16, 2018, if the debtor voluntarily or involuntarily –

> (a) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

> (B)    (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

>> (ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

> (III) intended to incur, or believed that the debtor
> would incur, debts that would be beyond the
> debtor's ability to pay as such debts matured

207.    Pursuant to the Plan and the Confirmation Order, the Trustee has been right and power

to prosecute the claims and causes of action contained herein.

208.    Pursuant to 11 U.S.C. §550, in a fraudulent transfer action commenced under Section

548 of the Bankruptcy Code, the trustee may recover, for the benefit of the estate, the property

transferred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such

transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate

transferee of such initial transferee, i.e., any and all subsequent transferees.

209.    The Two Year MAHECHA CASAS Transfers each occurred within two (2) years of the

Petition Date and constituted transfers of an interest in property of the Debtor as set forth herein and

are avoidable under 11 U.S.C. §548(a)(1)(A) as actual intent fraudulent transfers and/or 11 U.S.C.

§548(a)(1)(B) as constructive fraudulent transfers.

210.    MAHECHA CASAS was the initial transferee or the entity for whose benefit the Two

Year MAHECHA CASAS Transfers were made, and as a result, the Trustee is entitled to avoid and

recover the Two Year MAHECHA CASAS Transfers from MAHECHA CASAS under 11 U.S.C.

§§548(a)(1)(A) and 550 as actual intent fraudulent transfers and/or 11 U.S.C. §§548(a)(1)(B) and 550

as constructive fraudulent transfers.

211.    As set forth herein, each of the Two Year MAHECHA CASAS Transfers was made by

the Debtor with the actual intent to hinder and delay, and to continue to hinder and delay, its creditors,

including the Lenders.

212.    Moreover, each of the following "badges of fraud" established by the Eleventh Circuit

Court of Appeals in *In re XYZ Options, Inc.*, 154 F.3d 1262 (11th Cir. 1998) exists in the present case

and establishes that the Debtor had the actual intent to hinder and/or delay its creditors, including specifically the Lenders, in connection with the Two Year MAHECHA CASAS Transfers:

> a.    The transfer was to an insider.  At all relevant times herein, MAHECHA CASAS was an insider of the Debtor as that term is defined under Section 101(31) of the Bankruptcy Code and applicable decisional law because MAHECHA CASAS is the son of MAHECHA, was a *de facto* manager of the Debtor and a control person of the Debtor.

> b.    The transfer was disclosed or concealed.  The Two Year MAHECHA CASAS Transfers were not disclosed to the Lenders and creditors.

> c.    Before the transfer was made the debtor had been sued or threatened with suit.  Prior to and at the times of the Two Year MAHECHA CASAS Transfers, the Debtor was the subject of numerous Lawsuits by Lenders seeking to collect on their Loans, which Lawsuits were known by MAHECHA CASAS.

> d.    The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred.  The Debtor did not receive reasonably equivalent value in exchange for the Two Year MAHECHA CASAS Transfers.

> e.    The debtor was insolvent or became insolvent shortly after the transfer was made.  As discussed above, the Debtor was insolvent at all relevant times, including when the Two Year MAHECHA CASAS Transfers were made.

> f.    The transfer occurred shortly before or shortly after a substantial debt was incurred.  The Two Year MAHECHA CASAS Transfers were made at a time or times when the Debtor had incurred substantial debt to the Lenders and Mercantil Bank.

213.    The Debtor did not receive reasonably equivalent value in exchange for the Two Year MAHECHA CASAS Transfers.

214.    At the time of the Two Year MAHECHA CASAS Transfers, the Debtor (i) was insolvent or became insolvent as a result thereof; (ii) was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed, that the Debtor would incur debts beyond its ability to pay as they came due.

215.    MAHECHA CASAS, as an insider of the Debtor at all relevant times, was fully aware of the Debtors dire financial condition and therefore MAHECHA CASAS was not a good faith transferee.

216.    As a result, pursuant to 11 U.S.C. §550(a), the Trustee is entitled to avoid and recover the Two Year MAHECHA CASAS Transfers or the value thereof for the benefit of the Debtor's estate from Defendant MAHECHA CASAS under 11 U.S.C. §548(a)(1)(A) as actual intent fraudulent transfers and/or 11 U.S.C. §548(a)(1)(B) as constructive fraudulent transfers.

217.    Therefore, in accordance with 11 U.S.C. §550(a), the recovery of the Two Year MAHECHA CASAS Transfers or the value thereof for the benefit of the Debtor's estate is authorized to the extent that the Two Year MAHECHA CASAS Transfers are avoided under 11 U.S.C. §548(a)(1)(A) as actual intent fraudulent transfers and/or 11 U.S.C. §548(a)(1)(B) as constructive fraudulent transfers.

**WHEREFORE**, Plaintiff, Drew M. Dillworth, as Trustee, demands judgment against Defendant, FELIPE MAHECHA CASAS (a) determining that each of the Two Year MAHECHA CASAS Transfers is fraudulent and avoidable under 11 U.S.C. §548(a)(1)(A) as actual intent fraudulent transfers and/or 11 U.S.C. §548(a)(1)(B) as constructive fraudulent transfers; (b) avoiding each of the Two Year MAHECHA CASAS Transfers and entering judgment in favor of Plaintiff against Defendant MAHECHA CASAS in the aggregate amount of Two Year MAHECHA CASAS Transfers or in such amounts as are determined at trial, plus pre-judgment interest from the date of the Two Year MAHECHA CASAS Transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant MAHECHA CASAS may have against the Debtor's estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNT IV**
# AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 548(a)(1)(A) AND/OR 548(a)(1)(B) OF THE BANKRUPTCY CODE
*(Against Camilo E. Mahecha)*

218.    Plaintiff re-states and re-alleges paragraphs 1 through 178, as if fully set forth herein.

219.    Pursuant to 11 U.S.C. §548(a)(1)(A) and 11 U.S.C. §550, a trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) before the date of the filing of the petition, herein February 16, 2018, if the debtor voluntarily or involuntarily –

> (a) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

> (B)    (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured

220.    Pursuant to the Plan and the Confirmation Order, the Trustee has been right and power to prosecute the claims and causes of action contained herein.

221.    Pursuant to 11 U.S.C. §550, in a fraudulent transfer action commenced under Section 548 of the Bankruptcy Code, the trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such

transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, i.e., any and all subsequent transferees.

222.    The Two Year C. MAHECHA Transfers each occurred within two (2) years of the Petition Date and constituted transfers of an interest in property of the Debtor as set forth herein and are avoidable under 11 U.S.C. §548(a)(1)(A) as actual intent fraudulent transfers and/or 11 U.S.C. §548(a)(1)(B) as constructive fraudulent transfers.

223.    C. MAHECHA was the initial transferee or the entity for whose benefit the Two Year C. MAHECHA Transfers were made, and as a result, the Trustee is entitled to avoid and recover the Two Year C. MAHECHA Transfers from C. MAHECHA under 11 U.S.C. §§548(a)(1)(A) and 550 as actual intent fraudulent transfers and/or 11 U.S.C. §§548(a)(1)(B) and 550 as constructive fraudulent transfers.

224.    As set forth herein, each of the Two Year C. MAHECHA Transfers was made by the Debtor with the actual intent to hinder and delay, and to continue to hinder and delay, its creditors, including the Lenders.

225.    Moreover, each of the following "badges of fraud" established by the Eleventh Circuit Court of Appeals in *In re XYZ Options, Inc.*, 154 F.3d 1262 (11th Cir. 1998) exists in the present case and establishes that the Debtor had the actual intent to hinder and/or delay its creditors, including specifically the Lenders, in connection with the Two Year C. MAHECHA Transfers:

    a.    The transfer was to an insider.  At all relevant times herein, C. MAHECHA was an insider of the Debtor as that term is defined under Section 101(31) of the Bankruptcy Code and applicable decisional law because his father owned 50% of the Debtor and his father, mother and brother were each managers or *de facto* managers of the Debtor.

    b.    The transfer was disclosed or concealed.  The Two Year C. MAHECHA Transfers were not disclosed to the Lenders and creditors.

    c.    Before the transfer was made the debtor had been sued or threatened with suit. Prior to and at the times of the Two Year C. MAHECHA Transfers, the Debtor was the subject of numerous Lawsuits by Lenders seeking to collect on their Loans, which Lawsuits were known by C. MAHECHA.

53

d.      <u>The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred.</u>  The Debtor did not receive reasonably equivalent value in exchange for the Two Year C. MAHECHA Transfers.

e.      <u>The debtor was insolvent or became insolvent shortly after the transfer was made.</u> As discussed above, the Debtor was insolvent at all relevant times, including when the Two Year C. MAHECHA Transfers were made.

f.      <u>The transfer occurred shortly before or shortly after a substantial debt was incurred.</u>  The Two Year C. MAHECHA Transfers were made at a time or times when the Debtor had incurred substantial debt to the Lenders and Mercantil Bank.

226.    The Debtor did not receive reasonably equivalent value in exchange for the Two Year C. MAHECHA Transfers.

227.    At the time of the Two Year C. MAHECHA Transfers, the Debtor (i) was insolvent or became insolvent as a result thereof; (ii) was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed, that the Debtor would incur debts beyond its ability to pay as they came due.

228.    C. MAHECHA, as an insider of the Debtor at all relevant times, was fully aware of the Debtors dire financial condition and therefore C. MAHECHA was not a good faith transferee.

229.    As a result, pursuant to 11 U.S.C. §550(a), the Trustee is entitled to avoid and recover the Two Year C. MAHECHA Transfers or the value thereof for the benefit of the Debtor's estate from Defendant C. MAHECHA under 11 U.S.C. §548(a)(1)(A) as actual intent fraudulent transfers and/or 11 U.S.C. §548(a)(1)(B) as constructive fraudulent transfers .

230.    Therefore, in accordance with 11 U.S.C. §550(a), the recovery of the Two Year C. MAHECHA Transfers or the value thereof for the benefit of the Debtor's estate is authorized to the extent that the Two Year C. MAHECHA Transfers are avoided under 11 U.S.C. §548(a)(1)(A) as actual intent fraudulent transfers and/or 11 U.S.C. §548(a)(1)(B) as constructive fraudulent transfers.

**WHEREFORE**, Plaintiff, Drew M. Dillworth, as Trustee, demands judgment against Defendant, CAMILO E. MAHECHA (a) determining that each of the Two Year C. MAHECHA Transfers is fraudulent and avoidable under 11 U.S.C. §548(a)(1)(A) as actual intent fraudulent transfers and/or 11 U.S.C. §548(a)(1)(B) as constructive fraudulent transfers; (b) avoiding each of the Two Year C. MAHECHA Transfers and entering judgment in favor of Plaintiff against Defendant C. MAHECHA in the aggregate amount of Two Year C. MAHECHA Transfers or in such amounts as are determined at trial, plus pre-judgment interest from the date of the Two Year C. MAHECHA Transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant C. MAHECHA may have against the Debtor's estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

### COUNT V
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### PURSUANT TO 11 U.S.C. §544 AND FLA. STAT. §§726.105(1)(a), 726.108 AND 726.109
### *(Against Carlos Elias Mahecha Diaz)*

231. The Plaintiff re-alleges paragraphs 1 through 178 as if fully set forth herein.

232. Pursuant to 11 U.S.C. §544(b)(1), the "trustee may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim…. "

233. The Plaintiff sues MAHECHA to avoid and recover avoidable transfers pursuant to Chapter 726, *et. seq.*, Florida Statutes, namely the MAHECHA Transfers, the MAHECHA BMW Transfers and the MAHECHA Audi Transfers (collectively, the "Total MAHECHA Transfers").

234. Section 726.105(1)(a), Florida Statutes, provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

    (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

235.    Further, under Chapter 726 of the Florida Statutes, the Plaintiff may recover, for the benefit of the estate, the value of the property transferred, from – (1) the first transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any subsequent transferee of such first transferee.  MAHECHA was the initial transferee of the Total MAHECHA Transfers.

236.    As set forth in the docket and proofs of claim filed in this Bankruptcy Case, there was at all relevant times an unsecured creditor with standing to avoid the Total MAHECHA Transfers, including but not limited to the Lenders, and Jorge Loza and Larino Investments.

237.    As set forth herein, each of the Total MAHECHA Transfers was made by the Debtor with the actual intent to hinder and delay, and to continue to hinder and delay, its creditors, including the Lenders.

238.    Moreover, each of the following "badges of fraud" established by the Eleventh Circuit Court of Appeals in *In re XYZ Options, Inc.*, 154 F.3d 1262 (11th Cir. 1998) exists in the present case and establishes that the Debtor had the actual intent to hinder and/or delay its creditors, including specifically the Lenders, in connection with the Total MAHECHA Transfers:

      m.    The transfer was to an insider.  At all relevant times herein, MAHECHA was an insider of the Debtor as that term is defined under Section 101(31) of the Bankruptcy Code and applicable decisional law because MAHECHA was 50% owner of the Debtor, a manager of the Debtor and a control person of the Debtor.

      n.    The transfer was disclosed or concealed.  The Total MAHECHA Transfers were not disclosed to the Lenders and creditors.

      o.    Before the transfer was made the debtor had been sued or threatened with suit.  Prior to and at the times of the Total MAHECHA Transfers, the Debtor was the subject of numerous Lawsuits by Lenders seeking to collect on their Loans, which Lawsuits were known by MAHECHA.

      p.    The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred.  The Debtor did not receive reasonably equivalent value in exchange for the Total MAHECHA Transfers.

56

q.    <u>The debtor was insolvent or became insolvent shortly after the transfer was made.</u> As discussed above, the Debtor was insolvent at all relevant times, including when the Total MAHECHA Transfers were made.

r.    <u>The transfer occurred shortly before or shortly after a substantial debt was incurred.</u>  The Total MAHECHA Transfers were made at a time or times when the Debtor had incurred substantial debt to the Lenders and Mercantil Bank.

239.    The Total MAHECHA Transfers occurred either (i) within four years before the Petition Date, and/or (ii) within one year after they were discovered or could have reasonably been discovered by the Plaintiff, which was no earlier than on September 14, 2017 when the Plaintiff was appointed receiver in the State Court Case pursuant to the Receivership Order.  This action is being brought within the 2 year period provided for in 11 U.S.C.  §§108 and 546 and as such is timely as to the Total MAHECHA Transfers.

240.    The Total MAHECHA Transfers are avoidable under Section 544 of the Bankruptcy Code and Section 726.105(1)(a) of the Florida Statues.

241.    As a result of the Total MAHECHA Transfers, the Debtor has been damaged and pursuant to Fla. Stat., §§726.105(1)(a), 726.108 and 726.109, may avoid and recover the total value of such Total MAHECHA Transfers from MAHECHA.

**WHEREFORE**, Plaintiff, Drew M. Dillworth, as Trustee, demands judgment against Defendant, CARLOS EILIAS MAHECHA DIAZ (a) determining that each of the Total MAHECHA Transfers is fraudulent and avoidable under 11 U.S.C. §544 and Section 726.105(1)(a) of the Florida Statues; (b) avoiding each of the Total MAHECHA Transfers and entering judgment in favor of Plaintiff against Defendant MAHECHA in the aggregate amount of Total MAHECHA Transfers or in such amounts as are determined at trial, plus pre-judgment interest from the date of the Total MAHECHA Transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant MAHECHA may have against the Debtor's estate, including without

limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNT VI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. §544 AND FLA. STAT. §§726.105(1)(a), 726.108 AND 726.109**
*(Jointly Against Carlos Elias Mahecha Diaz and Maria Anastasia Casas Matiz)*

242.    The Plaintiff re-alleges paragraphs 1 through 178 as if fully set forth herein.

243.    Pursuant to 11 U.S.C. §544(b)(1), the "trustee may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim…. "

244.    The Plaintiff sues MAHECHA and CASAS, jointly, to avoid and recover avoidable transfers pursuant to Chapter 726, *et. seq.*, Florida Statutes, namely the MAHECHA/CASAS Joint Transfers and the MAHECHA/CASAS Joint Condo Transfers (collectively, the "Total MAHECHA/CASAS Joint Transfers").

245.    Section 726.105(1)(a), Florida Statutes, provides:

(1)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

    (a)  With actual intent to hinder, delay, or defraud any creditor of the debtor.

246.    Further, under Chapter 726 of the Florida Statutes, the Plaintiff may recover, for the benefit of the estate, the value of the property transferred, from – (1) the first transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any subsequent transferee of such first transferee.  MAHECHA and CASAS, jointly, were the initial transferees of or for whose benefit the Total MAHECHA/CASAS Joint Transfers were made.

247.    As set forth in the docket and proofs of claim filed in this Bankruptcy Case, there was at all relevant times an unsecured creditor with standing to avoid the Total MAHECHA/CASAS Joint Transfers, including but not limited to the Lenders, and Jorge Loza and Larino Investments.

248.     As set forth herein, each of the Total MAHECHA/CASAS Joint Transfers was made by the Debtor with the actual intent to hinder and delay, and to continue to hinder and delay, its creditors, including the Lenders.

249.     Moreover, each of the following "badges of fraud" established by the Eleventh Circuit Court of Appeals in *In re XYZ Options, Inc.*, 154 F.3d 1262 (11th Cir. 1998) exists in the present case and establishes that the Debtor had the actual intent to hinder and/or delay its creditors, including specifically the Lenders, in connection with the Total MAHECHA/CASAS Joint Transfers:

> s.     The transfer was to an insider.  At all relevant times herein, MAHECHA and CASAS were insiders of the Debtor as that term is defined under Section 101(31) of the Bankruptcy Code and applicable decisional law because MAHECHA was 50% owner of the Debtor, and MAHECHA and CASAS were managers of the Debtor and control persons of the Debtor.

> t.     The transfer was disclosed or concealed.  The Total MAHECHA/CASAS Joint Transfers were not disclosed to the Lenders and creditors.

> u.     Before the transfer was made the debtor had been sued or threatened with suit.  Prior to and at the times of the Total MAHECHA/CASAS Joint Transfers, the Debtor was the subject of numerous Lawsuits by Lenders seeking to collect on their Loans, which Lawsuits were known by MAHECHA and CASAS.

> v.     The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred.  The Debtor did not receive reasonably equivalent value in exchange for the Total MAHECHA/CASAS Joint Transfers.

> w.     The debtor was insolvent or became insolvent shortly after the transfer was made.  As discussed above, the Debtor was insolvent at all relevant times, including when the Total MAHECHA/CASAS Joint Transfers were made.

> x.     The transfer occurred shortly before or shortly after a substantial debt was incurred.  The Total MAHECHA/CASAS Joint Transfers were made at a time or times when the Debtor had incurred substantial debt to the Lenders and Mercantil Bank.

250.     The Total MAHECHA/CASAS Joint Transfers occurred either (i) within four years before the Petition Date, and/or (ii) within one year after they were discovered or could have reasonably been discovered by the Plaintiff, which was no earlier than on September 14, 2017 when the Plaintiff was appointed receiver in the State Court pursuant to the Receivership Order.  This action is being

brought within the 2 year period provided for in 11 U.S.C. §§108 and 546 and as such is timely as to the Total MAHECHA/CASAS Joint Transfers.

251.    The Total MAHECHA/CASAS Joint Transfers are avoidable under Section 544 of the Bankruptcy Code and Section 726.105(1)(a) of the Florida Statues.

252.    As a result of the Total MAHECHA/CASAS Joint Transfers, the Debtor has been damaged and pursuant to Fla. Stat., §§726.105(1)(a), 726.108 and 726.109, may avoid and recover the total value of such Total MAHECHA/CASAS Joint Transfers from MAHECHA and CASAS jointly.

**WHEREFORE**, Plaintiff, Drew M. Dillworth, as Trustee, demands judgment against Defendant, CARLOS EILIAS MAHECHA DIAZ and MARIA ANASTASIA CASES MATIZ (a) determining that each of the Total MAHECHA/CASAS Joint Transfers is fraudulent and avoidable under 11 U.S.C. §544 and Section 726.105(1)(a) of the Florida Statues; (b) avoiding each of the Total MAHECHA/CASAS Joint Transfers and entering judgment in favor of Plaintiff against Defendants MAHECHA and CASAS jointly in the aggregate amount of Total MAHECHA/CASAS Joint Transfers or in such amounts as are determined at trial, plus pre-judgment interest from the date of the Total MAHECHA/CASAS Joint Transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendants MAHECHA and CASAS may have against the Debtor's estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

## COUNT VII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### PURSUANT TO 11 U.S.C. §544 AND FLA. STAT. §§726.105(1)(a), 726.108 AND 726.109
*(Against Maria Anastasia Casas Matiz)*

253.    The Plaintiff re-alleges paragraphs 1 through 178 as if fully set forth herein.

254.    Pursuant to 11 U.S.C.  §544(b)(1), the "trustee may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim…. "

255.    The Plaintiff sues CASAS to avoid and recover avoidable transfers pursuant to Chapter 726, *et. seq.*, Florida Statutes, namely the CASAS Transfers.

256.    Section 726.105(1)(a), Florida Statutes, provides:

(1)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a)  With actual intent to hinder, delay, or defraud any creditor of the debtor.

257.    Further, under Chapter 726 of the Florida Statutes, the Plaintiff may recover, for the benefit of the estate, the value of the property transferred, from – (1) the first transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any subsequent transferee of such first transferee.  CASAS was the initial transferee of the CASAS Transfers.

258.    As set forth in the docket and proofs of claim filed in this Bankruptcy Case, there was at all relevant times an unsecured creditor with standing to avoid the CASAS Transfers, including but not limited to the Lenders, and Jorge Loza and Larino Investments.

259.    As set forth herein, each of the CASAS Transfers was made by the Debtor with the actual intent to hinder and delay, and to continue to hinder and delay, its creditors, including the Lenders.

260.    Moreover, each of the following "badges of fraud" established by the Eleventh Circuit Court of Appeals in *In re XYZ Options, Inc.*, 154 F.3d 1262 (11th Cir. 1998) exists in the present case and establishes that the Debtor had the actual intent to hinder and/or delay its creditors, including specifically the Lenders, in connection with the CASAS Transfers:

y.    The transfer was to an insider.  At all relevant times herein, CASAS was an insider of the Debtor as that term is defined under Section 101(31) of the Bankruptcy Code and applicable decisional law because CASAS was a manager and director of the Debtor and a control person of the Debtor.

z.    The transfer was disclosed or concealed.  The CASAS Transfers were not disclosed to the Lenders and creditors.

aa.    Before the transfer was made the debtor had been sued or threatened with suit. Prior to and at the times of the CASAS Transfers, the Debtor was the subject of

numerous Lawsuits by Lenders seeking to collect on their Loans, which Lawsuits were known by CASAS.

bb.  <u>The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred</u>.  The Debtor did not receive reasonably equivalent value in exchange for the CASAS Transfers.

cc.  <u>The debtor was insolvent or became insolvent shortly after the transfer was made</u>.  As discussed above, the Debtor was insolvent at all relevant times, including when the CASAS Transfers were made.

dd.  <u>The transfer occurred shortly before or shortly after a substantial debt was incurred.</u>  The CASAS Transfers were made at a time or times when the Debtor had incurred substantial debt to the Lenders and Mercantil Bank.

261.  The CASAS Transfers occurred either (i) within four years before the Petition Date, and/or (ii) within one year after they were discovered or could have reasonably been discovered by the Plaintiff, which is no earlier than on September 14, 2017 when the Plaintiff was appointed receiver in the State Court pursuant to the Receivership Order.  This action is being brought within the 2 year period provided for in 11 U.S.C.  §§108 and 546 and as such is timely as to the CASAS Transfers.

262.  The CASAS Transfers are avoidable under Section 544 of the Bankruptcy Code and Section 726.105(1)(a) of the Florida Statues.

263.  As a result of the CASAS Transfers, the Debtor has been damaged and pursuant to Fla. Stat., §§726.105(1)(a), 726.108 and 726.109, may avoid and recover the total value of such CASAS Transfers from CASAS.

**WHEREFORE**, Plaintiff, Drew M. Dillworth, as Trustee, demands judgment against Defendant, MARIA ANASTASIA CASES MATIZ (a) determining that each of the CASAS Transfers is fraudulent and avoidable under 11 U.S.C. §544 and Section 726.105(1)(a) of the Florida Statues; (b) avoiding each of the CASAS Transfers and entering judgment in favor of Plaintiff against Defendant CASAS in the aggregate amount of CASAS Transfers or in such amounts as are determined at trial, plus pre-judgment interest from the date of the CASAS Transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant CASAS may have

against the Debtor's estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNT VIII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. §544 AND FLA. STAT. §§726.105(1)(a), 726.108 AND 726.109**
*(Against Felipe Mahecha Casas)*

264.    The Plaintiff re-alleges paragraphs 1 through 178 as if fully set forth herein.

265.    Pursuant to 11 U.S.C. §544(b)(1), the "trustee may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim…. "

266.    The Plaintiff sues MAHECHA CASAS to avoid and recover avoidable transfers pursuant to Chapter 726, *et. seq*., Florida Statutes, namely the MAHECHA CASAS Transfers.

267.    Section 726.105(1)(a), Florida Statutes, provides:

(1)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

     (a)  With actual intent to hinder, delay, or defraud any creditor of the debtor.

268.    Further, under Chapter 726 of the Florida Statutes, the Plaintiff may recover, for the benefit of the estate, the value of the property transferred, from – (1) the first transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any subsequent transferee of such first transferee.  MAHECHA CASAS was the initial transferee of the MAHECHA CASAS Transfers.

269.    As set forth in the docket and proofs of claim filed in this Bankruptcy Case, there was at all relevant times an unsecured creditor with standing to avoid the MAHECHA CASAS Transfers, including but not limited to the Lenders, and Jorge Loza and Larino Investments.

270.    As set forth herein, each of the MAHECHA CASAS Transfers was made by the Debtor with the actual intent to hinder and delay, and to continue to hinder and delay, its creditors, including the Lenders.

271.    Moreover, each of the following "badges of fraud" established by the Eleventh Circuit Court of Appeals in *In re XYZ Options, Inc.*, 154 F.3d 1262 (11th Cir. 1998) exists in the present case and establishes that the Debtor had the actual intent to hinder and/or delay its creditors, including specifically the Lenders, in connection with the MAHECHA CASAS Transfers:

> ee.    <u>The transfer was to an insider</u>.  At all relevant times herein, MAHECHA CASAS was an insider of the Debtor as that term is defined under Section 101(31) of the Bankruptcy Code and applicable decisional law because MAHECHA CASAS is the son of MAHECHA, was a *de facto* manager of the Debtor and a control person of the Debtor.

> ff.    <u>The transfer was disclosed or concealed</u>.  The MAHECHA CASAS Transfers were not disclosed to the Lenders and creditors.

> gg.    <u>Before the transfer was made the debtor had been sued or threatened with suit</u>. Prior to and at the times of the MAHECHA CASAS Transfers, the Debtor was the subject of numerous Lawsuits by Lenders seeking to collect on their Loans, which Lawsuits were known by MAHECHA CASAS.

> hh.    <u>The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred</u>.  The Debtor did not receive reasonably equivalent value in exchange for the MAHECHA CASAS Transfers.

> ii.    <u>The debtor was insolvent or became insolvent shortly after the transfer was made</u>. As discussed above, the Debtor was insolvent at all relevant times, including when the MAHECHA CASAS Transfers were made.

> jj.    <u>The transfer occurred shortly before or shortly after a substantial debt was incurred.</u>  The MAHECHA CASAS Transfers were made at a time or times when the Debtor had incurred substantial debt to the Lenders and Mercantil Bank.

272.    The MAHECHA CASAS Transfers occurred either (i) within four years before the Petition Date, and/or (ii) within one year after they were discovered or could have reasonably been discovered by the Plaintiff, which is no earlier than on September 14, 2017 when the Plaintiff was appointed receiver in the State Court pursuant to the Receivership Order.  This action is being brought within the 2 year period provided for in 11 U.S.C.  §§108 and 546 and as such is timely as to the MAHECHA CASAS Transfers.

273.    The MAHECHA CASAS Transfers are avoidable under Section 544 of the Bankruptcy Code and Section 726.105(1)(a) of the Florida Statues.

Case 20-01079-SMG    Doc 1    Filed 02/14/20    Page 65 of 115

274.    As a result of the MAHECHA CASAS Transfers, the Debtor has been damaged and pursuant to Fla. Stat., §§726.105(1)(a), 726.108 and 726.109, may avoid and recover the total value of such MAHECHA CASAS Transfers from MAHECHA CASAS.

**WHEREFORE**, Plaintiff, Drew M. Dillworth, as Trustee, demands judgment against Defendant, FELIPE MAHECHA CASES (a) determining that each of the MAHECHA CASAS Transfers is fraudulent and avoidable under 11 U.S.C. §544 and Section 726.105(1)(a) of the Florida Statues; (b) avoiding each of the MAHECHA CASAS Transfers and entering judgment in favor of Plaintiff against Defendant MAHECHA CASAS in the aggregate amount of MAHECHA CASAS Transfers or in such amounts as are determined at trial, plus pre-judgment interest from the date of the MAHECHA CASAS Transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant MAHECHA CASAS may have against the Debtor's estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNT IX**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. §544 AND FLA. STAT. §§726.105(1)(a), 726.108 AND 726.109**
*(Against Camilo E. Mahecha)*

275.    The Plaintiff re-alleges paragraphs 1 through 178 as if fully set forth herein.

276.    Pursuant to 11 U.S.C. §544(b)(1), the "trustee may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim…. "

277.    The Plaintiff sues C. MAHECHA to avoid and recover avoidable transfers pursuant to Chapter 726, *et. seq.*, Florida Statutes, namely the C. MAHECHA Transfers.

278.    Section 726.105(1)(a), Florida Statutes, provides:

(1)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a)  With actual intent to hinder, delay, or defraud any creditor of the debtor.

279.   Further, under Chapter 726 of the Florida Statutes, the Plaintiff may recover, for the benefit of the estate, the value of the property transferred, from – (1) the first transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any subsequent transferee of such first transferee.  C. MAHECHA was the initial transferee of the C. MAHECHA Transfers.

280.   As set forth in the docket and proofs of claim filed in this Bankruptcy Case, there was at all relevant times an unsecured creditor with standing to avoid the C. MAHECHA Transfers, including but not limited to the Lenders, and Jorge Loza and Larino Investments.

281.   As set forth herein, each of the C. MAHECHA Transfers was made by the Debtor with the actual intent to hinder and delay, and to continue to hinder and delay, its creditors, including the Lenders.

282.   Moreover, each of the following "badges of fraud" established by the Eleventh Circuit Court of Appeals in *In re XYZ Options, Inc.*, 154 F.3d 1262 (11th Cir. 1998) exists in the present case and establishes that the Debtor had the actual intent to hinder and/or delay its creditors, including specifically the Lenders, in connection with the C. MAHECHA Transfers:

kk.   The transfer was to an insider.  C. MAHECHA was an insider of the Debtor as that term is defined under Section 101(31) of the Bankruptcy Code and applicable decisional law because his father owned 50% of the Debtor and his father, mother and brother were each managers or *de facto* managers of the Debtor.

ll.   The transfer was disclosed or concealed.  The C. MAHECHA Transfers were not disclosed to the Lenders and creditors.

mm.   Before the transfer was made the debtor had been sued or threatened with suit.  Prior to and at the times of the C. MAHECHA Transfers, the Debtor was the subject of numerous Lawsuits by Lenders seeking to collect on their Loans, which Lawsuits were known by C. MAHECHA.

nn.   The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred.  The Debtor did not receive reasonably equivalent value in exchange for the C. MAHECHA Transfers.

66

oo.    <u>The debtor was insolvent or became insolvent shortly after the transfer was made.</u> As discussed above, the Debtor was insolvent at all relevant times, including when the C. MAHECHA Transfers were made.

pp.    <u>The transfer occurred shortly before or shortly after a substantial debt was incurred.</u> The C. MAHECHA Transfers were made at a time or times when the Debtor had incurred substantial debt to the Lenders and Mercantil Bank.

283.    The C. MAHECHA Transfers occurred either (i) within four years before the Petition Date, and/or (ii) within one year after they were discovered or could have reasonably been discovered by the Plaintiff, which is no earlier than on September 14, 2017 when the Plaintiff was appointed receiver in the State Court pursuant to the Receivership Order.  This action is being brought within the 2 year period provided for in 11 U.S.C.  §§108 and 546 and as such is timely as to the C. MAHECHA Transfers.

284.    The C. MAHECHA Transfers are avoidable under Section 544 of the Bankruptcy Code and Section 726.105(1)(a) of the Florida Statues.

285.    As a result of the C. MAHECHA Transfers, the Debtor has been damaged and pursuant to Fla. Stat., §§726.105(1)(a), 726.108 and 726.109, may avoid and recover the total value of such C. MAHECHA Transfers from C. MAHECHA.

**WHEREFORE**, Plaintiff, Drew M. Dillworth, as Trustee, demands judgment against Defendant, CAMILO E. MAHECHA (a) determining that each of the C. MAHECHA Transfers is fraudulent and avoidable under 11 U.S.C. §544 and Section 726.105(1)(a) of the Florida Statues; (b) avoiding each of the C. MAHECHA Transfers and entering judgment in favor of Plaintiff against Defendant C. MAHECHA in the aggregate amount of C. MAHECHA Transfers or in such amounts as are determined at trial, plus pre-judgment interest from the date of the C. MAHECHA Transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant C. MAHECHA may have against the Debtor's estate, including without limitation, pursuant

to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNT X**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. §544 AND FLA. STAT. §§726.105(1)(b),**
**726.106(1), 726.108 AND 726.109**
*(Against Carlos Elias Mahecha Diaz)*

286.     The Plaintiff re-alleges paragraphs 1 through 178 as if fully set forth herein.

287.     Pursuant to 11 U.S.C.  §544(b)(1), the "trustee may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim…. "

288.     The Plaintiff sues MAHECHA to avoid and recover avoidable transfers pursuant to Chapter 726, *et. seq*., Florida Statutes, namely the Four Year MAHECHA Transfers.

289.     Section 726.105(1)(b), Florida Statutes, provides:

(1)     A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

* * *

(b) without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

290.     Further, Section 726.106(1), Florida Statutes, provides:

(1)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent in value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

291.    Further, under Chapter 726 of the Florida Statutes, the Plaintiff may recover, for the benefit of the estate, the value of the property transferred, from – (1) the first transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any subsequent transferee of such first transferee.  MAHECHA was the initial transferee of or for whose benefit the Four Year MAHECHA Transfers were made.

292.    As set forth in the docket and proofs of claim filed in this Bankruptcy Case, there was at all relevant times an unsecured creditor with standing to avoid the Four Year MAHECHA Transfers, including but not limited to the Lenders, and Jorge Loza and Larino Investments.

293.    The Four Year MAHECHA Transfers constituted a transfer made by the Debtor for which the Debtor did not receive reasonably equivalent value in exchange for the same.

294.    At the time of the Four Year MAHECHA Transfers, the Debtor had creditors holding unsecured claims and was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction, or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

295.    The Four Year MAHECHA Transfers are avoidable under Section 544 of the Bankruptcy Code and Sections 726.105(1)(b) and/or 726.106(1) of the Florida Statues to the extent they were made within four years of the Petition Date.

296.    As a result of the Four Year MAHECHA Transfers, the Debtor has been damaged and pursuant to Fla. Stat., §§726.105(1)(b), 726.106(1), 726.108 and 726.109, may avoid and recover the total value of such Four Year MAHECHA Transfers from MAHECHA.

**WHEREFORE**, Plaintiff, Drew M. Dillworth, as Trustee, demands judgment against Defendant, CARLOS EILIAS MAHECHA DIAZ (a) determining that each of the Four MAHECHA Transfers that were made within four years of the Petition Date is fraudulent and avoidable under 11

U.S.C. §544 and Section 726.105(1)(b) and/or 726.106(1) of the Florida Statues; (b) avoiding each of such Four MAHECHA Transfers and entering judgment in favor of Plaintiff against Defendant MAHECHA in the aggregate amount of such Four Year MAHECHA Transfers or in such amounts as are determined at trial, plus pre-judgment interest from the date of such Four Year MAHECHA Transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant MAHECHA may have against the Debtor's estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNT XI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. §544 AND FLA. STAT. §§726.105(1)(b),**
**726.106(1), 726.108 AND 726.109**
***(Jointly Against Carlos Elias Mahecha Diaz and Maria Anastasia Casas Matiz)***

297.    The Plaintiff re-alleges paragraphs 1 through 178 as if fully set forth herein.

298.    Pursuant to 11 U.S.C. §544(b)(1), the "trustee may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim…. "

299.    The Plaintiff sues MAHECHA and CASAS jointly to avoid and recover avoidable transfers pursuant to Chapter 726, *et. seq.*, Florida Statutes, namely the Four Year MAHECHA/CASAS Joint Transfers and the Four Year MAHECHA/CASAS Joint Condo Transfers (collectively, the "Total Four Year MAHECHA/CASAS Joint Transfers").

300.    Section 726.105(1)(b), Florida Statutes, provides:

(1)    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

* * *

(b) without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

301.    Further, Section 726.106(1), Florida Statutes, provides:

(1)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent in value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

302.    Further, under Chapter 726 of the Florida Statutes, the Plaintiff may recover, for the benefit of the estate, the value of the property transferred, from – (1) the first transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any subsequent transferee of such first transferee.  MAHECHA and CASAS jointly were the initial transferee of or for whom the Total Four Year MAHECHA/CASAS Joint Transfers were made.

303.    As set forth in the docket and proofs of claim filed in this Bankruptcy Case, there was at all relevant times an unsecured creditor with standing to avoid the Total Four Year MAHECHA/CASAS Joint Transfers, including but not limited to the Lenders, and Jorge Loza and Larino Investments.

304.    The  Total Four Year MAHECHA/CASAS Joint Transfers constituted a transfer made by the Debtor for which the Debtor did not receive reasonably equivalent value in exchange for the same.

305.    At the time of the  Total Four Year MAHECHA/CASAS Joint Transfers, the Debtor had creditors holding unsecured claims and was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the

business or transaction, or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

306.     The  Total Four Year MAHECHA/CASAS Joint Transfers are avoidable under Section 544 of the Bankruptcy Code and Sections 726.105(1)(b) and/or 726.106(1) of the Florida Statues to the extent they were made within four years of the Petition Date.

307.     As a result of the  Total Four Year MAHECHA/CASAS Joint Transfer, the Debtor has been damaged and pursuant to Fla. Stat., §§726.105(1)(b), 726.106(1), 726.108 and 726.109, may avoid and recover the total value of such  Total Four Year MAHECHA/CASAS Joint Transfers from MAHECHA and CASAS jointly.

**WHEREFORE**, Plaintiff, Drew M. Dillworth, as Trustee, demands judgment against Defendants, CARLOS EILIAS MAHECHA DIAZ and MARIA ANASTASIA CASES MATIZ, jointly (a) determining that each of the  Total Four Year MAHECHA/CASAS Joint Transfers that were made within four years of the Petition Date is fraudulent and avoidable under 11 U.S.C. §544 and Section 726.105(1)(b) and/or 726.106(1)  of the Florida Statues; (b) avoiding each of such  Total Four Year MAHECHA/CASAS Joint Transfers and entering judgment in favor of Plaintiff against Defendants MAHECHA and CASAS jointly in the aggregate amount of such   Total Four Year MAHECHA/CASAS Joint Transfers or in such amounts as are determined at trial, plus pre-judgment interest from the date of such  Total Four Year MAHECHA/CASAS Joint Transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendants MAHECHA and CASAS may have against the Debtor's estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

## COUNT XII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### PURSUANT TO 11 U.S.C. §544 AND FLA. STAT. §§726.105(1)(b),
### 726.106(1), 726.108 AND 726.109
### *(Against Maria Anastasia Casas Matiz)*

308.    The Plaintiff re-alleges paragraphs 1 through 178 as if fully set forth herein.

309.    Pursuant to 11 U.S.C. §544(b)(1), the "trustee may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim…. "

310.    The Plaintiff sues CASAS to avoid and recover avoidable transfers pursuant to Chapter 726, *et. seq*., Florida Statutes, namely the Four Year CASAS Transfers.

311.    Section 726.105(1)(b), Florida Statutes, provides:

(1)    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

* * *

(b) without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

312.    Further, Section 726.106(1), Florida Statutes, provides:

(1)    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent in value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

313.    Further, under Chapter 726 of the Florida Statutes, the Plaintiff may recover, for the benefit of the estate, the value of the property transferred, from – (1) the first transferee of such transfer

or the entity for whose benefit such transfer was made; and (2) any subsequent transferee of such first transferee.  CASAS was the initial transferee of or for whom the Four Year CASAS Transfers were made.

314.    As set forth in the docket and proofs of claim filed in this Bankruptcy Case, there was at all relevant times an unsecured creditor with standing to avoid the Four Year CASAS Transfers, including but not limited to the Lenders, and Jorge Loza and Larino Investments.

315.    The Four Year CASAS Transfers constituted a transfer made by the Debtor for which the Debtor did not receive reasonably equivalent value in exchange for the same.

316.    At the time of the Four Year CASAS Transfers, the Debtor had creditors holding unsecured claims and was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction, or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

317.    The Four Year CASAS Transfers are avoidable under Section 544 of the Bankruptcy Code and Sections 726.105(1)(b) and/or 726.106(1) of the Florida Statues to the extent they were made within four years of the Petition Date.

318.    As a result of the Four Year CASAS Transfers, the Debtor has been damaged and pursuant to Fla. Stat., §§726.105(1)(b), 726.106(1), 726.108 and 726.109, may avoid and recover the total value of such Four Year CASAS Transfers from CASAS.

**WHEREFORE**, Plaintiff, Drew M. Dillworth, as Trustee, demands judgment against Defendant, MARIA ANASTASIA CASES MATIZ (a) determining that each of the Four Year CASAS Transfers that were made within four years of the Petition Date is fraudulent and avoidable under 11 U.S.C. §544 and Section 726.105(1)(b) and/or 726.106(1)  of the Florida Statues; (b) avoiding each of such Four Year CASAS Transfers and entering judgment in favor of Plaintiff against Defendant

CASAS in the aggregate amount of such Four Year CASAS Transfers or in such amounts as are determined at trial, plus pre-judgment interest from the date of such Four Year CASAS Transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant CASAS may have against the Debtor's estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNT XIII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. §544 AND FLA. STAT. §§726.105(1)(b),**
**726.106(1), 726.108 AND 726.109**
***(Against Felipe Mahecha Casas)***

319.    The Plaintiff re-alleges paragraphs 1 through 178 as if fully set forth herein.

320.    Pursuant to 11 U.S.C. §544(b)(1), the "trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim.... "

321.    The Plaintiff sues MAHECHA CASAS to avoid and recover avoidable transfers pursuant to Chapter 726, *et. seq*., Florida Statutes, namely the Four Year MAHECHA CASAS Transfers.

322.    Section 726.105(1)(b), Florida Statutes, provides:

(1)    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

* * *

(b) without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

323.    Further, Section 726.106(1), Florida Statutes, provides:

(1)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent in value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

324.    Further, under Chapter 726 of the Florida Statutes, the Plaintiff may recover, for the benefit of the estate, the value of the property transferred, from – (1) the first transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any subsequent transferee of such first transferee.  MAHECHA CASAS was the initial transferee of or for whom the Four Year MAHECHA CASAS Transfers were made.

325.    As set forth in the docket and proofs of claim filed in this Bankruptcy Case, there was at all relevant times an unsecured creditor with standing to avoid the Four Year MAHECHA CASAS Transfers, including but not limited to the Lenders, and Jorge Loza and Larino Investments.

326.    The Four Year MAHECHA CASAS Transfers constituted a transfer made by the Debtor for which the Debtor did not receive reasonably equivalent value in exchange for the same.

327.    At the time of the Four Year MAHECHA CASAS Transfers, the Debtor had creditors holding unsecured claims and was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction, or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

328.    The Four Year MAHECHA CASAS Transfers are avoidable under Section 544 of the Bankruptcy Code and Sections 726.105(1)(b) and/or 726.106(1) of the Florida Statues to the extent they were made within four years of the Petition Date.

329.    As a result of the Four Year MAHECHA CASAS Transfers, the Debtor has been damaged and pursuant to Fla. Stat., §§726.105(1)(b), 726.106(1), 726.108 and 726.109, may avoid and recover the total value of such Four Year MAHECHA CASAS Transfers from MAHECHA CASAS.

**WHEREFORE**, Plaintiff, Drew M. Dillworth, as Trustee, demands judgment against Defendant, FELIPE MAHECHA CASES (a) determining that each of the Four Year MAHECHA CASAS Transfers that were made within four years of the Petition Date is fraudulent and avoidable under 11 U.S.C. §544 and Section 726.105(1)(b) and/or 726.106(1) of the Florida Statues; (b) avoiding each of such Four Year MAHECHA CASAS Transfers and entering judgment in favor of Plaintiff against Defendant MAHECHA CASAS in the aggregate amount of such Four Year MAHECHA CASAS Transfers or in such amounts as are determined at trial, plus pre-judgment interest from the date of such Four Year MAHECHA CASAS Transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant MAHECHA CASAS may have against the Debtor's estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNT XIV**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. §544 AND FLA. STAT. §§726.105(1)(b),**
**726.106(1), 726.108 AND 726.109**
*(Against Camilo E. Mahecha)*

330.    The Plaintiff re-alleges paragraphs 1 through 178 as if fully set forth herein.

331.    Pursuant to 11 U.S.C. §544(b)(1), the "trustee may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim…. "

332.    The Plaintiff sues C. MAHECHA to avoid and recover avoidable transfers pursuant to Chapter 726, *et. seq.*, Florida Statutes, namely the Four Year C. MAHECHA Transfers.

333.    Section 726.105(1)(b), Florida Statutes, provides:

(1)     A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

* * *

(b) without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

334.    Further, Section 726.106(1), Florida Statutes, provides:

(1)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent in value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

335.    Further, under Chapter 726 of the Florida Statutes, the Plaintiff may recover, for the benefit of the estate, the value of the property transferred, from – (1) the first transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any subsequent transferee of such first transferee.  C. MAHECHA was the initial transferee of or for whom the Four Year C. MAHECHA Transfers were made.

336.    As set forth in the docket and proofs of claim filed in this Bankruptcy Case, there was at all relevant times an unsecured creditor with standing to avoid the Four Year C. MAHECHA Transfers, including but not limited to the Lenders, and Jorge Loza and Larino Investments.

337.    The Four Year C. MAHECHA Transfers constituted a transfer made by the Debtor for which the Debtor did not receive reasonably equivalent value in exchange for the same.

338.    At the time of the Four Year C. MAHECHA Transfers, the Debtor had creditors holding unsecured claims and was engaged or was about to engage in a business or a transaction for which the

remaining assets of the Debtor were unreasonably small in relation to the business or transaction, or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

339.    The Four Year C. MAHECHA Transfers are avoidable under Section 544 of the Bankruptcy Code and Sections 726.105(1)(b) and/or 726.106(1) of the Florida Statues to the extent they were made within four years of the Petition Date.

340.    As a result of the Four Year C. MAHECHA Transfers, the Debtor has been damaged and pursuant to Fla. Stat., §§726.105(1)(b), 726.106(1), 726.108 and 726.109, may avoid and recover the total value of such Four Year C. MAHECHA Transfers from C. MAHECHA.

**WHEREFORE**, Plaintiff, Drew M. Dillworth, as Trustee, demands judgment against Defendant, CAMILO E. MAHECHA (a) determining that each of the Four Year C. MAHECHA Transfers that were made within four years of the Petition Date is fraudulent and avoidable under 11 U.S.C. §544 and Section 726.105(1)(b) and/or 726.106(1) of the Florida Statues; (b) avoiding each of such Four Year C. MAHECHA Transfers and entering judgment in favor of Plaintiff against Defendant C. MAHECHA in the aggregate amount of such Four Year C. MAHECHA Transfers or in such amounts as are determined at trial, plus pre-judgment interest from the date of such Four Year C. MAHECHA Transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant C. MAHECHA may have against the Debtor's estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

## COUNT XV
## BREACH OF FIDUCIARY DUTY
### (*Against Carlos Elias Mahecha Diaz*)

341.    Plaintiff re-states and re-alleges paragraphs 1 through 178, as if fully set forth herein.

342.     This is a claim under Fla. Stat. §605.04091 and common law for breach of fiduciary duty by the Plaintiff against MAHECHA based upon his acts and omissions as the managing member, member, insider and control person of the Debtor, including without limitation, the Wrongful Acts.

343.     During at all times relevant herein, Defendant MAHECHA was the managing member, member, insider and control person of the Debtor and, as such, owed the Debtor a fiduciary duty to discharge his duties in good faith, with the care of an ordinarily prudent officer, director or manager in a like position would exercise and in a manner reasonably believed to be in the best interests of the Debtor.

344.     Specifically, the duty of loyalty and good faith required MAHECHA to put the interests of the Debtor above his own personal interests and those of others related to him, and was not limited to disloyalty in the classic sense; i.e., self-dealing, personal gain, or a cognizable conflict of interest.  In addition, in discharging his duty of loyalty and good faith, MAHECHA was required to act in good faith, and would be in breach of the duty of loyalty by acting with a purpose other than that of advancing the best interests of the Debtor, and by acting in violation of applicable law, or by failing to act in the face of a known duty to act, thereby demonstrating a conscious disregard for his responsibilities. MAHECHA was also required to ensure that he did not display a lack of diligence that was more culpable than simple inattention or failure to be informed of all facts material to his decisions, such that it was qualitatively more culpable than simple negligence.

345.     Additionally, the duty to exercise due care required MAHECHA to use that amount of care which ordinarily careful and prudent persons would use in similar circumstances and to consider all material information reasonably available.  In exercising the duty of due care, MAHECHA could not engage in acts or omissions on behalf of the Debtor that  were self-dealing, for personal or familial gain, to limit personal liability or which acts or omissions evidence a cognizable conflict of interests, or acts and omissions which resulted in a loss to Debtor arising from decisions that: (i) were ill-advised,

uninformed or that failed to consider material information; (ii) constituted an unconsidered failure of MAHECHA to act in circumstances in which due attention would arguably have prevented the loss; (iii) were based upon an unintelligent or unadvised judgment; (iv) were grossly negligent, such as engaging in an irrational decision making process signifying more than ordinary inadvertence or inattention; or (v) resulted in a corporate strategy that reflected an indifference to the potential risk of harm to the Debtor, such that reasonable businesspersons would have carefully considered the obvious negative consequences. Moreover, the more significant the subject matter of the decision, the greater is the requirement to probe and consider alternatives. To further satisfy the duty of due care, a reasonable and informed deliberative process was required by attending meetings, asking questions, reviewing written materials, and otherwise becoming informed of relevant information reasonably available, and to seek the input of experts, such as investment bankers, attorneys, and accountants, and to obtain materially accurate information.

346. Based upon the application of the foregoing duties of loyalty, good faith and due care governing MAHECHA, he knew, should have known and otherwise was required to act, among other things, as follows: (i) to refrain from transferring assets and permitting the transfer of assets of the Debtor, including but not limited to proceeds of funds loaned to the Debtor by the Lenders or the proceeds of other transactions of the Debtor including but not limited to the transactions with Beach Haus described above, to purposes unrelated to express purposes of such loans or to satisfy non-Debtor obligations; (ii) to refrain from using the assets of the Debtor to pay for personal obligations, including but not limited to condominium association fees and other non-Debtor obligations; (iii) while Debtor was insolvent or not paying its debts as they became due, to undertake sufficient and adequate measures to ensure that payments to third parties did not constitute preferential or fraudulent transfers to himself and his relatives, or in their interests, which could and did result in a loss of assets of the Debtor; (iv) while Debtor was insolvent or not paying its debts as they became due, not to cause, allow or otherwise

abdicate his duties by allowing Debtor's assets and enterprise value to continue to decrease in value; (v) while the Debtor was insolvent or not paying its debts as they became due, to fail to cause Debtor to file bankruptcy or other insolvency proceedings as soon as reasonably practical, necessary or appropriate solely to protect his own financial interests and those of his relatives or their interests; (vi) to refrain from active attempts to hinder, delay and defraud Debtor's creditors and their attempts to collect on and enforce judgments against Debtor by engaging in sham transfers of Debtor's personal property and making misrepresentations to Debtor's creditors as to the true financial condition of Debtor; (vii) to ensure that Debtor was not engaging in or otherwise permitting corporate waste; and (viii) to otherwise avoid engaging in any of the Wrongful Acts.

347.    In regard to the facts alleged above involving the Wrongful Acts, MAHECHA exhibited a knowing, conscious, grossly negligent or reckless disregard for the best interests of the Debtor and, except for his self-dealing and knowing, conscious, grossly negligent or reckless disregard of the facts, he should have known of the risk of damage that ultimately befell the Debtor.

348.    Specifically, MAHECHA actively engaged in breaches of fiduciary duties, and otherwise abdicated his fiduciary duties of loyalty, good faith, and due care owed to Debtor, with breaches that included, but are not limited to, those set forth in the Wrongful Acts above.

349.    Each of the above described Wrongful Acts adversely impacted and conferred no benefit to the Debtor, and as a direct and proximate result of same, caused damage to the Debtor.

WHEREFORE, Plaintiff demands the entry of judgment against MAHECHA for compensatory damages, consequential damages, special damages and punitive damages resulting from the Wrongful Acts, including, but not limited to: (i) the decrease in the value of the Debtor's assets and enterprise value; (ii) the loss and depletion of material assets of the Debtor; (iii) the increase in the Debtor's liabilities; (iv) the Debtor's deepening and increased insolvency as evidenced by, *inter alia*, the claims register maintained by the Clerk of the Court; (v) corporate waste; (vi) the loss of business opportunities;

(vii) administrative fees and expenses incurred by the Debtor's estate during the State Court Case and the Bankruptcy Case; (viii) the value of all avoidable transfers pursuant to Chapter 5 of the Bankruptcy Code and applicable law; and (ix) other damages as may be ascertained through discovery, plus pre-judgment and post-judgment interest, costs and for any other relief the Court deems appropriate.

## COUNT XVI
## BREACH OF FIDUCIARY DUTY
### (*Against Maria Anastasia Casas Matiz*)

350.    Plaintiff re-states and re-alleges paragraphs 1 through 178, as if fully set forth herein.

351.    This is a claim under Fla. Stat. §605.04091 and common law for breach of fiduciary duty by the Plaintiff against CASAS based upon her acts and omissions as the member of the Board of Directors, *de facto* manager, insider and control person of the Debtor, including without limitation, the Wrongful Acts.

352.    During at all times relevant herein, Defendant CASAS was a member of the Board of Directors, *de facto* manager, insider and control person of the Debtor and, as such, owed the Debtor a fiduciary duty to discharge her duties in good faith, with the care of an ordinarily prudent officer, director or manager in a like position would exercise and in a manner reasonably believed to be in the best interests of the Debtor.

353.    Specifically, the duty of loyalty and good faith required CASAS to put the interests of the Debtor above her own personal interests and those of others related to her, and was not limited to disloyalty in the classic sense; i.e., self-dealing, personal gain, or a cognizable conflict of interest.  In addition, in discharging her duty of loyalty and good faith, CASAS was required to act in good faith, and would be in breach of the duty of loyalty by acting with a purpose other than that of advancing the best interests of the Debtor, and by acting in violation of applicable law, or by failing to act in the face of a known duty to act, thereby demonstrating a conscious disregard for her responsibilities.  CASAS was also required to ensure that she did not display a lack of diligence that was more culpable than

simple inattention or failure to be informed of all facts material to her decisions, such that it was qualitatively more culpable than simple negligence.

354.    Additionally, the duty to exercise due care required CASAS to use that amount of care which ordinarily careful and prudent persons would use in similar circumstances and to consider all material information reasonably available.  In exercising the duty of due care, CASAS could not engage in acts or omissions on behalf of the Debtor that  were self-dealing, for personal or familial  gain, to limit personal liability or which acts or omissions evidence a cognizable conflict of interests, or acts and omissions which resulted in a loss to Debtor arising from decisions that: (i) were ill-advised, uninformed or that failed to consider material information; (ii) constituted an unconsidered failure of CASAS to act in circumstances in which due attention would arguably have prevented the loss; (iii) were based upon an unintelligent or unadvised judgment; (iv) were grossly negligent, such as engaging in an irrational decision making process signifying more than ordinary inadvertence or inattention; or (v) resulted in a corporate strategy that reflected an indifference to the potential risk of harm to the Debtor, such that reasonable businesspersons would have carefully considered the obvious negative consequences.  Moreover, the more significant the subject matter of the decision, the greater is the requirement to probe and consider alternatives.  To further satisfy the duty of due care, a reasonable and informed deliberative process was required by attending meetings, asking questions, reviewing written materials, and otherwise becoming informed of relevant information reasonably available, and to seek the input of experts, such as investment bankers, attorneys, and accountants, and to obtain materially accurate information.

355.    Based upon the application of the foregoing duties of loyalty, good faith and due care governing CASAS, she knew, should have known and otherwise was required to act, among other things, as follows: (i) to refrain from transferring assets and permitting the transfer of assets of the Debtor, including but not limited to proceeds of funds loaned to the Debtor by the Lenders or the

proceeds of other transactions of the Debtor including but not limited to the transactions with Beach Haus described above,  to purposes unrelated to express purposes of such loans or to satisfy non-Debtor obligations; (ii) to refrain  from using the assets of the Debtor to pay for personal obligations, including but not limited to condominium association fees and other non-Debtor obligations; (iii) while Debtor was insolvent or not paying its debts as they became due, to undertake sufficient and adequate measures to ensure that payments to third parties did not constitute preferential or fraudulent transfers to herself and her relatives, or in their interests, which could and did result in a loss of assets of the Debtor; (iv) while Debtor was insolvent or not paying its debts as they became due, not to cause, allow or otherwise abdicate her duties by allowing Debtor's assets and enterprise value to continue to decrease in value; (v) while the Debtor was insolvent or not paying its debts as they became due, to fail to cause Debtor to file bankruptcy or other insolvency proceedings as soon as reasonably practical, necessary or appropriate solely to protect her own financial interests and those of her relatives or their interests; (vi) to refrain from active attempts to hinder, delay and defraud Debtor's creditors and their attempts to collect on and enforce judgments against Debtor by engaging in sham transfers of Debtor's personal property and making misrepresentations to Debtor's creditors as to the true financial condition of Debtor; (vii) to ensure that Debtor was not engaging in or otherwise permitting corporate waste; and (viii) to otherwise avoid engaging in any of the Wrongful Acts.

356.    In regard to the facts alleged above involving the Wrongful Acts, CASAS exhibited a knowing, conscious, grossly negligent or reckless disregard for the best interests of the Debtor and, except for her self-dealing and knowing, conscious, grossly negligent or reckless disregard of the facts, she should have known of the risk of damage that ultimately befell the Debtor.

357.    Specifically, CASAS actively engaged in breaches of fiduciary duties, and otherwise abdicated her fiduciary duties of loyalty, good faith, and due care owed to Debtor, with breaches that included, but are not limited to, those set forth in the Wrongful Acts above.

358.    Each of the above described Wrongful Acts adversely impacted and conferred no benefit to the Debtor, and as a direct and proximate result of same, caused damage to the Debtor.

WHEREFORE, Plaintiff demands the entry of judgment against CASAS for compensatory damages, consequential damages, special damages and punitive damages resulting from the Wrongful Acts, including, but not limited to: (i) the decrease in the value of the Debtor's assets and enterprise value; (ii) the loss and depletion of material assets of the Debtor; (iii) the increase in the Debtor's liabilities; (iv) the Debtor's deepening and increased insolvency as evidenced by, *inter alia*, the claims register maintained by the Clerk of the Court; (v) corporate waste; (vi) the loss of business opportunities; (vii) administrative fees and expenses incurred by the Debtor's estate during the State Court Case and the Bankruptcy Case; (viii) the value of all avoidable transfers pursuant to Chapter 5 of the Bankruptcy Code and applicable law; and (ix) other damages as may be ascertained through discovery, plus pre-judgment and post-judgment interest, costs and for any other relief the Court deems appropriate.

## COUNT XVII
## BREACH OF FIDUCIARY DUTY
### (*Against Felipe Mahecha Casas*)

359.    Plaintiff re-states and re-alleges paragraphs 1 through 178, as if fully set forth herein.

360.    This is a claim under Fla. Stat. §605.04091 and common law for breach of fiduciary duty by the Plaintiff against MAHECHA CASAS based upon his acts and omissions as the *de facto* manager, insider and control person of the Debtor, including without limitation, the Wrongful Acts.

361.    During at all times relevant herein, Defendant MAHECHA CASAS was a *de facto* manager,  insider and control person of the Debtor and, as such, owed the Debtor a fiduciary duty to discharge his duties in good faith, with the care of an ordinarily prudent officer, director or manager in a like position would exercise and in a manner reasonably believed to be in the best interests of the Debtor.

362.    Specifically, the duty of loyalty and good faith required MAHECHA CASAS to put the interests of the Debtor above his own personal interests and those of others related to him, and was not limited to disloyalty in the classic sense; i.e., self-dealing, personal gain, or a cognizable conflict of interest.  In addition, in discharging his duty of loyalty and good faith, MAHECHA CASAS was required to act in good faith, and would be in breach of the duty of loyalty by acting with a purpose other than that of advancing the best interests of the Debtor, and by acting in violation of applicable law, or by failing to act in the face of a known duty to act, thereby demonstrating a conscious disregard for his responsibilities.  MAHECHA CASAS was also required to ensure that he did not display a lack of diligence that was more culpable than simple inattention or failure to be informed of all facts material to her decisions, such that it was qualitatively more culpable than simple negligence.

363.    Additionally, the duty to exercise due care required MAHECHA CASAS to use that amount of care which ordinarily careful and prudent persons would use in similar circumstances and to consider all material information reasonably available.  In exercising the duty of due care, MAHECHA CASAS could not engage in acts or omissions on behalf of the Debtor that were self-dealing, for personal or familial gain, to limit personal liability or which acts or omissions evidence a cognizable conflict of interests, or acts and omissions which resulted in a loss to Debtor arising from decisions that: (i) were ill-advised, uninformed or that failed to consider material information; (ii) constituted an unconsidered failure of MAHECHA CASAS to act in circumstances in which due attention would arguably have prevented the loss; (iii) were based upon an unintelligent or unadvised judgment; (iv) were grossly negligent, such as engaging in an irrational decision making process signifying more than ordinary inadvertence or inattention; or (v) resulted in a corporate strategy that reflected an indifference to the potential risk of harm to the Debtor, such that reasonable businesspersons would have carefully considered the obvious negative consequences.  Moreover, the more significant the subject matter of the decision, the greater is the requirement to probe and consider alternatives.  To further satisfy the

duty of due care, a reasonable and informed deliberative process was required by attending meetings, asking questions, reviewing written materials, and otherwise becoming informed of relevant information reasonably available, and to seek the input of experts, such as investment bankers, attorneys, and accountants, and to obtain materially accurate information.

364.    Based upon the application of the foregoing duties of loyalty, good faith and due care governing MAHECHA CASAS, he knew, should have known and otherwise was required to act, among other things, as follows: (i) to refrain from transferring assets and permitting the transfer of assets of the Debtor, including but not limited to proceeds of funds loaned to the Debtor by the Lenders or the proceeds of other transactions of the Debtor including but not limited to the transactions with Beach Haus described above,  to purposes unrelated to express purposes of such loans or to satisfy non-Debtor obligations; (ii) to refrain  from using the assets of the Debtor to pay for personal obligations of his relatives, including but not limited to condominium association fees and other non-Debtor obligations; (iii) while Debtor was insolvent or not paying its debts as they became due, to undertake sufficient and adequate measures to ensure that payments to third parties did not constitute preferential or fraudulent transfers to himself and his relatives, or in their interests, which could and did result in a loss of assets of the Debtor; (iv) while Debtor was insolvent or not paying its debts as they became due, not to cause, allow or otherwise abdicate his duties by allowing Debtor's assets and enterprise value to continue to decrease in value; (v) while the Debtor was insolvent or not paying its debts as they became due, to fail to cause Debtor to file bankruptcy or other insolvency proceedings as soon as reasonably practical, necessary or appropriate solely to protect his own financial interests and those of his relatives or their interests; (vi) to refrain from active attempts to hinder, delay and defraud Debtor's creditors and their attempts to collect on and enforce judgments against Debtor by engaging in sham transfers of Debtor's personal property and making misrepresentations to Debtor's creditors as to the true financial condition

of Debtor; (vii) to ensure that Debtor was not engaging in or otherwise permitting corporate waste; and (viii) to otherwise avoid engaging in any of the Wrongful Acts.

365.    In regard to the facts alleged above involving the Wrongful Acts, MAHECHA CASAS exhibited a knowing, conscious, grossly negligent or reckless disregard for the best interests of the Debtor and, except for his self-dealing and knowing, conscious, grossly negligent or reckless disregard of the facts, he should have known of the risk of damage that ultimately befell the Debtor.

366.    Specifically, MAHECHA CASAS actively engaged in breaches of fiduciary duties, and otherwise abdicated his fiduciary duties of loyalty, good faith, and due care owed to Debtor, with breaches that included, but are not limited to, those set forth in the Wrongful Acts above.

367.    Each of the above described Wrongful Acts adversely impacted and conferred no benefit to the Debtor, and as a direct and proximate result of same, caused damage to the Debtor.

WHEREFORE, Plaintiff demands the entry of judgment against MAHECHA  CASAS for compensatory damages, consequential damages, special damages and punitive damages resulting from the Wrongful Acts, including, but not limited to: (i) the decrease in the value of the Debtor's assets and enterprise value; (ii) the loss and depletion of material assets of the Debtor; (iii) the increase in the Debtor's liabilities; (iv) the Debtor's deepening and increased insolvency as evidenced by, *inter alia*, the claims register maintained by the Clerk of the Court; (v) corporate waste; (vi) the loss of business opportunities; (vii) administrative fees and expenses incurred by the Debtor's estate during the State Court Case and the Bankruptcy Case; (viii) the value of all avoidable transfers pursuant to Chapter 5 of the Bankruptcy Code and applicable law; and (ix) other damages as may be ascertained through discovery, plus pre-judgment and post-judgment interest, costs and for any other relief the Court deems appropriate.

## COUNT XVIII
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### *(Against Maria Anastasia Casas Matiz and Felipe Mahecha Casas)*

368.    The Trustee re-states paragraphs 1 through 178 above as if fully set forth herein.

369.    This Count XVIII is in the alternative to Counts XVI and XVII in the event MAHECHA

CASAS and/or CASAS are determined not to owe independent and separate fiduciary duties to the

Debtor.

370.    As a manager and/or controlling person of the Debtor, MAHECHA owed fiduciary

duties to the Debtor, including, without limitation, a duty of due care, a duty of loyalty and a duty to

act in the Debtor's best interests.

371.    MAHECHA was required to carry out these duties in good faith and with the care an

ordinary prudent person in a like position would exercise under similar circumstances.

372.    MAHECHA CASAS and CASAS had actual knowledge that MAHECHA was the

Debtor's manager and controlling person, and that he owed fiduciary duties to the Debtor.

373.    MAHECHA breached his fiduciary duties to the Debtor by and through the Wrongful

Acts detailed above.

374.    Each of MAHECHA CASAS and CASAS had actual knowledge of MAHECHA's

breach of his fiduciary duties to the Debtor by and through the Wrongful Acts.

375.    MAHECHA CASAS and CASAS each knowingly and substantially assisted

MAHECHA's breach of his fiduciary duties to the Debtor by and through participating in, facilitating

and enabling MAHECHA to commit the Wrongful Acts.

376.    MAHECHA's breaches of his fiduciary duties to the Debtor caused the Debtor millions

of dollars in damages.

WHEREFORE, Plaintiff demands the entry of judgment against MAHECHA CASAS and

CASAS, jointly and severally, for compensatory damages, consequential damages, special damages

and punitive damages resulting from their aiding and abetting MAHECHA's breach of his fiduciary duties by and through the Wrongful Acts, including, but not limited to: (i) the decrease in the value of the Debtor's assets and enterprise value; (ii) the loss and depletion of material assets of the Debtor; (iii) the increase in the Debtor's liabilities; (iv) the Debtor's deepening and increased insolvency as evidenced by, *inter alia*, the claims register maintained by the Clerk of the Court; (v) corporate waste; (vi) the loss of business opportunities; (vii) administrative fees and expenses incurred by the Debtor's estate during the State Court Case and the Bankruptcy Case; (viii) the value of all avoidable transfers pursuant to Chapter 5 of the Bankruptcy Code and applicable law; and (ix) other damages as may be ascertained through discovery, plus pre-judgment and post-judgment interest, costs and for any other relief the Court deems appropriate.

Dated:  February 14, 2020

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Special Counsel for the Trustee*
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By:    /s/*Paul J. Battista*
       Paul J. Battista, Esq.
       Florida Bar No. 884162
       pbattista@gjb-law.com
       Theresa M.B. Van Vliet, Esq.
       Florida Bar No. 374040
       tvanvliet@gjb-law.com

# EXHIBIT

# A

Page 1

1                    UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                       FORT LAUDERDALE DIVISION

3    In re:                              Case No. 18-11793-RBR

4    BAL HARBOUR QUARZO, LLC,            Chapter 11
     a/k/a Synergy Capital Group, LLC,
5    a/k/a Synergy Investments Group, LLC

6          Debtor.
     _____/

7

8

9

10                            Genovese Joblove & Battista, P.A.
                              100 S.E. Second Street, 44th FL
11                            Miami, Florida 33131
                              Wednesday, May 9, 2018
12                            10:00 a.m. - 5:40 p.m.

13

14

                              2004 EXAMINATION
15
                                     OF
16
                              JUAN G. ARCILA
17

18

19          Taken before Maggie Rubio, Registered Professional

20   Reporter, Notary Public in and for the State of Florida at

21   Large, pursuant to a Notice of Rule 2004 Examination filed

22   in the above cause.

23                       - - - - -

24

25

Page 2

1

2                          APPEARANCES:

3          GENOVESE, JOBLOVE & BATTISTA, P.A., by
                    PAUL J. BATTISTA, ESQUIRE
4           100 S.E. Second Street, 44th Floor
                    Miami, Florida  33131
5                 Special Litigation Counsel
               for Receiver Drew M. Dillworth

6             STEARNS WEAVER MILLER WEISSLER
              ALHADEFF & SITTERSON, P.A., by
7                   ERIC J. SILVER, ESQUIRE
            150 West Flagler Street, Suite 2200
8                   Miami, Florida  33130
             General Counsel for Receiver Drew Dillworth

9

10                        GRAYROBINSON
                    JOEL HIRSCHHORN, ESQUIRE
11           333 S.E. 2nd Avenue, Suite 3200
                    Miami, Florida  33131
                    Attorneys for Debtor

12

13                        ALSO PRESENT:

14    VOLNEY RODRIGUEZ, CHAIRMAN, UNSECURED CREDITORS' COMMITTEE
        FRANK EATON, ESQUIRE, UNSECURED CREDITORS' COMMITTEE
15      DAVID ROSENDORF, ESQUIRE, BEACH HAUS BAL HARBOUR, LLC
          PATRICK BRUGGER, ESQUIRE, MERCANTIL COMMERCEBANK
16        SEAN CRONIN, ASSISTANT UNITED STATES ATTORNEY
                DREW DILLWORTH (via telephone)
17         JOHN ARRASTIA, ESQUIRE (via telephone)

18

19                           INDEX

20

      Witness              Direct      Cross      Redirect
21    -------              ------      -----      --------

22    JUAN G. ARCILA
        (by Mr. Battista)    4

23

24

25

Page 184

1    against Quarzo would be able to garnish Quarzo's bank

2    accounts?

3         A.  Can you repeat?

4         Q.  Sure.  Was there ever a situation where either you

5    or Carlos were concerned that creditors who had gotten

6    judgments against Quarzo could garnish Quarzo's bank

7    accounts?

8         A.  A hundred percent.

9         Q.  And was there ever a situation in which to prevent

10   those garnishments from happening you transferred money out

11   of one bank account into a new -- different bank account so

12   creditors couldn't garnish it?

13        A.  Yes.

14        Q.  And that was in effort to delay those creditors

15   from collecting on that money and that judgment?

16        A.  Correct.

17        Q.  How many times did that happen?

18        A.  A few times.

19        Q.  More than once?

20        A.  Yes.

21        Q.  More than five times?

22        A.  No.

23        Q.  Between one and five?

24        A.  Probably.  Yeah.

25        Q.  Did there come a time in 2016 when Quarzo decided

# EXHIBIT
# B

**Bal Harbour Quarzo, LLC**
**Case No. 18-11793 - RBR**
**United States Bankruptcy Court**
**Southern District of Florida**
**Broward Division**

**Transfers to/from Carlos Mahecha**
**For the Period from February 19, 2008 through August 31, 2017** *(Note 1, 2, 3)*

PRELIMINARY DRAFT as of January 31, 2020:
This is a preliminary draft. It has been prepared based on preliminary information and assumptions. No one may rely on this draft. It is subject to change as additional information becomes available or is clarified.

Source: Debtor's QuickBooks and bank records
Petition Date: February 16, 2018

| Entity | Bank ID # | Bank Support [Y/N] | Statement Clearing Date | GL Date | Check # / Dep Ref # | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|---|---|
| Bal Harbour Quarzo, LLC | MCB-4706 | Y | 07/23/12 | 07/20/12 | 1444 | Carlos Mahecha | $           - | $      1,234.05 |
| Bal Harbour Quarzo, LLC | MCB-4706 | Y | 08/20/12 | 08/20/12 | 1491 | Carlos Mahecha | - | 2,727.31 |
| Bal Harbour Quarzo, LLC | MCB-4706 | Y | 09/20/12 | 09/18/12 | 1540 | Carlos Mahecha | - | 2,498.40 |
| Bal Harbour Quarzo, LLC | MCB-9006 Exchange | Y | 11/19/14 | 11/19/14 | | Carlos Mahecha | - | 29,919.44 |
| Bal Harbour Quarzo, LLC | Colombia Bank Account | N | | 12/24/14 | | Carlos Mahecha | - | 24,882.00 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 01/20/15 | 01/20/15 | | Carlos Mahecha | 5,000.00 | - |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 03/31/15 | 03/30/15 | 2081 | Carlos Mahecha | - | 14,500.00 |
| Bal Harbour Quarzo, LLC | SB-3735 | Y | 09/02/16 | 08/31/16 | 158 | Carlos Mahecha | - | 1,247.01 |
| Bal Harbour Quarzo, LLC | SB-3735 | Y | 10/26/16 | 10/26/16 | | Carlos Mahecha | - | 15,569.56 |
| Bal Harbour Quarzo, LLC | SB-3735 | N | | 11/02/16 | | Carlos Mahecha | - | 1,504.55 |
| Bal Harbour Quarzo, LLC | SB-3735 | N | | 11/03/16 | | Carlos Mahecha | - | 11,000.00 |
| Bal Harbour Quarzo, LLC | SB-3735 | N | | 11/30/16 | | Carlos Mahecha | - | 1,212.21 |
| Bal Harbour Quarzo, LLC | SB-3735 | Y | 01/03/17 | 01/03/17 | | Carlos Mahecha | - | 7,800.00 |
| Bal Harbour Quarzo, LLC | SB-3735 | Y | 01/17/17 | 01/17/17 | | Carlos Mahecha | - | 896.00 |
| **Bal Harbour Quarzo, LLC Total** | | | | | | | **5,000.00** | **114,985.53** |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/03/13 | 12/31/12 | 4823 | Carlos Mahecha | - | 2,477.43 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/04/13 | 02/28/13 | 5075 | Carlos Mahecha | - | 6,112.40 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/13/13 | 05/11/13 | 5426 | Carlos Mahecha | - | 2,049.88 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/15/15 | 05/13/15 | 8014 | Carlos Mahecha | - | 4,000.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 10/15/15 | 10/15/15 | | Carlos Mahecha | 67,000.00 | - |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/25/15 | 11/25/15 | | Carlos Mahecha | 18,500.00 | - |
| Synergy Capital Group, LLC | MCB-6006 | Y | 12/10/15 | 12/09/15 | 8568 | Carlos Mahecha | - | 13,500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 12/14/15 | 12/09/15 | 8569 | Carlos Mahecha | - | 5,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/13/16 | 01/12/16 | 8676 | Carlos Mahecha | - | 3,693.27 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/16/16 | 06/16/16 | | Carlos Mahecha | 6,270.00 | - |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/01/16 | 07/01/16 | | Carlos Mahecha | - | 6,913.78 |
| Synergy Capital Group, LLC | SB-2653 | N | 08/30/16 | 08/29/16 | 151 | Carlos Mahecha | - | 1,065.78 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/02/16 | 09/01/16 | 9091 | Carlos Mahecha | - | 1,852.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 12/07/16 | 12/06/16 | 319 | Carlos Mahecha | - | 3,000.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 02/02/17 | 02/02/17 | | Carlos Mahecha | - | 4,000.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 02/03/17 | 02/03/17 | | Carlos Mahecha | - | 800.50 |
| Synergy Capital Group, LLC | SB-2653 | Y | 02/09/17 | 02/09/17 | | Carlos Mahecha | - | 1,000.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 02/24/17 | 02/24/17 | 497 | Carlos Mahecha | - | 1,611.50 |
| Synergy Capital Group, LLC | SB-2653 | Y | 04/06/17 | 04/06/17 | | Carlos Mahecha | - | 4,000.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 05/17/17 | 05/16/17 | 6053 | Carlos Mahecha | - | 611.50 |
| Synergy Capital Group, LLC | SB-2653 | Y | 05/25/17 | 05/25/17 | | Carlos Mahecha | - | 16,630.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 05/19/17 | 05/19/17 | 6123 | Carlos Mahecha | - | 611.50 |
| Synergy Capital Group, LLC | SB-2653 | Y | 07/07/17 | 07/07/17 | | Carlos Mahecha | - | 3,500.00 |
| **Synergy Capital Group, LLC Total** | | | | | | | **91,770.00** | **82,530.33** |
| Synergy Investment Group, LLC | Commerce Bank | N | | 12/23/08 | 1066 | Carlos Mahecha | - | 3,833.33 |
| **Synergy Investment Group, LLC Total** | | | | | | | **-** | **3,833.33** |
| **Grand Total** | | | | | | | **96,770.00** | **201,354.19** |

Notes:
1) Bal Harbour Quarzo, LLC QuickBooks ("QB") records were for the period from November 8, 2011 through August 21, 2017.
2) Synergy Capital Group, LLC QuickBooks ("QB") records were for the period from February 19, 2008 through August 31, 2017.
3) Synergy Investment Group, LLC QuickBooks ("QB") records were for the period from February 19, 2008 to December 8, 2011.

# EXHIBIT

# C

Bal Harbour Quarzo, LLC
Case No. 18-11793 - RBR
United States Bankruptcy Court
Southern District of Florida
Broward Division

Transfers to/from Carlos Mahecha & Anastasia Casas
For the Period from February 19, 2008 through August 31, 2017 *(Note 1)*

PRELIMINARY DRAFT as of January 31, 2020:
This is a preliminary draft. It has been prepared based on preliminary information and assumptions. No one may rely on this draft. It is subject to change as additional information becomes available or is clarified.

Source: Debtor's QuickBooks and bank records.
Petition Date: February 16, 2018

| Entity | Bank ID # | Bank Support (Y/N) | Statement Clearing Date | GL Date | Check # / Dep Ref # | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|---|---|
| Synergy Capital Group, LLC | MCB-6006 | N | | 03/14/08 | 1007 | Carlos Mahecha & Anastasia Casas | $        - | $        3,177.95 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 05/13/08 | 1031 | Carlos Mahecha & Anastasia Casas | - | 2,904.14 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 06/16/08 | 1042 | Carlos Mahecha & Anastasia Casas | - | 1,676.61 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 07/02/08 | 1276 | Carlos Mahecha & Anastasia Casas | - | 3,398.53 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 07/29/08 | 1066 | Carlos Mahecha & Anastasia Casas | - | 2,289.05 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 08/29/08 | 1109 | Carlos Mahecha & Anastasia Casas | - | 235.94 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 10/10/08 | 1129 | Carlos Mahecha & Anastasia Casas | - | 1,683.08 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 10/31/08 | 1145 | Carlos Mahecha & Anastasia Casas | - | 2,060.31 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 12/01/08 | 1462 | Carlos Mahecha & Anastasia Casas | - | 827.12 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 01/06/09 | 1536 | Carlos Mahecha & Anastasia Casas | - | 1,759.39 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 02/09/09 | 1557 | Carlos Mahecha & Anastasia Casas | - | 1,871.60 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 03/09/09 | 1206 | Carlos Mahecha & Anastasia Casas | - | 1,741.92 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 04/13/09 | 1627 | Carlos Mahecha & Anastasia Casas | - | 1,808.96 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 04/28/09 | 1249 | Carlos Mahecha & Anastasia Casas | - | 8,500.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 05/15/09 | 1274 | Carlos Mahecha & Anastasia Casas | - | 1,525.30 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 06/03/09 | 1704 | Carlos Mahecha & Anastasia Casas | - | 12,075.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 06/15/09 | 1706 | Carlos Mahecha & Anastasia Casas | - | 14,500.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 07/23/09 | | Carlos Mahecha & Anastasia Casas | 2,500.00 | - |
| Synergy Capital Group, LLC | MCB-6006 | N | | 07/29/09 | 1381 | Carlos Mahecha & Anastasia Casas | - | 22.18 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 09/29/09 | 1511 | Carlos Mahecha & Anastasia Casas | - | - |
| Synergy Capital Group, LLC | MCB-6006 | N | | 10/15/09 | | Carlos Mahecha & Anastasia Casas | 1,303.26 | - |
| Synergy Capital Group, LLC | MCB-6006 | N | | 03/11/10 | | Carlos Mahecha & Anastasia Casas | 41,658.15 | - |
| Synergy Capital Group, LLC | MCB-6006 | N | | 04/22/10 | | Carlos Mahecha & Anastasia Casas | 25,000.00 | - |
| Synergy Capital Group, LLC | MCB-6006 | N | | 07/09/10 | 1862 | Carlos Mahecha & Anastasia Casas | - | 1,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 09/21/10 | 2075 | Carlos Mahecha & Anastasia Casas | - | 2,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 09/21/10 | 2076 | Carlos Mahecha & Anastasia Casas | - | 3,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 10/22/10 | 2147 | Carlos Mahecha & Anastasia Casas | - | 1,750.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 11/19/10 | 2092 | Carlos Mahecha & Anastasia Casas | - | 4,500.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 12/14/10 | 2241 | Carlos Mahecha & Anastasia Casas | - | - |
| Synergy Capital Group, LLC | MCB-6006 | N | | 01/06/11 | 2305 | Carlos Mahecha & Anastasia Casas | - | - |
| Synergy Capital Group, LLC | MCB-6006 | N | | 01/13/11 | 2338 | Carlos Mahecha & Anastasia Casas | - | - |
| Synergy Capital Group, LLC | MCB-6006 | N | | 02/02/11 | 1901 | Carlos Mahecha & Anastasia Casas | - | 4,585.82 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 02/24/11 | 2431 | Carlos Mahecha & Anastasia Casas | - | 2,817.08 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 03/09/11 | 2472 | Carlos Mahecha & Anastasia Casas | - | 5,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 04/12/11 | 2558 | Carlos Mahecha & Anastasia Casas | - | 1,904.62 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 04/25/11 | 2621 | Carlos Mahecha & Anastasia Casas | - | 2,586.13 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 04/25/11 | 2620 | Carlos Mahecha & Anastasia Casas | - | 5,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 05/19/11 | 2713 | Carlos Mahecha & Anastasia Casas | - | 5,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 05/19/11 | 2714 | Carlos Mahecha & Anastasia Casas | - | 1,780.94 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 06/13/11 | 1907 | Carlos Mahecha & Anastasia Casas | - | 2,818.57 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 06/20/11 | 2775 | Carlos Mahecha & Anastasia Casas | - | 1,847.34 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 07/07/11 | 2869 | Carlos Mahecha & Anastasia Casas | - | 1,783.87 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 08/01/11 | 2961 | Carlos Mahecha & Anastasia Casas | - | 1,516.56 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 10/20/11 | 3267 | Carlos Mahecha & Anastasia Casas | - | 2,651.90 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 11/15/11 | 3359 | Carlos Mahecha & Anastasia Casas | - | 5,112.16 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 12/14/11 | 3455 | Carlos Mahecha & Anastasia Casas | - | 2,003.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 12/14/11 | 3456 | Carlos Mahecha & Anastasia Casas | - | 4,937.08 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 12/20/11 | 3496 | Carlos Mahecha & Anastasia Casas | - | 1,600.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 12/20/11 | 3497 | Carlos Mahecha & Anastasia Casas | - | 449.11 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 12/20/11 | 1058 | Carlos Mahecha & Anastasia Casas | - | 10,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 01/04/12 | 1901 | Carlos Mahecha & Anastasia Casas | - | 22,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/02/12 | 01/31/12 | 3614 | Carlos Mahecha & Anastasia Casas | - | 2,372.59 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/01/12 | 02/29/12 | 3263 | Carlos Mahecha & Anastasia Casas | - | 3,280.84 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/27/12 | 04/25/12 | 3873 | Carlos Mahecha & Anastasia Casas | - | 561.07 |
| Synergy Capital Group, LLC | MCB-6006 | N | 06/11/12 | 06/21/12 | 4112 | Carlos Mahecha & Anastasia Casas | - | 160.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/11/12 | 07/03/12 | 4168 | Carlos Mahecha & Anastasia Casas | - | 370.51 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/06/12 | 07/31/12 | 4281 | Carlos Mahecha & Anastasia Casas | - | 1,335.86 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/24/12 | 08/21/12 | 4335 | Carlos Mahecha & Anastasia Casas | - | 96.97 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/19/12 | 09/17/12 | 4443 | Carlos Mahecha & Anastasia Casas | - | 1,226.55 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 10/29/12 | 10/25/12 | 4550 | Carlos Mahecha & Anastasia Casas | - | 1,535.74 |
| Synergy Capital Group, LLC | MCB-6006 | N | 12/03/12 | 11/30/12 | 4711 | Carlos Mahecha & Anastasia Casas | - | 4,620.54 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/06/13 | 02/04/13 | 5002 | Carlos Mahecha & Anastasia Casas | - | 5,861.63 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/04/13 | 04/03/13 | 5208 | Carlos Mahecha & Anastasia Casas | - | 5,119.78 |

Bal Harbour Quarzo, LLC
Case No. 18-11793 - RBR
United States Bankruptcy Court
Southern District of Florida
Broward Division

Transfers to/from Carlos Mahecha & Anastasia Casas
For the Period from February 19, 2008 through August 31, 2017 *(Note 1)*

PRELIMINARY DRAFT as of January 31, 2020:
This is a preliminary draft. It has been prepared based on preliminary information and assumptions. No one may rely on this draft. It is subject to change as additional information becomes available or is clarified.

Source: Debtor's QuickBooks and bank records.
Petition Date: February 16, 2018

| Entity | Bank ID # | Bank Support (Y/N) | Statement Clearing Date | GL Date | Check # / Dep Ref # | Payee / Received From | Deposits / Credits | Checks / Debits |
|--------|-----------|--------------------|-----------------------|---------|-------------------|----------------------|-------------------|-----------------|
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/06/13 | 04/25/13 | 5284 | Carlos Mahecha & Anastasia Casas | - | 706.97 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/28/13 | 05/21/13 | 5373 | Carlos Mahecha & Anastasia Casas | - | 6,797.64 |
| Synergy Capital Group, LLC | MCB-6006 | N | 07/05/13 | 07/03/13 | 5524 | Carlos Mahecha & Anastasia Casas | - | 2,329.49 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/02/13 | 07/31/13 | 5591 | Carlos Mahecha & Anastasia Casas | - | 4,319.85 |
| Synergy Capital Group, LLC | MCB-6006 | N | 10/01/13 | 09/06/13 | 5739 | Carlos Mahecha & Anastasia Casas | - | 3,475.52 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/04/13 | 10/01/13 | 5817 | Carlos Mahecha & Anastasia Casas | - | 2,608.52 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/04/13 | 11/01/13 | 5948 | Carlos Mahecha & Anastasia Casas | - | 1,713.74 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/18/13 | 11/15/13 | 6045 | Carlos Mahecha & Anastasia Casas | - | 4,114.12 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/16/14 | 01/09/14 | 6263 | Carlos Mahecha & Anastasia Casas | - | 1,773.97 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/14/14 | 02/07/14 | 6356 | Carlos Mahecha & Anastasia Casas | - | 4,770.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/20/14 | 03/14/14 | 6549 | Carlos Mahecha & Anastasia Casas | - | 3,974.85 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/17/14 | 04/14/14 | 6550 | Carlos Mahecha & Anastasia Casas | - | 4,355.97 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/02/14 | 05/28/14 | 6752 | Carlos Mahecha & Anastasia Casas | - | 2,755.79 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/19/14 | 06/17/14 | 6868 | Carlos Mahecha & Anastasia Casas | - | 3,572.01 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/01/14 | 07/24/14 | 6968 | Carlos Mahecha & Anastasia Casas | - | 1,491.17 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/27/14 | 08/26/14 | 6717 | Carlos Mahecha & Anastasia Casas | - | 2,524.21 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/24/14 | 09/22/14 | 7162 | Carlos Mahecha & Anastasia Casas | - | 3,098.39 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 10/27/14 | 10/24/14 | 7261 | Carlos Mahecha & Anastasia Casas | - | 2,454.49 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/17/14 | 11/10/14 | 7322 | Carlos Mahecha & Anastasia Casas | - | 1,253.20 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 12/12/14 | 12/01/14 | 7427 | Carlos Mahecha & Anastasia Casas | - | 2,858.93 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/07/15 | 01/05/15 | 7564 | Carlos Mahecha & Anastasia Casas | - | 1,725.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/21/15 | 01/15/15 | 7621 | Carlos Mahecha & Anastasia Casas | - | 3,778.05 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/25/15 | 02/23/15 | 7737 | Carlos Mahecha & Anastasia Casas | - | 3,563.65 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/16/15 | 03/12/15 | 7821 | Carlos Mahecha & Anastasia Casas | - | 3,865.75 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/01/15 | 04/27/15 | 7968 | Carlos Mahecha & Anastasia Casas | - | 3,299.82 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/18/15 | 06/15/15 | 8105 | Carlos Mahecha & Anastasia Casas | - | 2,554.91 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/13/15 | 08/11/15 | 8271 | Carlos Mahecha & Anastasia Casas | - | 2,676.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/21/15 | 09/14/15 | 8375 | Carlos Mahecha & Anastasia Casas | - | 3,025.43 |
| | | | | | | | $ 70,461.41 | $ 272,284.13 |

Notes:
1) Synergy Capital Group, LLC QuickBooks ("QB") records were for the period from February 19, 2008 to August 31, 2017.

# EXHIBIT
# D

Bal Harbour Quarzo, LLC
Case No. 18-11793 - RBR
United States Bankruptcy Court
Southern District of Florida
Broward Division

**Transfers to/from Anastasia Casas**
**For the Period from February 19, 2008 through August 31, 2017**(Note 1, 2)

PRELIMINARY DRAFT as of January 31, 2020:
This is a preliminary draft. It has been prepared based on preliminary information and assumptions. No one may rely on this draft. It is subject to change as additional information becomes available or is clarified.

Source: Debtor's QuickBooks and bank records
Petition Date: February 16, 2018

| Entity | Bank ID # | Bank Support (Y/N) | Statement Clearing Date | GL Date | Check # / Dep Ref # | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|---|---|
| Bal Harbour Quarzo, LLC | MCB-4706 | Y | 02/10/12 | 02/08/12 | 1259 | Anastasia Casas | $        - | $        1,000.00 |
| Bal Harbour Quarzo, LLC | MCB-4706 | Y | 02/09/12 | 02/08/12 | 1258 | Anastasia Casas | - | 1,023.81 |
| Bal Harbour Quarzo, LLC | MCB-1006 | N | | 05/15/12 | 106 | Anastasia Casas | - | 154.97 |
| Bal Harbour Quarzo, LLC | BOA-3661 | Y | 12/20/13 | 12/20/13 | 1098 | Anastasia Casas | - | 2,148.87 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 01/16/14 | 01/13/14 | 1903 | Anastasia Casas | - | 11,881.97 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 01/31/14 | 01/29/14 | 1913 | Anastasia Casas | - | 1,480.99 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 01/31/14 | 01/29/14 | 1914 | Anastasia Casas | - | 2,150.97 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 02/06/14 | 02/05/14 | 1915 | Anastasia Casas | - | 1,487.72 |
| Bal Harbour Quarzo, LLC | BOA-3661 | Y | 02/18/14 | 02/14/14 | 1110 | Anastasia Casas | - | 70,000.00 |
| Bal Harbour Quarzo, LLC | BOA-3661 | Y | 02/14/14 | 02/14/14 | 1111 | Anastasia Casas | - | 60,000.00 |
| Bal Harbour Quarzo, LLC | BOA-3661 | Y | 02/18/14 | 02/14/14 | 1112 | Anastasia Casas | - | 40,000.00 |
| Bal Harbour Quarzo, LLC | BOA-3661 | Y | 02/18/14 | 02/17/14 | 1113 | Anastasia Casas | - | 8,500.00 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 02/26/14 | 02/25/14 | 1929 | Anastasia Casas | - | 2,022.76 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 03/26/14 | 03/25/14 | 1951 | Anastasia Casas | - | 2,090.79 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 04/25/14 | 04/22/14 | 1957 | Anastasia Casas | - | 2,146.16 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 05/28/14 | 05/23/14 | 1970 | Anastasia Casas | - | 2,189.08 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 08/27/14 | 08/26/14 | 2011 | Anastasia Casas | - | 2,139.79 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 08/29/14 | 08/28/14 | 2013 | Anastasia Casas | - | 5,238.25 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 08/29/14 | 08/28/14 | 2014 | Anastasia Casas | - | 5,238.25 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 10/03/14 | 09/30/14 | 2039 | Anastasia Casas | - | 2,042.46 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 10/30/14 | 10/28/14 | 2057 | Anastasia Casas | - | 637.54 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 10/31/14 | 10/30/14 | 2059 | Anastasia Casas | - | 8,000.00 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 11/10/14 | 11/07/14 | 2040 | Anastasia Casas | - | 15,390.89 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 11/10/14 | 11/07/14 | 2041 | Anastasia Casas | - | 15,390.89 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 11/10/14 | 11/07/14 | 2042 | Anastasia Casas | - | 15,390.89 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 11/26/14 | 11/25/14 | 2084 | Anastasia Casas | - | 2,019.59 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 12/24/14 | 12/19/14 | 2102 | Anastasia Casas | - | 2,019.59 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 01/27/15 | 01/23/15 | 2109 | Anastasia Casas | - | 2,018.13 |
| Bal Harbour Quarzo, LLC | MCB-4706 | Y | 02/25/15 | 02/24/15 | 2475 | Anastasia Casas | - | 1,732.49 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 03/24/15 | 03/23/15 | 2156 | Anastasia Casas | - | 1,595.54 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 04/24/15 | 04/21/15 | 2176 | Anastasia Casas | - | 1,661.39 |
| Bal Harbour Quarzo, LLC | MCB-9006 | Y | 05/27/15 | 05/26/15 | 2189 | Anastasia Casas | - | 1,652.65 |
| Bal Harbour Quarzo, LLC | BOA-3661 | Y | 07/20/15 | 07/20/15 | 1210 | Anastasia Casas | - | 3,010.41 |
| Bal Harbour Quarzo, LLC | BOA-3661 | Y | 08/27/15 | 08/26/15 | 1281 | Anastasia Casas | - | 1,377.50 |
| **Bal Harbour Quarzo, LLC Total** | | | | | | | **-** | **294,814.34** |
| Synergy Capital Group, LLC | REG-7922 | Y | 01/23/09 | 01/21/09 | 1540 | Anastasia Casas | - | 1,146.66 |
| Synergy Capital Group, LLC | REG-7922 | N | | 06/13/11 | 1911 | Anastasia Casas | - | 30,000.00 |
| Synergy Capital Group, LLC | REG-7922 | N | | 06/13/11 | 1912 | Anastasia Casas | - | 34,000.00 |
| Synergy Capital Group, LLC | REG-7922 | Y | 07/20/11 | 07/19/11 | 1915 | Anastasia Casas | - | 1,895.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 10/24/12 | 10/22/12 | 4549 | Anastasia Casas | - | 4,494.91 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/11/14 | 04/04/14 | 6609 | Anastasia Casas | - | 1,812.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | 04/11/14 | 04/08/14 | 6510 | Anastasia Casas | - | 82.93 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/02/14 | 05/28/14 | 6753 | Anastasia Casas | - | 118.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/19/15 | 02/17/15 | 7326 | Anastasia Casas | - | 1,756.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/11/15 | 08/01/15 | 8261 | Anastasia Casas | - | 52.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/18/16 | 04/18/16 | | Anastasia Casas | 2,325.00 | - |
| **Synergy Capital Group, LLC Total** | | | | | | | **2,325.00** | **75,357.50** |
| **Grand Total** | | | | | | | **$   2,325.00** | **$  370,171.84** |

Notes:
1) Bal Harbour Quarzo, LLC QuickBooks ("QB") records were for the period from November 8, 2011 through August 21, 2017.
2) Synergy Capital Group, LLC QuickBooks ("QB") records were for the period from February 19, 2008 through August 31, 2017.

# EXHIBIT

# E

**Bal Harbour Quarzo, LLC**
**Case No. 18-11793 - RBR**
**United States Bankruptcy Court**
**Southern District of Florida**
**Broward Division**

**Transfers to/from Felipe Mahecha Casas**
**For the Period from February 19, 2008 through August 31, 2017** *(Note 1)*

PRELIMINARY DRAFT as of January 31, 2020:
This is a preliminary draft. It has been prepared based on preliminary information and assumptions. No one may rely on this draft. It is subject to change as additional information becomes available or is clarified.

Source: Debtor's QuickBooks and bank records.
Petition Date: February 16, 2018

| Entity | Bank ID # | Bank Support (Y/N) | Statement Clearing Date | GL Date | Check # / Dep Ref # | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|---|---|
| Bal Harbour Quarzo, LLC | BOA-3661 | Y | 05/02/16 | 04/29/16 | 1490 | Felipe Mahecha | $        - | $        500.00 |
| Bal Harbour Quarzo, LLC | SB-3735 | Y | 09/27/16 | 09/27/16 | | Felipe Mahecha | - | 200.00 |
| **Bal Harbour Quarzo, LLC Total** | | | | | | | **-** | **700.00** |
| Synergy Capital Group, LLC | MCB-6006 | N | | 07/14/09 | 1351 | Felipe Mahecha | - | 400.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 07/29/09 | 1378 | Felipe Mahecha | - | 550.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 08/14/09 | 1406 | Felipe Mahecha | - | 550.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 08/27/09 | 1438 | Felipe Mahecha | - | 550.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 09/15/09 | 1459 | Felipe Mahecha | - | 550.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 09/29/09 | 1501 | Felipe Mahecha | - | 550.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 10/14/09 | 1527 | Felipe Mahecha | - | 550.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 10/28/09 | 1562 | Felipe Mahecha | - | 550.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 11/12/09 | 1589 | Felipe Mahecha | - | 550.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 11/24/09 | 1595 | Felipe Mahecha | - | 550.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 12/09/09 | 1634 | Felipe Mahecha | - | 200.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 11/30/10 | 2080 | Felipe Mahecha | - | 300.00 |
| Synergy Capital Group, LLC | REG-7922 | N | | 01/19/11 | 1893 | Felipe Mahecha | - | 100.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 03/14/11 | 2490 | Felipe Mahecha | - | 100.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 04/12/11 | 2559 | Felipe Mahecha | - | 100.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 10/04/11 | 3213 | Felipe Mahecha | - | 75.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 10/31/11 | 3286 | Felipe Mahecha | - | 100.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/25/12 | 04/24/12 | 3869 | Felipe Mahecha | - | 100.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | 04/26/13 | 04/24/13 | 4826 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | 07/18/13 | 07/16/13 | 5340 | Felipe Mahecha | - | 60.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/14/13 | 08/13/13 | 5631 | Felipe Mahecha | - | 100.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 12/23/13 | 12/20/13 | 6189 | Felipe Mahecha | - | 1,304.12 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/07/14 | 01/06/14 | 6258 | Felipe Mahecha | - | 600.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/09/14 | 01/08/14 | 6261 | Felipe Mahecha | - | 200.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/08/14 | 05/01/14 | 6705 | Felipe Mahecha | - | 34.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/18/14 | 06/15/14 | 6832 | Felipe Mahecha | - | 781.99 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/27/14 | 06/24/14 | 6553 | Felipe Mahecha | - | 44.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/03/14 | 06/30/14 | 6915 | Felipe Mahecha | - | 1,500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/25/14 | 07/15/14 | 6925 | Felipe Mahecha | - | 577.18 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/13/14 | 08/11/14 | 6562 | Felipe Mahecha | - | 98.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/19/14 | 08/18/14 | 7063 | Felipe Mahecha | - | 300.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/21/14 | 08/19/14 | 7064 | Felipe Mahecha | - | 200.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/24/14 | 08/31/14 | 7081 | Felipe Mahecha | - | 2,999.99 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 10/03/14 | 09/30/14 | 7066 | Felipe Mahecha | - | 3,000.01 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 10/14/14 | 10/07/14 | 7215 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/05/14 | 10/31/14 | 7278 | Felipe Mahecha | - | 3,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/13/14 | 11/10/14 | 7321 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 12/02/14 | 12/01/14 | 7394 | Felipe Mahecha | - | 3,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 12/18/14 | 12/16/14 | 7481 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/08/15 | 12/31/14 | 7562 | Felipe Mahecha | - | 3,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/15/15 | 01/14/15 | 7579 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/04/15 | 01/31/15 | 7643 | Felipe Mahecha | - | 3,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/09/15 | 02/03/15 | 7119 | Felipe Mahecha | - | 675.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/05/15 | 02/27/15 | 7756 | Felipe Mahecha | - | 3,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/13/15 | 03/12/15 | 7817 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/08/15 | 03/31/15 | 7879 | Felipe Mahecha | - | 3,000.48 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/13/15 | 04/10/15 | 7915 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/04/15 | 04/30/15 | 7975 | Felipe Mahecha | - | 2,961.46 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/15/15 | 05/13/15 | 8012 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/03/15 | 05/31/15 | 8079 | Felipe Mahecha | - | 2,961.45 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/17/15 | 06/15/15 | 8104 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/03/15 | 06/30/15 | 8177 | Felipe Mahecha | - | 2,961.45 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/27/15 | 07/24/15 | 8204 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/03/15 | 07/31/15 | 8238 | Felipe Mahecha | - | 2,961.47 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/13/15 | 08/12/15 | 8274 | Felipe Mahecha | - | 500.00 |

Bal Harbour Quarzo, LLC
Case No. 18-11793 - RBR
United States Bankruptcy Court
Southern District of Florida
Broward Division

Transfers to/from Felipe Mahecha Casas
For the Period from February 19, 2008 through August 31, 2017 (Note 1)

PRELIMINARY DRAFT as of January 31, 2020:
This is a preliminary draft. It has been prepared based on preliminary information and assumptions. No one may rely on this draft. It is subject to change as additional information becomes available or is clarified.

Source: Debtor's QuickBooks and bank records.
Petition Date: February 16, 2018

| Entity | Bank ID # | Bank Support (Y/N) | Statement Clearing Date | GL Date | Check # / Dep Ref # | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|---|---|
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/03/15 | 08/31/15 | 8315 | Felipe Mahecha | - | 2,961.45 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/08/15 | 09/03/15 | 8339 | Felipe Mahecha | - | 194.66 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/16/15 | 09/15/15 | 8386 | Felipe Mahecha | - | 148.14 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/16/15 | 09/15/15 | 8359 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 10/02/15 | 09/30/15 | 8397 | Felipe Mahecha | - | 2,961.45 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 10/21/15 | 10/19/15 | 8420 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/18/15 | 10/31/15 | 8479 | Felipe Mahecha | - | 3,005.99 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/04/15 | 11/02/15 | 8480 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 12/03/15 | 11/30/15 | 8543 | Felipe Mahecha | - | 3,006.01 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 12/17/15 | 12/15/15 | 8582 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/12/16 | 01/02/16 | 8662 | Felipe Mahecha | - | 3,006.99 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/13/16 | 01/12/16 | 8674 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/03/16 | 01/29/16 | 8712 | Felipe Mahecha | - | 144.40 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/03/16 | 01/31/16 | 8707 | Felipe Mahecha | - | 3,007.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/09/16 | 02/08/16 | 8736 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/01/16 | 02/29/16 | 8760 | Felipe Mahecha | - | 3,007.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/14/16 | 03/11/16 | 8465 | Felipe Mahecha | - | 100.54 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/17/16 | 03/16/16 | 8792 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/05/16 | 03/31/16 | 8837 | Felipe Mahecha | - | 3,006.99 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/25/16 | 04/22/16 | 8870 | Felipe Mahecha | - | 500.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/06/16 | 04/30/16 | 8919 | Felipe Mahecha | - | 5,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/03/16 | 05/31/16 | 8967 | Felipe Mahecha | - | 5,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/10/16 | 06/09/16 | 8975 | Felipe Mahecha | - | 7,200.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/06/16 | 06/30/16 | 9005 | Felipe Mahecha | - | 5,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/18/16 | 07/15/16 | 9043 | Felipe Mahecha | - | 100.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/21/16 | 07/20/16 | 9073 | Felipe Mahecha | - | 123.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 08/09/16 | 07/31/16 | 120 | Felipe Mahecha | - | 5,000.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 09/07/16 | 08/31/16 | 175 | Felipe Mahecha | - | 4,999.99 |
| Synergy Capital Group, LLC | SB-2653 | Y | 10/05/16 | 09/30/16 | 222 | Felipe Mahecha | - | 5,000.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 11/01/16 | 10/31/16 | 252 | Felipe Mahecha | - | 5,000.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 12/08/16 | 11/30/16 | 295 | Felipe Mahecha | - | 5,000.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 12/06/16 | 12/06/16 | | Felipe Mahecha | 1,225.00 | - |
| Synergy Capital Group, LLC | SB-2653 | Y | 01/20/16 | 12/31/16 | 387 | Felipe Mahecha | - | 5,000.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 02/02/16 | 01/31/17 | 460 | Felipe Mahecha | - | 5,003.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 02/24/16 | 02/28/17 | 499 | Felipe Mahecha | - | 5,000.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 04/05/16 | 03/31/17 | 567 | Felipe Mahecha | - | 5,000.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 05/03/16 | 04/30/17 | 6045 | Felipe Mahecha | - | 5,003.00 |
| Synergy Capital Group, LLC | SB-2653 | Y | 06/02/16 | 05/30/17 | 6078 | Felipe Mahecha | - | 5,002.99 |
| Synergy Capital Group, LLC | SB-2653 | Y | 07/05/16 | 06/30/17 | 6146 | Felipe Mahecha | - | 5,002.99 |
| Synergy Capital Group, LLC | SB-2653 | Y | 07/05/16 | 07/03/17 | 6148 | Felipe Mahecha | - | 165.00 |
| **Synergy Capital Group, LLC Total** | | | | | | | 1,225.00 | 164,944.19 |
| | | | | | | | | |
| **Grand Total** | | | | | | | $ 1,225.00 | $ 165,644.19 |

Notes:
1) Bal Harbour Quarzo, LLC QuickBooks ("QB") records were for the period from November 8, 2011 through August 21, 2017.
2) Synergy Capital Group, LLC QuickBooks ("QB") records were for the period from February 19, 2008 through August 31, 2017.

# EXHIBIT

# F

**Bal Harbour Quarzo, LLC**
**Case No. 18-11793 - RBR**
**United States Bankruptcy Court**
**Southern District of Florida**
**Broward Division**

**Transfers to/from Camilo E Mahecha**
**For the Period from February 19, 2008 through August 31, 2017** *(Note 1)*

PRELIMINARY DRAFT as of January 31, 2020:
This is a preliminary draft. It has been prepared based on preliminary information and assumptions. No one may rely on this draft. It is subject to change as additional information becomes available or is clarified.

Source: Debtor's QuickBooks and bank records.
Petition Date: February 16, 2018

| Entity | Bank ID # | Bank Support (Y/N) | Statement Clearing Date | GL Date | Check # / Dep Ref # | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|---|---|
| Synergy Capital Group, LLC | MCB-6006 | N | 01/13/12 | 01/12/12 | 3543 | Camilo E Mahecha | $         - | $         300.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/09/12 | 05/08/12 | 3899 | Camilo E Mahecha | - | 970.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | 06/18/12 | 06/15/12 | 4064 | Camilo E Mahecha | - | 2,443.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/18/12 | 07/16/12 | 4042 | Camilo E Mahecha | - | 2,443.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/17/12 | 08/16/12 | 4282 | Camilo E Mahecha | - | 2,443.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/19/12 | 09/15/12 | 4395 | Camilo E Mahecha | - | 2,443.50 |
| Synergy Capital Group, LLC | MCB-6006 | N | 10/18/12 | 10/16/12 | 4502 | Camilo E Mahecha | - | 2,443.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/20/12 | 11/16/12 | 4660 | Camilo E Mahecha | - | 2,443.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 12/18/12 | 12/15/12 | 4732 | Camilo E Mahecha | - | 2,443.50 |
| Synergy Capital Group, LLC | MCB-6006 | N | 01/18/13 | 01/15/13 | 4899 | Camilo E Mahecha | - | 2,383.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/19/13 | 02/15/13 | 5005 | Camilo E Mahecha | - | 2,385.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/21/13 | 03/15/13 | 5119 | Camilo E Mahecha | - | 2,385.50 |
| Synergy Capital Group, LLC | MCB-6006 | N | 04/18/13 | 04/15/13 | 5227 | Camilo E Mahecha | - | 2,385.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/21/13 | 05/15/13 | 5331 | Camilo E Mahecha | - | 2,385.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/19/13 | 06/15/13 | 5434 | Camilo E Mahecha | - | 2,385.50 |
| Synergy Capital Group, LLC | MCB-6006 | N | 07/23/13 | 07/15/13 | 5538 | Camilo E Mahecha | - | 2,385.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/21/13 | 08/15/13 | 5638 | Camilo E Mahecha | - | 2,385.50 |
| Synergy Capital Group, LLC | MCB-6006 | N | 09/19/13 | 09/15/13 | 5758 | Camilo E Mahecha | - | 2,385.50 |
| Synergy Capital Group, LLC | MCB-6006 | N | 10/17/13 | 10/15/13 | 5859 | Camilo E Mahecha | - | 2,385.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/18/13 | 11/15/13 | 6047 | Camilo E Mahecha | - | 2,385.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 12/18/13 | 12/15/13 | 6119 | Camilo E Mahecha | - | 2,385.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/23/14 | 01/15/14 | 6306 | Camilo E Mahecha | - | 2,386.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/19/14 | 02/17/14 | 6367 | Camilo E Mahecha | - | 2,386.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/20/14 | 03/17/14 | 6512 | Camilo E Mahecha | - | 2,386.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/25/14 | 04/16/14 | 6644 | Camilo E Mahecha | - | 2,386.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/08/14 | 05/06/14 | 6598 | Camilo E Mahecha | - | 400.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/19/14 | 05/15/14 | 4244 | Camilo E Mahecha | - | 2,386.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/18/14 | 06/15/14 | 6829 | Camilo E Mahecha | - | 2,386.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/07/14 | 07/03/14 | 6871 | Camilo E Mahecha | - | 1,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/17/14 | 07/15/14 | 6931 | Camilo E Mahecha | - | 2,386.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/19/14 | 08/15/14 | 7023 | Camilo E Mahecha | - | 2,386.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/22/14 | 09/15/14 | 7129 | Camilo E Mahecha | - | 2,386.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 10/21/14 | 10/15/14 | 7224 | Camilo E Mahecha | - | 2,386.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/19/14 | 11/15/14 | 7336 | Camilo E Mahecha | - | 2,386.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 12/18/14 | 12/15/14 | 7442 | Camilo E Mahecha | - | 2,386.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/21/15 | 01/15/15 | 7622 | Camilo E Mahecha | - | 2,387.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/25/15 | 02/16/15 | 7689 | Camilo E Mahecha | - | 2,387.50 |
| Synergy Capital Group, LLC | MCB-6006 | N | 03/19/15 | 03/16/15 | 7831 | Camilo E Mahecha | - | 2,387.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/20/15 | 04/15/15 | 7929 | Camilo E Mahecha | - | 2,387.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/20/15 | 05/15/15 | 8021 | Camilo E Mahecha | - | 2,387.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/18/15 | 06/15/15 | 8116 | Camilo E Mahecha | - | 2,387.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/21/15 | 07/15/15 | 8196 | Camilo E Mahecha | - | 2,387.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/19/15 | 08/17/15 | 8279 | Camilo E Mahecha | - | 2,387.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/21/15 | 09/15/15 | 8354 | Camilo E Mahecha | - | 2,387.50 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 10/19/15 | 10/15/15 | 8416 | Camilo E Mahecha | - | 2,387.50 |
| Synergy Capital Group, LLC | SB-2653 | Y | 02/24/17 | 02/16/17 | 495 | Camilo E Mahecha | - | 2,388.50 |
| Synergy Capital Group, LLC | SB-2653 | Y | 05/17/17 | 05/16/17 | 6051 | Camilo E Mahecha | - | 2,388.50 |
| Synergy Capital Group, LLC | SB-2653 | Y | 06/19/17 | 06/16/17 | 6121 | Camilo E Mahecha | - | 2,388.50 |
| | | | | | | | $         - | $    108,077.00 |

Notes:
1) Synergy Capital Group, LLC QuickBooks ("QB") records were for the period from February 19, 2008 to August 31, 2017.

# EXHIBIT
# G

**Bal Harbour Quarzo, LLC**
**Case No. 18-11793 - RBR**
**United States Bankruptcy Court**
**Southern District of Florida**
**Broward Division**

**Transfers to/from 7000 Island Boulevard Condominium**
**For the Period from February 19, 2008 through August 31, 2017 *(Note 1)***

**PRELIMINARY DRAFT as of January 31, 2020:**
This is a preliminary draft. It has been prepared based on preliminary information and assumptions. No one may rely on this draft. It is subject to change as additional information becomes available or is clarified.

Source: Debtor's QuickBooks and bank records.
Petition Date: February 16, 2018

| Entity | Bank ID # | Bank Support (Y/N) | Statement Clearing Date | GL Date | Check # / Dep Ref # | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|---|---|
| Synergy Capital Group, LLC | MCB-6006 | N | | 04/28/09 | 1254 | 7000 Island Boulevard Condominium | $          - | $        1,736.70 |
| Synergy Capital Group, LLC | REG-7922 | Y | 06/05/09 | 06/03/09 | 1700 | 7000 Island Boulevard Condominium | | 1,736.70 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 07/02/09 | 1284 | 7000 Island Boulevard Condominium | | 1,736.70 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 08/05/09 | 1386 | 7000 Island Boulevard Condominium | | 5,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 01/06/11 | 2302 | 7000 Island Boulevard Condominium | | 1,737.63 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 02/24/11 | 2430 | 7000 Island Boulevard Condominium | | 3,475.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 04/25/11 | 2622 | 7000 Island Boulevard Condominium | | 2,413.87 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 07/07/11 | 2867 | 7000 Island Boulevard Condominium | | 3,475.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 08/01/11 | 2962 | 7000 Island Boulevard Condominium | | 3,475.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 08/12/11 | 3004 | 7000 Island Boulevard Condominium | | 888.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | 01/20/12 | 01/12/12 | 3542 | 7000 Island Boulevard Condominium | | 3,537.26 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/01/12 | 02/24/12 | 3120 | 7000 Island Boulevard Condominium | | 3,487.26 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/30/12 | 03/20/12 | 3755 | 7000 Island Boulevard Condominium | | 3,487.26 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/03/12 | 04/25/12 | 3870 | 7000 Island Boulevard Condominium | | 3,487.26 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/30/12 | 08/17/12 | 4334 | 7000 Island Boulevard Condominium | | 3,487.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | 10/25/12 | 10/09/12 | 4499 | 7000 Island Boulevard Condominium | | 1,743.63 |
| Synergy Capital Group, LLC | MCB-6006 | N | 12/12/12 | 12/07/12 | 4614 | 7000 Island Boulevard Condominium | | 3,452.26 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/11/13 | 02/05/13 | 4999 | 7000 Island Boulevard Condominium | | 1,788.63 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/14/13 | 03/06/13 | 5108 | 7000 Island Boulevard Condominium | | 1,748.63 |
| Synergy Capital Group, LLC | MCB-6006 | N | 04/17/13 | 04/10/13 | 5217 | 7000 Island Boulevard Condominium | | 1,748.63 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/10/13 | 05/08/13 | 5324 | 7000 Island Boulevard Condominium | | 1,798.63 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/12/13 | 06/05/13 | 5839 | 7000 Island Boulevard Condominium | | 1,798.63 |
| Synergy Capital Group, LLC | MCB-6006 | N | 07/11/13 | 07/08/13 | 5526 | 7000 Island Boulevard Condominium | | 1,748.63 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/20/13 | 08/16/13 | 5647 | 7000 Island Boulevard Condominium | | 1,748.63 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 09/03/13 | 5737 | 7000 Island Boulevard Condominium | | 1,748.63 |
| Synergy Capital Group, LLC | MCB-6006 | N | 10/11/13 | 10/01/13 | 5815 | 7000 Island Boulevard Condominium | | 1,748.63 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/15/13 | 11/01/13 | 5947 | 7000 Island Boulevard Condominium | | 1,748.63 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 12/10/13 | 12/06/13 | 6091 | 7000 Island Boulevard Condominium | | 1,788.63 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/13/14 | 01/07/14 | 6259 | 7000 Island Boulevard Condominium | | 1,788.63 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/14/14 | 02/07/14 | 6352 | 7000 Island Boulevard Condominium | | 1,777.77 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/12/14 | 02/21/14 | 6409 | 7000 Island Boulevard Condominium | | 1,777.77 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/11/14 | 04/04/14 | 6608 | 7000 Island Boulevard Condominium | | 1,886.91 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/07/14 | 05/02/14 | 6711 | 7000 Island Boulevard Condominium | | 1,886.91 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/16/14 | 06/01/14 | 6764 | 7000 Island Boulevard Condominium | | 1,886.91 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/08/14 | 06/25/14 | 6869 | 7000 Island Boulevard Condominium | | 1,886.91 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/12/14 | 08/05/14 | 7019 | 7000 Island Boulevard Condominium | | 1,886.91 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/09/14 | 08/26/14 | 6718 | 7000 Island Boulevard Condominium | | 1,886.91 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 10/14/14 | 10/07/14 | 7212 | 7000 Island Boulevard Condominium | | 1,886.91 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/13/14 | 11/06/14 | 7112 | 7000 Island Boulevard Condominium | | 1,472.07 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/25/14 | 11/12/14 | 7324 | 7000 Island Boulevard Condominium | | 325.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 12/23/14 | 12/12/14 | 7439 | 7000 Island Boulevard Condominium | | 1,798.63 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/12/15 | 01/08/15 | 7116 | 7000 Island Boulevard Condominium | | 1,798.63 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/09/15 | 02/03/15 | 7118 | 7000 Island Boulevard Condominium | | 1,961.75 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/10/15 | 03/05/15 | 7813 | 7000 Island Boulevard Condominium | | 1,798.63 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/10/15 | 04/10/15 | | 7000 Island Boulevard Condominium | | 1,961.75 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/01/15 | 05/01/15 | | 7000 Island Boulevard Condominium | | 1,880.19 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/01/15 | 06/01/15 | | 7000 Island Boulevard Condominium | | 1,880.19 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/18/15 | 06/18/15 | | 7000 Island Boulevard Condominium | | 6,245.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/01/15 | 07/01/15 | | 7000 Island Boulevard Condominium | | 1,880.19 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/03/15 | 08/01/15 | | 7000 Island Boulevard Condominium | | 1,880.19 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/01/15 | 09/01/15 | | 7000 Island Boulevard Condominium | | 1,880.19 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 10/01/15 | 10/01/15 | | 7000 Island Boulevard Condominium | | 1,880.19 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 11/02/15 | 11/02/15 | | 7000 Island Boulevard Condominium | | 1,880.19 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 12/01/15 | 12/01/15 | | 7000 Island Boulevard Condominium | | 1,880.19 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/04/16 | 01/04/16 | | 7000 Island Boulevard Condominium | | 1,913.78 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/01/16 | 02/01/16 | | 7000 Island Boulevard Condominium | | 1,913.78 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/01/16 | 03/01/16 | | 7000 Island Boulevard Condominium | | 1,913.78 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/01/16 | 04/01/16 | | 7000 Island Boulevard Condominium | | 1,913.78 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 05/02/16 | 05/02/16 | | 7000 Island Boulevard Condominium | | 1,913.78 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/01/16 | 06/01/16 | | 7000 Island Boulevard Condominium | | 1,913.78 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/15/16 | 06/15/16 | | 7000 Island Boulevard Condominium | | 6,246.00 |
| | | | | | | | $          - | $    136,457.70 |

Notes:
1) Synergy Capital Group, LLC QuickBooks ("QB") records were for the period from February 19, 2008 through August 31, 2017.

# EXHIBIT

# H

Bal Harbour Quarzo, LLC
Case No. 18-11793 - RBR
United States Bankruptcy Court
Southern District of Florida
Broward Division

Transfers to/from  BMW Financial Services
For the Period from February 19, 2008 through August 31, 2017 *(Note 1)*

PRELIMINARY DRAFT as of January 31, 2020:
This is a preliminary draft. It has been prepared based on preliminary information and assumptions. No one may rely on this draft. It is subject to change as additional information becomes available or is clarified.

Source: Debtor's QuickBooks and bank records.
Petition Date: February 16, 2018

| Entity | Bank ID # | Bank Support (Y/N) | Statement Clearing Date | GL Date | Check # / Dep Ref # | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|---|---|
| Synergy Capital Group, LLC | REG-7922 | Y | 03/18/08 | 03/10/08 | 1213 | BMW Financial Services | $ - | $ 1,303.26 |
| Synergy Capital Group, LLC | REG-7922 | Y | 04/04/08 | 03/28/08 | 1217 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 04/30/08 | 1018 | BMW Financial Services | - | 1,425.06 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 05/28/08 | 1033 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 06/26/08 | 1047 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 07/23/08 | 1063 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 08/29/08 | 1108 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 09/08/08 | 1112 | BMW Financial Services | - | 1,520.90 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 10/01/08 | 1124 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | REG-7922 | Y | 10/20/08 | 10/13/08 | 1389 | BMW Financial Services | - | 743.09 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 10/30/08 | 1137 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 11/06/08 | 1146 | BMW Financial Services | - | 743.09 |
| Synergy Capital Group, LLC | REG-7922 | Y | 12/08/08 | 12/01/08 | 1464 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | REG-7922 | Y | 12/24/08 | 12/15/08 | 1487 | BMW Financial Services | - | 743.09 |
| Synergy Capital Group, LLC | REG-7922 | Y | 01/08/09 | 01/02/09 | 1529 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | REG-7922 | Y | 01/22/09 | 01/20/09 | | BMW Financial Services | - | 743.09 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 02/02/09 | 1184 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 02/17/09 | 1197 | BMW Financial Services | - | 743.09 |
| Synergy Capital Group, LLC | REG-7922 | Y | 03/09/09 | 03/02/09 | 1595 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 03/16/09 | 1229 | BMW Financial Services | - | 743.09 |
| Synergy Capital Group, LLC | REG-7922 | Y | 04/07/09 | 04/01/09 | 1623 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 04/09/09 | 1236 | BMW Financial Services | - | 743.09 |
| Synergy Capital Group, LLC | REG-7922 | Y | 05/04/09 | 04/28/09 | 1666 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 05/07/09 | 1259 | BMW Financial Services | - | 743.09 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 06/01/09 | 1280 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | REG-7922 | Y | 06/22/09 | 06/15/09 | 1709 | BMW Financial Services | - | 743.09 |
| Synergy Capital Group, LLC | REG-7922 | Y | 07/13/09 | 07/02/09 | 1729 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | REG-7922 | Y | 07/22/09 | 07/13/09 | 1742 | BMW Financial Services | - | 743.09 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 07/29/09 | 1362 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 08/24/09 | | BMW Financial Services | - | 743.09 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 08/26/09 | 1436 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | REG-7922 | Y | 09/21/09 | 09/15/09 | 1758 | BMW Financial Services | - | 743.09 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 09/29/09 | 1506 | BMW Financial Services | - | 1,303.26 |
| Synergy Capital Group, LLC | REG-7922 | Y | 11/16/09 | 11/09/09 | 1768 | BMW Financial Services | - | 743.09 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 12/22/09 | | BMW Financial Services | - | 743.09 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 01/28/10 | | BMW Financial Services | - | 575.00 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 08/12/11 | 3003 | BMW Financial Services | - | - |
| | | | | | | | $ - | $ 38,686.16 |

Notes:
1) Synergy Capital Group, LLC QuickBooks ("QB") records were for the period from February 19, 2008 to August 31, 2017

# EXHIBIT

# I

**Bal Harbour Quarzo, LLC**
**Case No. 18-11793 - RBR**
**United States Bankruptcy Court**
**Southern District of Florida**
**Broward Division**

**Transfers to/from Audi Financial Services**
**For the Period from February 19, 2008 through August 31, 2017** *(Note 1)*

PRELIMINARY DRAFT as of January 31, 2020:
This is a preliminary draft. It has been prepared based on preliminary information and assumptions. No one may rely on this draft. It is subject to change as additional information becomes available or is clarified.

Source: Debtor's QuickBooks and bank records.
Petition Date: February 16, 2018

| Entity | Bank ID # | Bank Support (Y/N) | Statement Clearing Date | GL Date | Check # / Dep Ref # | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|---|---|
| Synergy Capital Group, LLC | MCB-6006 | N | | 08/31/11 | 3075 | Audi Financial Services | $        - | $        1,013.77 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 09/27/11 | 3185 | Audi Financial Services | - | 3,041.31 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 11/09/11 | | Audi Financial Services | - | 1,013.77 |
| Synergy Capital Group, LLC | MCB-6006 | N | | 12/09/11 | | Audi Financial Services | - | 1,013.77 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 01/10/12 | 01/10/12 | | Audi Financial Services | - | 1,013.77 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/01/12 | 02/01/12 | | Audi Financial Services | - | 5,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 02/14/12 | 02/14/12 | | Audi Financial Services | - | 1,013.77 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/05/12 | 03/05/12 | | Audi Financial Services | - | 5,000.00 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 03/14/12 | 03/13/12 | | Audi Financial Services | - | 1,013.77 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/17/12 | 04/16/12 | | Audi Financial Services | - | 1,013.77 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 04/18/12 | 04/17/12 | | Audi Financial Services | - | 1,013.77 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 06/11/12 | 06/11/12 | | Audi Financial Services | - | 1,013.77 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 07/10/12 | 07/10/12 | | Audi Financial Services | - | 1,013.77 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 08/10/12 | 08/10/12 | | Audi Financial Services | - | 1,013.77 |
| Synergy Capital Group, LLC | MCB-6006 | Y | 09/10/12 | 09/10/12 | | Audi Financial Services | - | 1,013.77 |
| | | | | | | | $        - | $        25,206.55 |

Notes:
1) Synergy Capital Group, LLC QuickBooks ("QB") records were for the period from February 19, 2008 to August 31, 2017.

# EXHIBIT
# J

**Bal Harbour Quarzo, LLC / Case No. 18-11793-SMG**

**Transfers From Claimants to Related Parties**

| Payee | Claimant / Payor | Claim No. | Amount Paid | Payment Date | 2 Years Pre-Petition | 4 Years Pre-Petition | 7 Years Pre-Petition |
|---|---|---|---|---|---|---|---|
| Anastasia Casas | Nelson F. Gaitan and Sandra C. Cardenas | 35 | 11,968.20 | 09/08/11 | - | - | 11,968.20 |
| **Anastasia Casas Total** | | | **11,968.20** | | **-** | **-** | **11,968.20** |
| Carlos Mahecha | Nicolas Heredia | 126 | 40,000.00 | 10/19/07 | - | - | - |
| Carlos Mahecha | Diana Cristina Garcia & Jose Lisandro Gonzalez | 52 | 30,000.00 | 07/19/10 | - | - | - |
| Carlos Mahecha | Redstone Enterprise Corp. | 157 | 100,000.00 | 09/15/10 | - | - | - |
| Carlos Mahecha | Redstone Enterprise Corp. | 157 | 200,000.00 | 09/22/10 | - | - | - |
| Carlos Mahecha | Redstone Enterprise Corp. | 157 | 200,000.00 | 09/22/10 | - | - | - |
| Carlos Mahecha | Nelson F. Gaitan and Sandra C. Cardenas | 35 | 49,710.08 | 09/08/11 | - | - | 49,710.08 |
| Carlos Mahecha | BHQ Claims, LLC [claim transferred from Izhak Nikolai & Orlando Kempowsky] | 48 | 8,370.00 | 12/17/12 | - | - | 8,370.00 |
| Carlos Mahecha | Marketing Business Services | 101 | 153,694.58 | 07/27/16 | 153,694.58 | 153,694.58 | 153,694.58 |
| Carlos Mahecha | Marketing Business Services | 101 | 299,113.30 | 07/27/16 | 299,113.30 | 299,113.30 | 299,113.30 |
| **Carlos Mahecha Total** | | | **1,080,887.96** | | **452,807.88** | **452,807.88** | **510,887.96** |
| Mahecha Y Casas Group | Diana Cristina Garcia & Jose Lisandro Gonzalez | 54 | 63,165.49 | 04/11/13 | - | - | 63,165.49 |
| Mahecha Y Casas Group | Diana Cristina Garcia | 51 | 230,000.00 | 04/16/10 | - | - | - |
| Mahecha Y Casas Group | BHQ Claims, LLC [claim transferred from Izhak Nikolai & Orlando Kempowsky] | 48 | 100,000.00 | 07/24/12 | - | - | 100,000.00 |
| **Mahecha Y Casas Group Total** | | | **393,165.49** | | **-** | **-** | **163,165.49** |
| Terra Mahecha Y Casas Group | Nelson F. Gaitan and Sandra C. Cardenas | 35 | 49,432.83 | 09/08/11 | - | - | 49,432.83 |
| Terra Mahecha Y Casas Group | Marketing Business Services | 101 | 114,679.80 | 07/27/16 | 114,679.80 | 114,679.80 | 114,679.80 |
| Terra Mahecha Y Casas Group | Diana Cristina Garcia & Jose Lisandro Gonzalez | 54 | 138,867.51 | 04/11/13 | - | - | 138,867.51 |
| **Terra Mahecha Y Casas Group Total** | | | **302,980.14** | | **114,679.80** | **114,679.80** | **302,980.14** |
| | | | **$ 1,789,001.79** | | **$ 567,487.68** | **$ 567,487.68** | **$ 989,001.79** |

DRAFT
Privileged & Confidential