TAGGED OPINION



**ORDERED in the Southern District of Florida on December 3, 2021.**

_____
**Scott M. Grossman, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

BAL HARBOUR QUARZO, LLC                          Case No. 18-11793-SMG
a/k/a Synergy Capital Group, LLC,
a/k/a Synergy Investments Group, LLC,

     Debtor.
_____/

DREW W. DILLWORTH, as Trustee,

     Plaintiff,

v.                                               Adv. No. 20-01079-SMG

CARLOS ELIAS MAHECHA DIAZ,
MARIA ANASTASIA CASAS MATIZ,
FELIPE MAHECHA CASAS, and
CAMILO E. MAHECHA,

     Defendants.
_____/

**ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS TO DISMISS, DENYING
AS MOOT MOTION FOR LEAVE TO AMEND COMPLAINT,
AND GRANTING LEAVE TO FURTHER AMEND COMPLAINT**

Plaintiff, Drew Dillworth, as liquidating trustee of the Bal Harbour Quarzo Liquidating Trust (the "Plaintiff") filed an eighteen-count complaint[1] (the "Complaint") against Defendants Carlos Elias Mahecha Diaz ("Carlos"), Maria Anastasia Casas Matiz ("Anastasia"), Felipe Mahecha Casas ("Felipe"), and Camilo E. Mahecha ("Camilo," and together with Carlos, Anastasia, and Felipe, the "Defendants") relating to a failed real estate development project. The Complaint includes fourteen counts to avoid and recover fraudulent transfers, three counts for breach of fiduciary duty, and one count for aiding and abetting breach of fiduciary duty. Some of the fraudulent transfer counts seek to avoid transfers that were not made by the Debtor, Bal Harbour Quarzo, LLC ("BHQ"), and some seek to avoid transfers made more than four years after BHQ's bankruptcy petition date. The Defendants all filed motions to dismiss[2] (the "Motions to Dismiss"), which collectively raise the following arguments:

- The Complaint fails to state a claim to avoid and recover fraudulent transfers;

- The Plaintiff lacks standing to seek avoidance of transfers from Synergy Capital Group, LLC ("Synergy Capital"), which is not the debtor in this case;

- The Plaintiff may not seek to avoid transfers made more than four years before BHQ's bankruptcy petition date;

- The Plaintiff is not entitled to extraterritorial recovery of property;

---

[1] ECF No. 1.
[2] ECF Nos. 70, 71, 72, 82.

- As to Anastasia, Felipe and Carlos, the Complaint fails to state a claim for breach of fiduciary duty;

- As to Anastasia and Felipe, the Complaint fails to state a claim for aiding and abetting breach of fiduciary duty; and

- As to Anastasia and Camilo, the Court lacks personal jurisdiction over them.

The Plaintiff then filed a motion for leave to amend his Complaint to correct a scrivener's error and to provide a public record reference[3] (the "Motion for Leave to Amend").

Upon careful review of the Complaint, the Motions to Dismiss, the response briefs[4] (the "Responses") and the reply briefs,[5] as well as the Motion for Leave to Amend and the proposed amended complaint attached thereto (the "Proposed Amended Complaint"), the response thereto filed by Anastasia, Felipe, and Camilo,[6] and the joinder therein filed by Carlos,[7] the Court will grant in part and deny in part the Motions to Dismiss, but with leave for the Plaintiff to further amend his Complaint to address the pleading deficiencies discussed below. Because additional amendments will be required, the Motion for Leave to Amend will be denied as moot with respect to the Proposed Amended Complaint.

## I.    Personal Jurisdiction.

In analyzing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), made applicable here by Federal Rule of Bankruptcy Procedure 7012(b), the Court must "determine whether the applicable statute

---

[3] ECF No. 83.
[4] ECF No. 84, 85, 86, 108.
[5] ECF No. 96, 97, 98, 111.
[6] ECF No. 95.
[7] ECF No. 110.

potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process."[8] Here, the applicable statute that potentially confers jurisdiction over Anastasia and Camilo is Federal Rule of Bankruptcy Procedure 7004(f),[9] which provides that:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F. R. Civ. P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Neither Anastasia nor Camilo have challenged service of process under Bankruptcy Rule 7004 or any applicable subdivisions of Federal Rule of Civil Procedure 4.[10] And this civil proceeding clearly arises under the Bankruptcy Code (as to the fraudulent transfer claims) and is related to a case under the Bankruptcy Code (as to the breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims).[11]

So, to determine whether this Court has personal jurisdiction over Anastasia and Camilo, the Court must determine whether the exercise of jurisdiction is consistent with the Constitution and laws of the United States.[12] For the exercise of personal jurisdiction to be consistent with the Constitution and laws of the United

---

[8] *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) (citing *Sun Bank, N.A., v. E.F. Hutton & Co., Inc.*, 926 F.2d 1030, 1033 (11th Cir. 1991); *Go–Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1413 (9th Cir. 1989)).
[9] *Johnson v. Lovato (In re Jimenez)*, 627 B.R. 536, 544 (Bankr. S.D. Fla. 2021).
[10] Counsel for the Defendants agreed to accept service on their behalf. *See* ECF No. 42, ¶ 3.
[11] *See* 28 U.S.C. § 1334(b).
[12] *See* Fed. R. Bankr. P. 7004(f).

States, defendants must have sufficient minimum contacts with the United States[13] "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[14] While personal jurisdiction may be either general or specific, in either case it "must comport with the requirements of due process."[15] General jurisdiction exists when a foreign defendant's affiliations with the forum "are so 'continuous and systematic' as to render them essentially at home in the forum."[16] For specific jurisdiction, there must be "an affiliation between the forum and the underlying controversy."[17]

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."[18] This prima facie showing "must include an averment of facts, which, if credited, would suffice to establish jurisdiction over the defendant."[19] A defendant can rebut the plaintiff's allegations by presenting "direct,

---

[13] In bankruptcy proceedings – where subject matter jurisdiction is based on 28 U.S.C. § 1334(b) – the sovereign exercising jurisdiction is the United States of America, not a particular state. *Jimenez*, 627 B.R. at 545 (citing *Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms. (Luxembourg) II SCA*, 547 B.R. 80, 97 (Bankr. S.D.N.Y. 2016)). Minimum contacts with the United States as a whole – as opposed to any particular state – is therefore sufficient to satisfy the Fifth Amendment's due process requirements. *Id.* Accordingly, any argument about Florida's long-arm statute is inapposite here.

[14] *Jimenez*, 627 B.R. at 544–45 (cleaned up).

[15] *Brit. Am. Ins. Co. Ltd. v. Fullerton (In re Brit. Am. Ins. Co. Ltd.)*, 2013 WL 1881712, at *2 (Bankr. S.D. Fla. 2013).

[16] *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

[17] *Id.* (cleaned up).

[18] *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999); *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986)); *see also Lehman Bros. Special Fin., Inc. v. Bank of Am. (In re Lehman Bros. Holdings Inc.)*, 535 B.R. 608, 618 (Bankr. S.D.N.Y. 2015) (citing *O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 659, 673 (2d Cir. 2013); *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).

[19] *Lehman Bros. Holdings*, 535 B.R. at 618 (citing *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).

highly specific testimonial evidence regarding a fact essential to jurisdiction."[20] Where a defendant supports its jurisdictional challenges with affidavit evidence, the burden then shifts back to the plaintiff to produce evidence supporting jurisdiction.[21] If the plaintiff does not then counter that evidence, the allegation may be deemed refuted.[22]

Although Anastasia and Camilo make *arguments* in their Motions to Dismiss that the Court lacks personal jurisdiction over them, they have not submitted any *evidence* (such as affidavits or other "direct, highly specific testimonial evidence") in support of those arguments. The Plaintiff, on the other hand, made a prima facie showing in the Complaint that personal jurisdiction exists over Anastasia and Camilo. The Complaint adequately alleges that both Anastasia and Camilo have sufficient minimum contacts with the United States[23] "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[24] These allegations include that Camilo is a United States citizen with a Social Security number, who is registered to vote in Florida,[25] and who has a Florida driver's license.[26] As such, the Plaintiff has pleaded a prima facie case of general jurisdiction over Camilo.[27] With respect to Anastasia, the allegations include that she has a

---

[20] *Id.* (citing *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 2014 WL 1778984, at *1 (S.D.N.Y. 2014)).

[21] *United Techs. Corp.*, 556 F.3d at 1274.

[22] *Lehman Bros. Holdings*, 535 B.R. at 618.

[23] *See* note 13, *supra*.

[24] *Jimenez*, 627 B.R. at 544–45 (cleaned up).

[25] Compl. ¶ 11.

[26] *Id.* ¶ 12.

[27] Although the Complaint adequately pleaded personal jurisdiction over Camilo, the additional allegations in the Proposed Amended Complaint bolster these allegations.

United States Social Security number, that she held and continues to hold title to real property in the United States, that she maintained and continues to maintain financial and other business relationships in the United States, that she was a de facto manager of BHQ, that she was an active participant in BHQ's solicitation of financing, that she directed BHQ's hotel staff on furniture, fixtures and equipment purchases, and that she herself was an investor in BHQ.[28] These allegations make a prima facie showing of both general and specific jurisdiction over Anastasia. With the Plaintiff having sustained his initial burden of making a prima facie case for personal jurisdiction, and Anastasia and Camilo having failed to satisfy their burden to rebut those allegations,[29] the Motions to Dismiss for lack of personal jurisdiction over Anastasia and Camilo will be denied.

## II.    Failure to State a Claim Upon Which Relief May Be Granted.

To avoid dismissal for failure to state a claim upon which relief may be granted, a complaint must state a claim for relief that is "plausible on its face."[30] A claim for relief is plausible on its face where the plaintiff pleads sufficient facts to allow the court "to draw the reasonable inference" of a defendant's liability.[31] But if the "well-pleaded facts do not permit the court to infer more than the mere possibility" of liability, the complaint must be dismissed.[32]

---

[28] *Id.* ¶ 9.
[29] That the Plaintiff sought to serve Anastasia and Camilo with process in Colombia does not necessarily lead to the conclusion that they do not have sufficient minimum contacts with the United States. In only means that when the Plaintiff attempted to serve them, he believed they were not then in the United States.
[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).
[31] *Id.* (citing *Twombly*, 550 U.S. at 556).
[32] *Id.* at 679.

A.    <u>Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty Claims</u>.

Beginning with the claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, upon a careful and thorough review of the Complaint the Court concludes that as to these counts,[33] the Complaint adequately states claims for relief as to each applicable Defendant.[34] The Motions to Dismiss will therefore be denied as to these counts.

B.    <u>Avoidance of Fraudulent Transfers</u>.

With respect to the fourteen counts to avoid and recover fraudulent transfers, the Defendants argue that the Complaint fails to sufficiently state a cause of action to avoid any transfers as either actually or constructively fraudulent, that the Plaintiff lacks "standing"[35] to avoid transfers from Synergy Capital, and that the Plaintiff may not avoid transfers made more than four years before BHQ's petition date. But for the "standing" and timing issues discussed below, generally speaking the Court concludes that the Complaint plausibly alleges claims to avoid and recover fraudulent transfers. This includes claims to avoid and recover transfers that may not have been made directly to a Defendant, but instead were made for the benefit of

---

[33] Counts XV, XVI, XVII, and XVIII.

[34] This includes adequately pleading damages, although as the Plaintiff acknowledges in his Responses, the Complaint contained "scrivener's errors" in alleging that the Defendants owed a fiduciary duty to creditors. (ECF No. 84, at 21 n.19; ECF No. 86, at 26 n.20; ECF No. 108, at 22 n.21). These "scrivener's errors" will need to be corrected in an amended complaint.

[35] The parties' characterization of this issue as one of "standing," is a misnomer. *Gierum v. Glick (In re Glick)*, 568 B.R. 634, 656 (Bankr. N.D. Ill. 2017). The arguments concern a plaintiff's authority to bring these claims, not the justiciability of the claims. *Id.*

a Defendant.[36] And this is so even under the heightened pleading standard of Federal Rule of Civil Procedure 9(b). As for the "standing" and timing issues, however, for the reasons discussed below the Motions to Dismiss are well-taken and will be granted, but with leave to amend.

1.    *Alter ego claims.*

The Plaintiff is correct that based upon sufficient facts, a trustee can seek to avoid transfers from an alter ego of a debtor.[37] But, the facts presently alleged in the Complaint as to Synergy Capital do not support this relief. One of the cases cited by the Plaintiff is illustrative of this point. In *Energy Smart*,[38] a trustee for debtor Energy Smart, Inc., a Delaware corporation, contended that a non-debtor entity – Energy Smart, Inc., a Florida corporation ("Energy Smart FL") – was an "affiliate" of and the "alter ego" of the debtor, as to which the trustee could seek to disregard its corporate entity "in order to recover transfers of funds allegedly made by Energy Smart FL."[39] Based on the evidence presented at trial, however, the court determined that the trustee failed to satisfy her burden of proving that Energy Smart FL was the debtor's alter ego, and accordingly, the trustee was not entitled to recover any

---

[36] *See Cameron v. Lifsey (In re Carpets, Inc.)*, 522 B.R. 718, 720 (Bankr. M.D. Fla. 2014) ("once a trustee proves that a transfer is avoidable, the trustee may seek to recover against any transferee or an entity for whose benefit the transfer is made. . . . It is sufficient to simply allege sufficient facts to show a plausible case that the Defendants were the beneficiaries of avoidable transfers."); 11 U.S.C. § 550(a).
[37] *See e.g., Official Comm. of Unsecured Creditors v. 1st Choice Breeding, LLC (In re Haisfield)*, 2014 WL 12951417 at *7 (Bankr. M.D. Fla. 2014); *Energy Smart, Inc. v. Musselman (In re Energy Smart, Inc.)*, 381 B.R. 359 (Bankr. M.D. Fla. 2007); *see also Searcy v. Knight (In re Am. Int'l Refinery)*, 402 B.R. 728, 748 (Bankr. W.D. La. 2008) (avoidance actions on behalf of a debtor's alleged alter ego are not precluded as a matter of law, assuming the trustee can adequately plead the elements of an alter ego claim under applicable state law); *ASARCO LLC v. Americas Mining Corp.*, 382 B.R. 49, 68 (S.D. Tex. 2007) (applying Delaware law in holding that the debtor had standing to challenge a transfer of assets held by its wholly owned subsidiary).
[38] 381 B.R. 359.
[39] *Id.* at 378–79.

transfers made by Energy Smart FL.[40] The court held that that the trustee failed to

sustain her burden on both procedural and substantive grounds. Procedurally, the

court denied the trustee's claims because Energy Smart FL was not named as a

defendant by the trustee, was not served with process, and was not provided notice

and a full opportunity to respond to the alter ego allegations. Thus, the court ruled,

Energy Smart FL was not afforded due process.[41]

Substantively, courts will pierce a corporate veil under Florida law where a

corporation was "organized or used to mislead creditors or to perpetrate a fraud upon

them."[42] To do so, the court must find, by a preponderance of the evidence, that:

> (1) a shareholder dominated and controlled the corporation to such an
> extent that the corporation's existence was in fact nonexistent and the
> shareholders were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an
> improper purpose; and
>
> (3) the fraudulent or improper use of the corporate form caused injury
> to the claimant.[43]

Here, the Plaintiff argues that the Complaint adequately alleges that Synergy

Capital was BHQ's alter ego. In support of this argument, the Plaintiff points to

several conclusory allegations which generally allege that Synergy Capital was

BHQ's alter ego,[44] as well as specific allegations that Synergy Capital and Synergy

Investments Group, LLC ("Synergy Investments," and together with Synergy

---

[40] *Id.* at 380.
[41] *Id.* at 379.
[42] *In re Xenerga, Inc.*, 449 B.R. 594, 598–99 (Bankr. M.D. Fla. 2011) (quoting *Seminole Boatyard, Inc. v. Christoph*, 715 So.2d 987, 990 (Fla. 4th DCA 1998)) (cleaned up).
[43] *Id.* (cleaned up).
[44] Compl. ¶¶ 166, 170, 174.

Case 20-01079-SMG    Doc 112    Filed 12/03/21    Page 11 of 16

Capital, the "Synergy Entities") were determined by a Florida state court to be BHQ's alter egos.[45]

But the Plaintiff admits he cited to the wrong Florida state court case in support of his allegations that Synergy Capital was BHQ's alter ego. His Motion for Leave to Amend proposes to amend his Complaint to correct this "scrivener's error" and cite to the correct state court case: *Soto v. Bal Harbour Quarzo*.[46] According to the Proposed Amended Complaint, the state court entered a default order in the *Soto* case (the "Default Order"), in which it adjudged that "a default is entered against the Implead Defendants, Synergy Capital Group LLC (sic) and Synergy Investments Group, LLC who are hereby deemed to be the alter ego of the Defendant, Bal Harbour Quarzo, LLC, and according [sic] are subject to this Court's Post Judgment Receivership."[47]

Unlike in *Energy Smart*, where relief was sought against the debtor's alleged alter ego, the Plaintiff here seeks no relief against the Synergy Entities.[48] So with some additional detail about notice to and service upon the Synergy Entities in the *Soto* case, the allegations in the Proposed Amended Complaint would plausibly allege that the Synergy Entities have not contested – after appropriate due process – that

---

[45] Compl. ¶ 24.
[46] Case No. 17-7147 CA 01 (Fla. 11th Jud. Cir.).
[47] ECF No. 83 at 13.
[48] Under Florida law, there is no independent cause of action for alter ego liability or to pierce a corporate veil. Rather, the determination that an entity is an alter ego of another entity, or that its corporate veil should be pierced, is a remedy and not an affirmative cause of action. *In re Fiddler's Creek, LLC*, 2010 WL 6618876, at *2 (Bankr. M.D. Fla. 2010) (citing *Tara Prods., Inc. v. Hollywood Gadgets, Inc.,* 2010 WL 1531489 at *9 (S.D. Fla. 2010)).

they were BHQ's alter egos. In other words, allegations that the state court receiver[49] sought to implead the Synergy Entities into BHQ's state court receivership, that the Synergy Entities failed to respond to the impleader complaint, and that they were then defaulted and "deemed" by the state court to be BHQ's alter egos would plausibly support the Plaintiff's claim – from a procedural due process standpoint – that he can seek to avoid and recover transfers made by Synergy Capital.

But that only gets the Plaintiff part of the way there. The Plaintiff is asserting that under Florida law, Synergy Capital's corporate veil should be pierced so it can be treated as one and the same entity with BHQ, such that he can seek to avoid transfers made by Synergy Capital. Neither the Complaint nor the Proposed Amended Complaint allege, however, that the Defendants are bound by the Default Order.[50] If the Plaintiff cannot plausibly allege that the Defendants are bound by the Default Order, then the Plaintiff must instead affirmatively allege plausible substantive allegations that Synergy Capital was in fact BHQ's alter ego under Florida law. The original Complaint was deficient in this regard, and the Proposed Amended Complaint – which comes closer to addressing the procedural due process issues discussed in *Energy Smart* – still fails to plausibly allege the substantive elements required to pierce Synergy Capital's corporate veil under Florida law. As

---

[49] The Proposed Amended Complaint is unclear as to whether the receiver or the plaintiff in the *Soto* action sought to implead the Synergy Entities.

[50] The Plaintiff has not specifically argued that the Default Order has any preclusive effect here, such that the Defendants would be collaterally estopped from contesting that Synergy Capital was BHQ's alter ego. But the allegations in the Complaint (and even those in the Proposed Amended Complaint) would not appear to support such a claim. *See Harris v. Jayo (In re Harris)*, 3 F.4th 1339, 1345 (11th Cir. 2021) (collateral estoppel under Florida law requires that "the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction.") (cleaned up).

such, the Complaint needs further amendment before the Plaintiff can proceed to seek avoidance and recovery of transfers made by Synergy Capital. Ultimately, the trier of fact in this adversary proceeding will have to determine whether Synergy Capital was in fact BHQ's alter ego, and if so, whether the transfers from Synergy Capital are avoidable. But the facts currently alleged in the Complaint do not plausibly support this relief. The Motions to Dismiss will therefore be granted on this basis, but with leave for the Plaintiff to further amend his complaint to address these identified deficiencies.[51]

### 2.    *Transfers Made Outside of the Four-Year Lookback Period.*

Bankruptcy Code section 544(b)(1) allows a trustee to avoid a transfer "that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of [the Bankruptcy Code] or that is not allowable only under section 502(e) of [the Bankruptcy Code]."[52] In this case, the applicable law upon which the Plaintiff relies is Florida's Uniform Fraudulent Transfer Act.[53] Fla. Stat. § 726.110(1) sets forth the general rule that a cause of action to avoid a transfer made with actual intent to hinder, delay, or defraud any creditor of the debtor is extinguished if the action is not brought within four years after the transfer was

---

[51] Although not referenced in his Proposed Amended Complaint, the Plaintiff attached to his Responses a copy of a *Receiver's Brief in Support of Finding of Civil Contempt* filed in the state court case of *Larino Invests., Inc. v. Bal Harbour Quarzo, LLC*, Case No. 2017-005794-CA-01 (Fla. 11th Jud. Cir.). In that brief, the Plaintiff (then in his capacity as receiver for BHQ) made certain factual allegations – which were not pleaded in the original Complaint and were not included in the Proposed Amended Complaint – that would plausibly support a claim that Synergy Capital was BHQ's alter ego.
[52] 11 U.S.C. § 544(b)(1).
[53] Fla. Stat. §§ 726.101, *et seq.*

made.[54] But the statute also allows such a claim to be brought later if it is brought "within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant."[55] Relying on this one-year "savings clause," the Plaintiff argues that he was appointed as state court receiver for BHQ within one year of its bankruptcy petition date, and therefore he could not have discovered the transfers until he was appointed. Alternatively, the Plaintiff argues that to the extent it is not his knowledge but rather the knowledge of a creditor in whose shoes he stands in asserting these claims under Bankruptcy Code section 544(b)(1), the Complaint adequately pleads that BHQ concealed these transactions from the "Lenders,"[56] such that the Lenders could not have discovered these transactions until the Plaintiff was put in place (initially as a receiver in state court). In other words, it was not until the Plaintiff was appointed as receiver and started investigating BHQ that he discovered these transfers and informed one or more Lenders about them, thus providing the Lenders with the requisite knowledge within one year of BHQ's petition date.

Whether any transfers made more than four years before BHQ's petition date were – or could reasonably have been – discovered within the year before BHQ's petition date will ultimately be a question for the trier of fact, if adequately pleaded. But to adequately state a claim that would not be time-barred under Fla. Stat. § 726.110(1), a plaintiff must identify an unsecured creditor (sometimes called a

---

[54] If a creditor existed who could have brought such a claim as of a debtor's bankruptcy petition date, Bankruptcy Code section 546(a) then permits a bankruptcy trustee to bring the claim within two years after the petition date. 11 U.S.C. § 546(a)(1).

[55] Fla. Stat. § 726.110(1).

[56] Defined in the Complaint as more than 160 individuals and entities who made $34 million in loans to and investments in BHQ. Compl. ¶ 35.

14

"triggering creditor") that would have had actual standing to seek to avoid and recover the applicable transfers as of the petition date.[57] As currently pleaded, the Complaint fails to state a claim to avoid these older transfers because the Plaintiff did not identify a "triggering creditor" with this knowledge – even if that knowledge might have been supplied by the Plaintiff in his then-capacity as receiver. The Plaintiff's general allegations of concealment and the date of his appointment as receiver, along with his investigations and discovery, do not suffice. Accordingly, the Plaintiff's claims seeking to avoid and recover transfers made more than four years before BHQ's petition date will be dismissed, but without prejudice to the Plaintiff filing an amended complaint.

      C.    <u>Extraterritorial Recovery of Property</u>.

Finally, the Defendants argue that "to the extent Plaintiff is seeking to avoid or recover property transferred outside of the United States," the Complaint fails to provide any basis for that relief. The Plaintiff makes clear in his Responses,[58] however, that he is not seeking to avoid the transfer of any property located outside the United States, and that the relief sought does not involve any extraterritorial application of sections 548 or 550 of the Bankruptcy Code. With that clarification – which was clear to the Court from the Complaint itself – this argument is moot and the Motions to Dismiss are denied on this basis as well.

---

[57] *Furr v. T.D. Bank, N.A. (In re Rollaguard Sec., LLC)*, 570 B.R. 859, 881 (Bankr. S.D. Fla. 2017) (a trustee "must identify by name at least one creditor with an allowable unsecured claim that could have sought avoidance of the transfer in question under Florida law.") (citing *Bakst v. Bank Leumi, USA (In re D.I.T., Inc.)*, 561 B.R. 793, 800 (Bankr. S.D. Fla. 2016)); *UMB Bank, N.A. v. Sun Capital Partners V, LP (In re LSC Wind Down, LLC)*, 610 B.R. 779, 785-86 (D. Del. 2020).

[58] ECF No. 84 at 16-17; ECF No. 85 at 18-19; ECF No. 86 at 21-22; ECF No. 108 at 18-19.

## III.    Motion for Leave to Amend.

Because the Proposed Amended Complaint does not address and cure all of the pleading deficiencies discussed above, the Motion for Leave to Amend must be denied as moot, but without prejudice to the Plaintiff filing another amended complaint to cure these deficiencies.

## IV.    Conclusion.

For the foregoing reasons, it is therefore **ORDERED** that:

1.    The Motions to Dismiss are all **GRANTED IN PART and DENIED IN PART**, as set forth above.

2.    The Motion for Leave to Amend is **DENIED as MOOT**.

3.    The Plaintiff is granted leave to file an amended complaint within 21 days after entry of this Order. Upon filing an amended complaint, the Defendants will have 21 days to respond to the amended complaint.

### # # #

Copy furnished to all counsel of record by CM/ECF.