TAGGED OPINION



**ORDERED in the Southern District of Florida on April 15, 2022.**

Scott M. Grossman, Judge
United States Bankruptcy Court

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

BAL HARBOUR QUARZO, LLC            Case No. 18-11793-SMG
a/k/a Synergy Capital Group, LLC,
a/k/a Synergy Investments Group, LLC,   Chapter 11

    Debtor.
_____/

DREW M. DILLWORTH, as Trustee,

    Plaintiff,

v.                                   Adv. No. 20-1079-SMG

CARLOS ELIAS MAHECHA DIAZ,
MARIA ANASTASIA CASAS MATIZ,
FELIPE MAHECHA CASAS, and
CAMILO E. MAHECHA,

    Defendants.
_____/

## ORDER DENYING POST CONFIRMATION
## <u>CREDITORS' COMMITTEE'S MOTION TO INTERVENE</u>

Bankruptcy Code section 1109(b) allows any "party in interest" – including a creditors' committee – to "raise and . . . appear and be heard on any issue in a case under" chapter 11. Relying on this statute and Federal Rule of Civil Procedure 24(a)(1),[1] a post-confirmation creditors' committee created by a confirmed chapter 11 plan and related liquidating trust agreement argues that it has "an unconditional right to intervene" in an adversary proceeding filed by the liquidating trustee over two years ago. Alternatively, the committee seeks to intervene of right under Rule 24(a)(2), arguing that it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[2] As a further alternative, the committee argues it satisfies the requirements for permissive intervention under Rule 24(b)(1)(B), which allows the Court to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."[3]

Notably, although Rule 24(c) requires that a motion to intervene be accompanied by a pleading that sets out the claim or defense for which intervention is sought, the committee did not attach any pleading to its motion to intervene. In

---

[1] Under Federal Rule of Bankruptcy Procedure 7024, Federal Rule of Civil Procedure 24 applies in bankruptcy adversary proceedings.
[2] Fed. R. Civ. P. 24(a)(2).
[3] Fed. R. Civ. P. 24(b)(1)(B).

2

fact, the committee admits that "it does not assert ownership of a claim or defense," but instead seeks to intervene "in its capacity as a consulting/oversight party to the Trustee but reserves the right to take positions on specific issues that may arise during the course of the Adversary Proceeding, which may require the filing of pleadings."[4] After considering the committee's motion to intervene[5] and its memorandum of law,[6] the defendants' response in opposition,[7] and the arguments of counsel at a hearing on April 6, 2022, for the reasons set forth below, the motion to intervene will be denied.

## BACKGROUND

The confirmed chapter 11 plan[8] for Debtor Bal Harbour Quarzo, LLC ("BHQ") created a liquidating trust[9] to which certain causes of action were transferred[10] for the benefit of BHQ's general unsecured creditors, who each received beneficial interests in the liquidating trust.[11] The plan appointed Drew Dillworth as trustee of the liquidating trust,[12] and vested him with the authority to prosecute these causes of action.[13] The plan and liquidating trust also established a post-confirmation

---

[4] ECF No. 149, at 18.
[5] ECF No. 143.
[6] ECF No. 149.
[7] ECF No. 150.
[8] Joint Combined Plan of Liquidation ("Plan"), *In re Bal Harbour Quarzo, LLC*, Case No. 18-11793-SMG ("Main Case") (ECF No. 233).
[9] Bal Harbour Quarzo Liquidating Trust Agreement, Main Case ECF No. 233-1.
[10] Plan, §§ 9.8, 9.9.2. *See* 11 U.S.C. § 1123(b)(3)(B).
[11] Plan, § 9.9.4.
[12] Liquidating Trust Agreement, § 2.1(b).
[13] *Id.*, §§ 4.1, 4.2, 4.4.

creditors' committee to "represent the interests of the Trust Beneficiaries during the existence of the Trust."[14]

Mr. Dillworth, as liquidating trustee, commenced this adversary proceeding on February 14, 2020.[15] After initial delays due to efforts to serve the defendants abroad, and then some motion practice, the defendants filed their answer and affirmative defenses on January 31, 2022.[16] Shortly after the pretrial scheduling conference[17] – but before entry of the scheduling order[18] – the committee moved to intervene under Rule 24(a)(1).[19] In its separate memorandum of law filed in advance of the hearing on its motion to intervene, the committee then expanded the relief sought to include intervention of right under Rule 24(a)(2), and permissive intervention under Rule 24(b)(1)(B).[20]

Mr. Dillworth, as plaintiff, did not file any written opposition to the committee's motion, but at the outset of the hearing he and the committee announced a proposed resolution (if the Court were to grant the motion), wherein they would agree that: (1) Mr. Dillworth is the party with the right and responsibility to prosecute this adversary proceeding; (2) Mr. Dillworth and his professionals will use their best efforts to consult with the committee on the prosecution of this adversary proceeding; (3) nothing in any order granting the motion to intervene would serve to

---

[14] *Id.*, § 6.2. The Trust Beneficiaries are the pre-confirmation general unsecured creditors of BHQ. *Id.*, app. A.
[15] ECF No. 1.
[16] ECF No. 127.
[17] ECF No. 128.
[18] ECF No. 146.
[19] ECF No. 143.
[20] ECF No. 149.

expand or limit the rights of either Mr. Dillworth or the committee under BHQ's plan or liquidating trust agreement; (4) the committee may identify for Mr. Dillworth potential witnesses and subjects for document production during discovery, and would be entitled to consult with Mr. Dillworth thereon and during depositions; (5) the committee would be entitled to attend all depositions and hearings in this adversary proceeding as a party in interest; and (6) the committee must consult with Mr. Dillworth before filing any substantive motion in this adversary proceeding, other than a joinder.

The defendants filed a written opposition to the committee's motion.[21] Upon learning – for the first time at the hearing – of the proposed resolution of the motion as between Mr. Dillworth and the committee, the defendants stood by their legal opposition to the motion, but indicated that they had no strong objection to the proposed resolution. One other Trust Beneficiary, however – Jonathan Feldman, Esq. (who acquired claims in the BHQ case both directly and through an entity) – appeared at the hearing and opposed the committee's motion, even with the resolution proposed by the committee and Mr. Dillworth.[22] Mr. Feldman was particularly concerned about the potential additional administrative expenses that could be incurred by the committee's counsel if the Court were to grant the motion, even under the terms agreed to by Mr. Dillworth and the committee.

---

[21] ECF No. 150.
[22] Before hearing from Mr. Feldman – who is not a party to, and does not represent any party in, this adversary proceeding – the Court inquired of all parties in interest and none had any objection to the Court hearing from him.

## DISCUSSION

**I.    Intervention of Right.**

    A.    <u>Unconditional Statutory Right to Intervene</u>.

Relying on 11 U.S.C. § 1109(b), the committee argues that it has the unconditional right to intervene in this adversary proceeding. Section 1109(b) states:

> (b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under [chapter 11 of the Bankruptcy Code].[23]

Citing to decisions constituting the majority view from the First Circuit,[24] Second Circuit,[25] and Third Circuit,[26] as well as bankruptcy court decisions from the Middle District of Florida[27] and the Southern District of Florida,[28] the committee argues that in its capacity as a "creditors' committee" it has "an unconditional right to intervene in this adversary proceeding." The committee also acknowledges the minority view, set forth by the Fifth Circuit in *Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*,[29] which held that section 1109(b) does not give a creditors' committee the absolute statutory right to intervene in an adversary proceeding under Rule 24(a)(1).

---

[23] 11 U.S.C. § 1109(b).
[24] *Assured Guar. Corp. v. Fin. Oversight and Mgmt. Bd. for Puerto Rico (In re Fin. Oversight and Mgmt. Bd. for Puerto Rico)*, 872 F.3d 57 (1st Cir. 2017).
[25] *Term Loan Holder Comm. v. Ozer Grp., L.L.C. (In re Caldor Corp.)*, 303 F.3d 161 (2d Cir. 2002).
[26] *Official Unsecured Creditors' Comm. v. Michaels (In re Marin Motor Oil, Inc.)*, 689 F.2d 445 (3d Cir. 1982).
[27] *Asbestos Settlement Trust v. Port Authority of New York and New Jersey (In re Celotex Corp.)*, 377 B.R. 345 (Bankr. M.D. Fla. 2006).
[28] *Gleason v. Commonwealth Cont'l Health Care (In re Golden Glades Reg'l Med. Ctr., Ltd.)*, 147 B.R. 813 (S.D. Fla. 1992).
[29] 762 F.2d 1283 (5th Cir. 1985).

The issue under section 1109(b) on which the circuits are split is whether the phrase "in a case under this chapter" means only a main chapter 11 bankruptcy case, or whether it is broad enough to include related adversary proceedings. The majority view concludes that it is broad enough to include related adversary proceedings. For example, in *Caldor*[30] the Second Circuit examined the text of the statute and concluded that the word "case" "is a term of art in the bankruptcy context,"[31] which "refers to litigation 'commenced by the filing with the bankruptcy court of a petition' under the appropriate chapter of Title 11."[32] The Second Circuit contrasted the term "case" with "proceeding," which it defined as is a "particular dispute or matter arising within a pending case—as opposed to the case as a whole."[33] With that understanding, the Second Circuit went on to examine the text of section 1109(b), which grants to parties in interest the right to be heard on "on any issue in a case." The Second Circuit began by acknowledging that the bankruptcy rules distinguish between different types of litigated matters that arise in a bankruptcy case, which are divided into adversary proceedings and contested matters.[34] It then determined that the "issues" on which a party in interest may be heard necessarily arise in "proceedings," "which themselves occur in and constitute part of the 'case.'"[35] Because the plain text of section 1109 "does not distinguish between issues that occur in these

---

[30] 303 F.3d 161.
[31] *Id*. at 168.
[32] *Id*. (citing 11 U.S.C. §§ 301, 302, 303(b), 304(a) [repealed]).
[33] *Id*. (citing BLACK'S LAW DICTIONARY 1221 (7th ed. 1999)).
[34] *Id*. (citing 10 COLLIER ON BANKRUPTCY at 7000–01 (15th ed. rev.2001)).
[35] *Id*. at 169.

7

different types of proceedings within a Chapter 11 case,"[36] the Second Circuit held "that the phrase 'any issue in a case' plainly grants a right to raise, appear and be heard on any issue regardless whether it arises in a contested matter or an adversary proceeding."[37]

This Court respectfully disagrees with *Caldor* and the other majority view decisions, and instead submits that not only does *Fuel Oil*[38] have the correct analysis, but further that the plain text of section 1109(b) actually supports the minority view espoused by *Fuel Oil*. The Court reaches its conclusion based on another provision of the Bankruptcy Code which clearly shows that Congress knows how to distinguish between a case and a proceeding. Bankruptcy Code section 307 – which is similar (but not identical) to section 1109(b) – provides that "[t]he United States trustee may raise and may appear and be heard on any issue *in any case or proceeding under this title* but may not file a plan pursuant to section 1121(c) of this title."[39] Compare this language with section 1109(b) which states that any party in interest (including a creditors' committee) "may raise and appear and be heard on any issue *in a case under this chapter*."[40] Thus, where Congress wanted to give a party the right to raise and appear and be heard on any issue in *a case or proceeding*, it knew how to do so and in fact did so in section 307 with respect to the United States Trustee. In section 1109(b), however, the right to raise and appear and be heard on any issue is limited only to a

---

[36] *Id.*
[37] *Id.*
[38] 762 F.2d 1283.
[39] 11 U.S.C. § 307 (emphasis added).
[40] 11 U.S.C. § 1109(b) (emphasis added).

chapter 11 case, and does not include related adversary proceedings.[41] Accordingly, this Court concludes that section 1109(b) does not create an unconditional right to intervene by a creditors' committee.[42] With no unconditional right to intervene created by a federal statute, the committee may not intervene of right under Rule 24(a)(1).

B. <u>Intervention of Right Relating to Property or Transaction</u>.

Even where a federal statute does not create an unconditional right to intervene, a party may still intervene of right under Rule 24(a)(2) if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[43] To intervene of right, the Eleventh Circuit requires that:

> (1) the application to intervene is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the

---

[41] Practical considerations also support the minority view. Under the majority view, *any* creditor, equity security holder, or other party in interest would have the unconditional right to intervene in any adversary proceeding associated with a chapter 11 case. This could result in erosion of the procedural due process protections afforded to litigants in an adversary proceeding, wreak havoc on any efforts at efficient case management, and ultimately render an adversary proceeding virtually indistinguishable from a main bankruptcy case.

[42] Committees, creditors, and other case constituents are not without recourse if they have concerns about the estate fiduciary's ability or willingness to prosecute an adversary proceeding. They can, of course, seek derivative standing. *See, e.g., Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 579-80 (3d Cir. 2003) (en banc); *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, 555 F.3d 231, 245 (6th Cir. 2009); *PW Enters., Inc. v. N.D. Racing Comm'n (In re Racing Servs., Inc.)*, 540 F.3d 892, 898–900 (8th Cir. 2008); *Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d 96, 100 (2d Cir. 2001); *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000); *Avalanche Mar., Ltd. v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029, 1031 (9th Cir. 1999); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Grp., Inc.)*, 66 F.3d 1436, 1446 (6th Cir. 1995); *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 247–48 (5th Cir. 1988). They can also – as they did here – negotiate for and seek approval of a chapter 11 plan that transfers causes of action to a post-confirmation entity, *see* 11 U.S.C. § 1123, and have input on the selection of the fiduciary who will prosecute those actions for the benefit of those constituents.

[43] Fed. R. Civ. P. 24(a)(2).

action, as a practical matter, may impede or impair his ability to protect that interest; and (4) the applicant's interest will not be represented adequately by the existing parties to the suit.[44]

The committee fails to satisfy any of these factors. First, the motion to intervene was filed over two years after this adversary proceeding was filed. The committee argues its motion was nevertheless timely because the pleadings have just been closed and a scheduling order was just recently entered. But waiting for two years to intervene – when the committee unquestionably knew about and was actively following this adversary proceeding[45] – is simply too long to have been considered timely.

By order entered on February 1, 2022,[46] the Court set a status conference in this adversary proceeding for March 1, 2022, which required the parties to meet and confer in advance to discuss and then be prepared to propose a scheduling order at the status conference. Without suggesting that an intervention motion filed any time before the March 1 status conference necessarily would have been timely, one filed a week *after* the status conference – after the parties were to meet and confer and propose a scheduling order – is clearly untimely in this case. To determine the timeliness of an intervention motion, the Eleventh Circuit requires courts to consider four additional factors:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest;

---

[44] *ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1321 (11th Cir. 1990) (citing *Athens Lumber Co., Inc. v. Federal Election Commission,* 690 F.2d 1364, 1366 (11th Cir. 1982)).
[45] Counsel for the committee has attended numerous hearings in this adversary proceeding throughout its pendency. *See, e.g.*, transcript of September 9, 2020 status conference (ECF No. 31).
[46] ECF No. 128.

> (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.[47]

Here, the committee unquestionably knew about this adversary proceeding from its outset – over two years ago. Second, the existing parties – who have already met and conferred and agreed on a scheduling order which the Court has since entered[48] – would be prejudiced if the Court were to now permit the committee to intervene and upset their negotiated scheduling of this proceeding. Third, the committee would suffer no prejudice if intervention were denied, because the same interests it represents (the Trust Beneficiaries) are already represented by Mr. Dillworth, as liquidating trustee, who was appointed for the very purpose of pursuing this cause of action for the benefit of the Trust Beneficiaries. And fourth, there are no unusual circumstances here militating for a determination that the motion was timely. Thus, the motion to intervene was not timely.

As to the second intervention factor, an intervenor must show that it has "a legally cognizable interest that is significantly protectible, as opposed to a general and indefinite interest."[49] But a "mere economic interest in the outcome of the litigation"[50] does not give a party the right to intervene. Here, the committee does not have any legally cognizable interest – let alone an economic interest – in the outcome of this adversary proceeding. The committee has admitted as much in its

---

[47] *Howard v. McLucas*, 782 F.2d 956, 959 (11th Cir. 1986) (quoting *U.S. v. Jefferson Cty.*, 720 F.2d 1511, 1516 (11th Cir. 1983)).
[48] ECF No. 146.
[49] *Earth Pipeline Servs., Inc. v. Columbia Gas Transmission, LLC (In re Welded Constr., L.P.)*, 618 B.R. 710, 718 (Bankr. D. Del. 2020) (cleaned up).
[50] *Id.*

11

memorandum of law, where it argues that it "will be operating in its capacity as a consulting/oversight party to the Trustee but reserves the right to take positions on specific issues that may arise during the course of the Adversary Proceeding, which may require the filing of pleadings."[51]

Moreover, the terms of the liquidating trust agreement itself belie the committee's arguments. Under the liquidating trust agreement, the committee's powers and duties are to "represent the interests of the Trust Beneficiaries during the existence of the Trust," and "to undertake in good faith each of the acts and responsibilities set forth for the" committee in the trust agreement and the plan, "for the benefit of the Trust Beneficiaries."[52] Thus, although the Trust Beneficiaries have an economic interest in the outcome of this litigation, that interest alone would not give any of them – let alone the committee – the right to intervene here. And the committee in its own right certainly does not have any economic interest or other legally cognizable and significantly protectible interest in the litigation; those rights

---

[51] The Court must note that the term "pleading" is routinely misused by many lawyers (and judges) in bankruptcy cases. The Federal Rules of Civil Procedure "provide a clear and precise meaning of 'pleadings.'" *Burns v. Lawther*, 53 F.3d 1237, 1241 (11th Cir. 1995). Under Federal Rule of Civil Procedure 7, made applicable here by Federal Rule of Bankruptcy Procedure 7007, "[o]nly these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). Importantly, "Rule 7 explicitly excludes everything else from its definition of pleadings." *Burns*, 53 F.3d at 1241; *see also* 2 MOORE'S FEDERAL PRACTICE - Civil § 7.02 (2022) ("No other paper will be considered a pleading except those specifically named in Rule 7(a)"). Motions, briefs, memoranda, applications, objections, responses, joinders, and other ancillary papers are not "pleadings." *See* 2 MOORE'S FEDERAL PRACTICE - Civil § 7.02 (2022). Thus, notwithstanding the committee's argument, even if permitted to intervene, the committee could not willy-nilly file "pleadings" whenever it sees fit to do so. An amended complaint (ECF No. 117) has been filed. The defendants have filed their answer and affirmative defenses. (ECF No. 127). But for resolution of a pending motion to strike certain affirmative defenses (ECF No. 137) – and except to the extent permitted by Federal Rule of Civil Procedure 15 – the pleadings have been closed.
[52] Liquidating Trust Agreement, § 6.2.

and interests were specifically given to Mr. Dillworth, as liquidating trustee, under BHQ's plan and the liquidating trust agreement.

As for the third and fourth factors, with the liquidating trustee as plaintiff in this action – as fiduciary for the Trust Beneficiaries pursuant to the authority vested in him by the plan and liquidating trust agreement – the committee has failed to show how disposition of this action may impede or impair its ability to protect its interest, or that its interest would not be represented adequately by Mr. Dillworth. Indeed, the only bankruptcy case constituents with beneficial economic interests in the outcome of this adversary proceeding are the Trust Beneficiaries: the former general unsecured creditors of BHQ on whose behalf the committee seeks to act and as for whom Mr. Dillworth does act in his fiduciary capacity.[53] Accordingly, the committee has failed to show that it is entitled to intervention of right under Rule 24(a)(2).

## II. Permissive Intervention.

Even where there is no intervention of right, Rule 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."[54] As discussed above, the motion was not timely, and therefore fails on this factor alone. Likewise, as discussed above, the committee – which was created by the plan and

---

[53] Indeed, unlike a pre-petition action brought by a debtor-in-possession or other estate fiduciary for the benefit of the entire estate and all of its constituents, this action is brought post-confirmation by Mr. Dillworth in his capacity as liquidating trustee solely for the benefit of the Trust Beneficiaries, which were the former general unsecured creditors of BHQ. Any recovery (net of professional fees and expenses) will inure entirely to the Trust Beneficiaries and not to any other class of creditors or equity interests in BHQ.

[54] Fed. R. Civ. P. 24(b)(1)(B).

liquidating trust agreement – has no claim or defense in its own right that it shares with the adversary proceeding as a common question of law or fact.[55] Thus, permissive intervention under Rule 24(b)(1)(B) will also be denied.

### III.    Intervention Motions Must be Accompanied by a Pleading.

Perhaps because it has no claim or defense in its own right, the committee also failed to comply with Rule 24(c), which requires a motion to intervene to be accompanied by a pleading[56] that sets out the claim or defense for which intervention is sought. The Court acknowledges that some courts of appeal – including the Eleventh Circuit – have disregarded "nonprejudicial technical defects"[57] like failure to attach a pleading to an intervention motion where "[e]veryone knew the nature of [the intervenor's] substantive claims for relief."[58] But these decisions are contrary to the clear requirements of Rule 24(c). And the fact that courts of appeal after the fact (indeed, often after years of litigation) have determined to excuse noncompliance with Rule 24(c) does not mean that at the outset of a request to intervene this Court is free to disregard the clear requirements of Rule 24(c): a motion to intervene ***must*** be

---

[55] ECF No. 149 at 18 (admitting the committee "does not assert ownership of a claim or defense").
[56] *See* note 51, *supra*.
[57] *Piambino v. Bailey*, 757 F.2d 1112, 1121 (11th Cir. 1985).
[58] *Id. See also Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 872 F.3d at 65 (citing with approval cases holding that a court has the discretion to permit intervention in some circumstances even when the motion to intervene is not accompanied by a pleading, and "in the unique circumstances of the present case," finding that a creditors' committee's "interest in the litigation was sufficiently clear to excuse any technical non-compliance with Rule 24(c)").

accompanied by a pleading.[59] Because the committee's motion was not accompanied by a pleading, it must be denied on this basis as well.[60]

## CONCLUSION

Section 1109(b) does not give a post-confirmation creditors' committee the unconditional right to intervene in an adversary proceeding brought by a liquidating trustee. The committee here also does not have any interest in the property or the transaction that is the subject of this adversary proceeding, and does not have any claim or defense that shares with the adversary proceeding a common question of law or fact. And finally, the committee failed to attach to its intervention motion a pleading that sets out the claim or defense for which intervention is sought.

Accordingly, for the reasons discussed above, it is **ORDERED** that the committee's motion to intervene[61] is **DENIED**.

### # # #

Copies furnished to all interested parties by CM/ECF.

---

[59] Fed. R. Civ. P. 24(c).

[60] Moreover, the notion that a party can intervene in an adversary proceeding without filing a pleading is contrary to the adversarial nature of civil litigation (including adversary proceedings). While in a main bankruptcy case it may often be appropriate for a party to monitor the case and get more involved in some contested matters and not get involved in others, that is not the case in an adversary proceeding. In an adversary proceeding there is a plaintiff and a defendant. There is a complaint and an answer. An intervenor needs to choose a side and set forth its claims or defenses for which it seeks to intervene. Unlike in a main bankruptcy case, a party cannot just intervene in an adversary proceeding and then pick and choose the parts of it in which it wishes to participate.

[61] ECF No. 143.